Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 W. Main Street
Norfolk, Virginia 23510
(757) 640-3700

Proposed Attorneys for the Debtors and
Debtors in Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| WORKFLOW MANAGEMENT, INC . et al., | ) ) ) | Case No. 10-74617(SCS) |
| | ) | |
| Debtors. | ) ) | (Jointly Administered) |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL, (II) AUTHORIZING DEBTORS TO PROVIDE ADEQUATE
PROTECTION IN FORM OF REPLACEMENT LIENS, ADMINISTRATIVE
EXPENSE CLAIMS, AND ACCRUAL OR PAYMENT OF INTEREST, (III)
SCHEDULING FINAL CASH COLLATERAL HEARING,
AND (IV) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors")[1], pursuant to sections 105(a), 361, and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 of the Local Rules for

---

[1] The Debtors and the last four digits of the Debtors' taxpayer identification numbers are as follows: Workflow Management, Inc. (7104); Workflow Holdings Corporation (9217); WF Capital Holdings, Inc. (5548); WF Holdings, Inc. (9106); Workflow Direct, Inc. (7497); Workflow Management Acquisition II Corp. (2039); WFIH, Inc. (0527); WFMI, Inc. (4282); Workflow of Florida, Inc. (4281); Workflow Solutions LLC (3769); SFI of Puerto Rico, Inc. (3413); Old FGS, Inc. (1438); Old UE, LLC (4060); The Relizon Company (4702); Relizon Wisconsin Inc. (8440); Relizon (Texas) Ltd., LLP (6437); Relizon SNE Inc. (4537); Relizon KNE Inc. (3935); Relizon de Mexico Inc. (6996); Formcraft Holdings General Partner, Inc. (5683); Formcraft Holdings Limited Partner, Inc. (5684). The mailing address for WF Capital Holdings, Inc., Old FGS, Inc., and Old UE, LLC is 150 West Main Street, Suite 2100, Norfolk, Virginia 23501. For all other Debtors, the mailing address is 220 E. Monument Avenue, Dayton, Ohio 45402.

the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"), for the entry of an interim order: (i) authorizing the Debtors to use Cash Collateral[2]; (ii) authorizing adequate protection to the Prepetition Secured Parties in the form of replacement liens, administrative expense claims and the accrual or payment of interest and fees; and (iii) scheduling a hearing (the "Final Hearing") to consider entry of a final order authorizing the Debtors to use Cash Collateral (the "Final Order"); and upon the Bogutsky Affidavit; and upon a preliminary hearing on the Motion having occurred on September 30, 2010 (the "Preliminary Hearing"), pursuant to Bankruptcy Rule 4001(b)(2); and upon the record presented at the Preliminary Hearing and subject to the agreements of the parties as set forth on that record; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, the Debtors' creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby,

**FOUND AND DETERMINED (for purposes only of this Interim Order) that:**

    A.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

    B.    Venue of the Debtors' chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    C.    Notice of the Preliminary Hearing and the relief requested in the Motion has been given to: (i) the office of the United States Trustee for the Eastern District of Virginia; (ii) the First Lien Agent and its counsel; (iii) the Second Lien Agent and its counsel; (iv) the United States Attorney for the Eastern District of Virginia; (v) the Internal

---

[2] Capitalized terms used, but not defined herein, shall be ascribed the meanings given them in the Motion.

Revenue Service; (vi) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; and (vii) the financial institutions at which the Debtors maintain bank accounts. As such, sufficient and adequate notice of the Preliminary Hearing and the relief requested in the Motion has been given pursuant to sections 102 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and Local Rule 2002-1, and no further notice is required.

D. As of the Petition Date, the total amount of outstanding First Lien Loan Obligations was approximately $146.5 million (including the face amount of undrawn Letters of Credit), and the total amount of outstanding Second Lien Loan Obligations was approximately $196.5 million.

E. The Prepetition Agents assert that the First Lien Loan Obligations and the Second Lien Loan Obligations are secured by liens on and security interests in essentially all of the personal and real property of the Debtors who are Loan Parties, and all proceeds thereof, including the Cash Collateral as further described in the Motion (the "Prepetition Collateral").[3]

F. Without the use of Cash Collateral, the Debtors lack sufficient available sources of working capital and financing to carry on the operation of their business. The Debtors' ability to maintain business relationships with their vendors, suppliers,

---

[3] To the extent that the First Lien Secured Parties and the Second Lien Secured Parties consent to the use of Cash Collateral on the terms provided herein, the Debtors will not contest the validity, priority, perfection or enforceability of their respective liens and claims (but shall retain their right to seek to equitably subordinate such claims) pertaining to the Prepetition Credit Facilities; however, the validity, priority perfection and enforceability of such liens and claims will in any event be subject to the review of any official committee of unsecured creditors appointed in these cases as necessary.

employees, and customers, and to purchase and supply new inventory and otherwise finance their operations, is essential to the Debtors' continued viability.

G. The Debtors require the ability to use Cash Collateral in accordance with the terms of this Interim Order to avoid immediate and irreparable harm to the Debtors and their estates. In the absence of the use of Cash Collateral, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors and their estates would occur. The preservation, maintenance, and enhancement of the going concern value of the Debtors is critical to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

H. Good cause has been shown for the entry of this Interim Order. Among other things, entry of this Interim Order will minimize disruption of the Debtors' affairs and permit them to meet payroll and other expenses. The use of Cash Collateral authorized hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates.

I. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). This Court concludes that entry of this Interim Order is in the best interests of the Debtors, their estates and creditors and will maximize the value of their assets for the benefit of all creditors.

Based on the foregoing findings of fact and conclusions, and upon the record made before this Court by the Debtors at the Preliminary Hearing, and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED THAT**

1. The Motion is granted, subject to the terms and conditions set forth in this Interim Order.

2. Subject to the terms of this Interim Order, the Debtors are authorized to use Cash Collateral from the Petition Date to and including the conclusion of the hearing of October 7, 2010 (the "Interim Period") on the terms, for the purposes, and in the amounts set forth in the budget attached hereto as <u>Exhibit A</u> (the "Budget"), and in accordance with orders of this Court; provided, however, that the Debtors shall be authorized to make aggregate disbursements set forth in the Budget, and no Event of Default shall occur with respect thereto, so long as such amounts paid in excess of the aggregate amount do not exceed, on a weekly basis, 110% of the aggregate amount of disbursements set forth in the Budget.

3. The Debtors may also vary from the Budget with the consent of each Prepetition Agent, or by further Order of the Court.

4. The Debtors shall be permitted to use Cash Collateral in accordance with their cash management system consistent with prepetition practices.

5. The Prepetition Secured Parties are entitled, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the Collateral Diminution

(as defined below). As used herein, "Collateral Diminution" on any date of determination shall mean an amount equal to the postpetition diminution of the value, if any, of the Prepetition Collateral upon which any of the Prepetition Secured Parties had, on the Petition Date, valid, perfected, enforceable and unavoidable liens or security interests as of such date, from the value of such Prepetition Collateral on the Petition Date, as a result of the Debtors' use of the Cash Collateral in accordance with the terms and conditions of this Interim Order. As adequate protection for any Collateral Diminution, each Prepetition Agent (for the benefit of the applicable Prepetition Secured Parties) is hereby granted the following (collectively, the "Adequate Protection"):

(a) <u>Adequate Protection Claims</u>. Allowed administrative expense claims, in the amount of any Collateral Diminution, as and to the extent provided in section 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which Adequate Protection Claims shall have recourse to and be payable from all pre- and post-petition property of the Debtors, excluding causes of action arising under chapter 5 of the Bankruptcy Code, and the proceeds thereof. The Adequate Protection Claims shall be subject and subordinate only to the Carveout (defined below) and, as among the Prepetition Secured Parties, as provided in the Intercreditor Agreement.

(b) <u>Adequate Protection Liens</u>. As security for the payment of the amount of any Collateral Diminution, each Prepetition Agent (for itself and for the benefit of the applicable Prepetition Secured Parties) is hereby granted (without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on (collectively, the "Adequate Protection Liens") all property acquired by the Debtors after the Petition Date, excluding causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof (the "Post-petition Collateral"), subject and subordinate only to: (i) valid, perfected and enforceable prepetition liens (including, without limitation, the lien of the Ohio Director encumbering the Ohio Equipment to secure the Ohio Development Loan) which are senior to the Prepetition Agents' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code; (ii)

the Carveout; and (iii) as among the Prepetition Secured Parties, as provided in the Intercreditor Agreement.

(c) <u>Adequate Protection Priorities</u>. The Adequate Protection Claims and the Adequate Protection Liens granted pursuant to subparagraphs (a) and (b) above shall have the same relative priority vis-a-vis the Post-petition Collateral and otherwise as the security interests and liens held by the First Lien Agent and the Second Lien Agent, respectively, to secure the First Lien Loan Obligations and the Second Lien Loan Obligations, respectively, in accordance with the applicable First Lien Loan Documents and the Second Lien Loan Documents, including the Intercreditor Agreement. The application of payments received with respect to the foregoing shall be made in the order of priority as set forth in the First Lien Loan Documents and the Second Lien Loan Documents, including the Intercreditor Agreement.

(d) <u>Adequate Protection Payments and Accrual of Interest</u>. (i) The First Lien Agent (for the benefit of itself and the First Lien Secured Parties) shall receive from the Debtors: (A) within two (2) business days after the date of entry of this Interim Order, payment of all accrued and outstanding interest (calculated at the non-default LIBO Rate or the non-default Base Rate, as applicable prior to the Petition Date) and letter of credit fees (at the non-default rate applicable under the First Lien Credit Agreement prior to the Petition Date), that were payable in cash prior to the date of entry of this Interim Order pursuant to the terms of the First Lien Credit Agreement, and that portion of such aggregate accrued and unpaid interest that was payable by capitalizing and adding such interest to the principal balance of the applicable loan shall be paid in such manner on or as of such second business day; and (B) thereafter, the payment, on the dates payable pursuant to the terms of the First Lien Credit Agreement, of the portion of current interest (calculated at the applicable non-default LIBO Rate or Base Rate as applicable to outstanding loans thereunder prior to the Petition Date) payable in cash and letter of credit fees, and all other current fees and disbursements (including, but not limited to, the amounts set forth in clause (ii) of subparagraph (e) below at the applicable non-default rates in effect under the First Lien Credit Agreement prior to the Petition Date), and the portion of such aggregate accrued and unpaid interest that is payable under the terms of the First Lien Credit Agreement by capitalizing such portion and adding such portion to the principal balance of the applicable loan shall continue to be paid in such manner. (ii) Interest on the outstanding Second Lien Loan Obligations will accrue post-petition, at the non-default LIBO Rate, and (A) the portion of such aggregate accrued interest that is payable pursuant to the Second Lien Credit Agreement by capitalizing such interest and adding it to the outstanding principal amount of the loans thereunder

7

(e)  shall continue to be paid in such manner on the applicable payment dates under the Second Lien Credit Agreement, and (B) the remainder of such aggregate accrued interest will accrue, subject to section 506(b) of the Bankruptcy Code, and not be paid in cash during the course of these chapter 11 cases, without further order of the Court.

(e)  Fees and Expenses. As additional adequate protection, subject to section 506(b) of the Bankruptcy Code, the Debtors shall pay indefeasibly in cash: (i) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the First Lien Agent under the First Lien Credit Agreement arising prior to the Petition Date; and (ii) on a current basis, the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the First Lien Agent under the First Lien Credit Agreement arising subsequent to the Petition Date. The payment of the fees, expenses and disbursements set forth in this subparagraph (e) (including professional fees and expenses of any professionals or advisors retained by or on behalf of the First Lien Agent) shall be made within ten (10) business days after the receipt by the Debtors (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; provided, however, that the Debtors may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtors pay in full the undisputed portion of such Invoiced Fees, with the Disputed Invoiced Fees being paid upon resolution of any dispute by the parties, or by the Court after notice and a hearing. The reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Second Lien Agent under the Second Lien Credit Agreement will accrue, subject to section 506(b) of the Bankruptcy Code, post-petition, but will not be paid in cash during the course of these chapter 11 cases, without further order of the Court.

(f)  Information. The Debtors shall provide to each Prepetition Agent a weekly report, in the form of the Budget, comparing actual results to budgeted amounts for all categories appearing in the Budget, to be delivered on each Friday beginning on October 8, 2010.

8

6. The Adequate Protection Liens and Adequate Protection Claims granted pursuant to this Interim Order shall constitute valid and duly perfected security interests and liens and allowed administrative expense claims, respectively, only to the extent that the respective Prepetition Secured Parties had valid, unavoidable and duly perfected liens on the Prepetition Collateral, including the Cash Collateral, on the Petition Date, and subject to any defenses that may exist with respect to such liens. The payment or accrual by the Debtors of any amounts as interest, fees or expenses to any of the First Lien Secured Parties or to the Second Lien Secured Parties under this Interim Order shall be subject to allowance and recharacterization in accordance with section 506(b) of the Bankruptcy Code.

7. Under the circumstances and given that the Adequate Protection is consistent with the Bankruptcy Code, and based on the consent of the First Lien Agent and the Second Lien to the entry of this Interim Order, the Court finds that the Adequate Protection provided herein is reasonable and sufficient to protect the interests of the respective Prepetition Secured Parties in the Prepetition Collateral, including the Cash Collateral, for the period covered by this Interim Order. Notwithstanding any other provision hereof, the grant of the Adequate Protection pursuant hereto is without prejudice to the right of either Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.

8. As between the First Lien Secured Parties and the Second Lien Secured Parties, the Adequate Protection provided to each Prepetition Agent for the benefit of the

applicable Prepetition Secured Parties shall be governed by the terms of the Intercreditor Agreement.

9. Notwithstanding any provision of this Interim Order to the contrary, the Adequate Protection granted to the Prepetition Secured Parties pursuant to this Interim Order shall be subject and subordinate to the payment of quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (collectively, the "Carveout"). So long as the Debtors remain entitled to use Cash Collateral, and so long as such payments are authorized under the Budget or otherwise under Paragraph 2 of this Interim Order, the Debtors shall be permitted to pay all compensation and reimbursement allowed and payable under sections 330 and 331 of the Bankruptcy Code, and orders of this Court.

10. Subject to the Cure Right (as defined below), the Debtors shall be permitted to use Cash Collateral under the terms of this Interim Order until the earlier of (i) the expiration of the Interim Period, and (ii) the date that is five (5) business days after the date that either of the First Lien Agent or the Second Lien Agent (subject to the restrictions on the Second Lien Agent set forth in the Intercreditor Agreement) provide notice to the Debtors in writing of the occurrence of an "Event of Default."

11. For purposes of this Interim Order and the use of Cash Collateral, an "Event of Default" shall occur if (a) the Debtors fail to perform any of their obligations in accordance with the terms of the Interim Order, including, without limitation, (i) the Debtors' failure to use Cash Collateral in compliance with the Budget (subject to the Allowed Variances), or (ii) the Debtors' failure to comply with the Adequate Protection

obligations; (b) a Chapter 11 trustee is appointed; or (c) the Debtors' chapter 11 cases are converted to cases under Chapter 7. However, to the extent any Event of Default is a payment default or is otherwise susceptible to cure, the applicable Prepetition Agent shall provide the Debtors with written notice thereof and (x) in the case of a payment default, three (3) business days' opportunity to cure such default, or (y) in the case of any other default, ten (10) business days' opportunity to cure such default before the Debtors shall be prohibited from using Cash Collateral (the "Cure Right").

12. Any termination of the Debtors' right to use Cash Collateral pursuant to the terms of this Interim Order shall be without prejudice to the right of the Debtors, or any successor thereto, to request authority from this Court to use Cash Collateral over the objection of any of the Prepetition Secured Parties and shall be without prejudice to any parties' rights (subject to the Intercreditor Agreement) to contest any such request. The Debtors may request a hearing seeking such authority on one business day's notice, subject to the Court's availability.

13. The Prepetition Secured Parties are hereby barred from placing an administrative hold on any account holding any of the Cash Collateral.

14. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any plans of reorganization in the Debtors' chapter 11 cases, (ii) converting the Debtors' chapter 11 cases to Chapter 7 cases, or (iii) dismissing the Debtors' chapter 11 cases, and the terms and provisions of this Interim Order as well as the Adequate Protection Liens granted pursuant to this Interim Order shall continue in full force and effect notwithstanding the

entry of such order, and such Adequate Protection Liens shall maintain their priority as provided by this Interim Order.

15. Any stay, modification, reversal, lapse, or vacation of this Interim Order shall not affect the validity of any obligation of the Debtors to any of the Prepetition Secured Parties incurred pursuant to this Interim Order. Notwithstanding any such stay, modification, reversal, lapse, or vacation, all use of Cash Collateral and all obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal, lapse, or vacation, shall be governed in all respects by the original provisions hereof and the Prepetition Secured Parties shall be entitled to all the rights, privileges, and benefits, including without limitation, the Adequate Protection Liens granted prior to the date of such stay, modification, reversal, lapse, or vacation.

16. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, or any other Bankruptcy Rule or Local Rule, this Interim Order shall be effective and enforceable immediately upon entry and there shall be no stay of execution or effectiveness of this Interim Order.

17. The Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to the interpretation or implementation of this Interim Order.

18. The Debtors shall, on or before October 1, 2010, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order, to the parties having been given notice of the Preliminary Hearing, to any party that has filed prior to

such date a request for notice with this Court, and to counsel for any statutory committee of unsecured creditors appointed pursuant to 11 U.S.C. § 1102. The Debtors shall make copies of the First Lien Loan Documents and the Second Lien Loan Documents available to creditors and other parties in interest upon request to counsel.

19. ~~Any party in interest objecting to the use of Cash Collateral on the terms described herein shall file written objections with the United States Bankruptcy Court Clerk for the Eastern District of Virginia, Norfolk Division, no later than 4:00 p.m. on October ___, 2010, which shall be served so that the same are received on or before such date and time by: (a) proposed counsel for the Debtors and Debtors in possession, McGuireWoods LLP, Attn: Douglas M. Foley, 9000 World Trade Center, 101 West Main Street, Norfolk, Virginia, 23510, (b) the First Lien Agent and its counsel; (c) the Second Lien Agent and its counsel; (d) counsel for any statutory committee appointed in these cases, and (e) the Office of the United States Trustee.~~

~~20. The Final Hearing to consider the Motion will be held on a date to be determined by this Court.~~

21. The requirement under Local Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

22. The relief granted herein is effective through and including October 7, 2010. On October 7, 2010, at 1:30 p.m. (Eastern) in the United States Bankruptcy Court for the Eastern District of Virginia, Walter E. Hoffman U.S. Courthouse, 4th Floor, 600 Granby Street, Norfolk, Virginia 23510, this Court shall conduct a de novo hearing to consider and rule upon the Motion. Except as provided for herein, the rights of all parties

13

are preserved in their entirety, and any findings of fact or conclusions of law are for purposes of this Interim Order only.

Dated:   Norfolk, Virginia
         October 1, 2010

_____
UNITED STATES BANKRUPTCY JUDGE

NOTICE OF JUDGMENT OR ORDER
Entered on docket  OCT 1 2010

14

WE ASK FOR THIS:

/s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia, 23510
(757) 640-3700

Proposed Attorneys for the Debtors and
Debtors in Possession

### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by all necessary parties.

/s/ Douglas M. Foley
Douglas M. Foley

\19327839.3

EXHIBIT A

Workflow Management Inc., et al
Budget
(dollars in thousands)

| Week Ending (Friday): | Forecast 10/8/2010 | Forecast 10/15/2010 | Forecast 10/22/2010 | Forecast 10/29/2010 | Forecast 11/5/2010 | Forecast 11/12/2010 | Forecast 11/19/2010 | Forecast 11/26/2010 | Forecast 12/3/2010 | Forecast 12/10/2010 | Forecast 12/17/2010 | Forecast 12/24/2010 | Forecast 12/31/2010 | Forecast 1/7/2011 | Forecast 1/14/2011 | Forecast 1/21/2011 | Forecast 1/28/2011 | Forecast 2/4/2011 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Cash Receipts | 12,764 | 9,721 | 11,649 | 12,706 | 12,137 | 13,144 | 11,770 | 9,759 | 9,323 | 11,436 | 11,260 | 11,765 | 13,287 | 10,916 | 10,659 | 10,699 | 12,207 | 11,329 | 206,630 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | | | |
| Payroll | (5,023) | (823) | (6,633) | (523) | (5,216) | (534) | (6,279) | (523) | (5,138) | (579) | (4,974) | (625) | (6,534) | (625) | (5,227) | (625) | (6,723) | (647) | (57,251) |
| Rent - RE & Equipment | (1,392) | (50) | (430) | (1,392) | (50) | (50) | (50) | (1,772) | (50) | (50) | (50) | (430) | (1,492) | (50) | (50) | (430) | (1,492) | (50) | (9,330) |
| Utilities | (120) | (420) | (245) | (120) | (120) | (120) | (120) | (245) | (120) | (120) | (120) | (245) | (120) | (120) | (120) | (120) | (245) | (120) | (2,960) |
| Taxes (ex. Payroll) | (178) | (660) | (427) | (402) | (138) | (300) | (591) | (743) | (6) | (278) | (663) | (667) | (195) | (30) | (278) | (692) | (881) | (135) | (7,264) |
| Freight & Shipping | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (6,076) |
| Customer Related Costs | (4,370) | (2,420) | (3,263) | (3,530) | (3,723) | (5,199) | (5,073) | (3,609) | (4,973) | (5,198) | (3,417) | (1,992) | (3,548) | (5,073) | (3,648) | (5,173) | (5,423) | (3,594) | (73,225) |
| Customer Postage | (760) | (810) | (710) | (660) | (662) | (815) | (720) | (664) | (662) | (710) | (810) | (710) | (710) | (710) | (910) | (710) | (710) | (710) | (13,153) |
| Corporate Expenses | (875) | (1,362) | (737) | (737) | (1,425) | (1,300) | (1,300) | (1,300) | (1,300) | (1,300) | (738) | (738) | (1,300) | (1,300) | (1,300) | (1,300) | (1,300) | (1,300) | (20,912) |
| Subtotal Operating Disbursements | (13,057) | (6,883) | (12,783) | (7,701) | (11,671) | (8,655) | (14,470) | (9,194) | (12,586) | (8,573) | (11,109) | (5,744) | (14,237) | (8,245) | (11,870) | (9,367) | (17,112) | (6,893) | (190,171) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | | | | | |
| Principal Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 1st Lien Interest | - | - | - | - | - | - | - | - | - | - | - | - | (2,150) | - | - | - | - | - | (2,150) |
| 2nd Lien Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Revolver Interest & LC Fees | - | - | - | - | - | - | - | - | - | - | - | - | (650) | - | - | - | - | - | (650) |
| Professional Fees | - | - | - | - | (250) | - | - | - | (1,058) | - | - | - | - | (1,033) | (1,033) | - | - | (983) | (3,323) |
| Subtotal Non-Operating Disbursements | - | - | - | - | (250) | - | - | - | (1,058) | - | - | - | (2,800) | (1,033) | (1,033) | - | - | (983) | (6,123) |
| Net Increase (Decrease) in Cash | (293) | 2,838 | (1,134) | 5,006 | 215 | 4,489 | (2,701) | 565 | (4,321) | 2,863 | 151 | 6,020 | (3,650) | 1,638 | (1,211) | 1,312 | (4,905) | 3,453 | 10,336 |
| **Cash Balance Rollforward** | | | | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | 15,352 | 15,060 | 17,898 | 16,763 | 21,769 | 21,984 | 26,474 | 23,773 | 24,338 | 20,017 | 22,880 | 23,031 | 29,051 | 25,401 | 27,039 | 25,828 | 27,140 | 22,235 | 15,352 |
| Net Increase (Decrease) in Cash | (293) | 2,838 | (1,134) | 5,006 | 215 | 4,489 | (2,701) | 565 | (4,321) | 2,863 | 151 | 6,020 | (3,650) | 1,638 | (1,211) | 1,312 | (4,905) | 3,453 | 10,336 |
| Ending Book Balance | 15,060 | 17,898 | 16,763 | 21,769 | 21,984 | 26,474 | 23,773 | 24,338 | 20,017 | 22,880 | 23,031 | 29,051 | 25,401 | 27,039 | 25,828 | 27,140 | 22,235 | 25,689 | 25,689 |

- Initial period includes nine days from September 30 to October 8, 2010
- Payroll includes payroll and other compensation, payroll taxes, employee benefits, expense reimbursements and temporary employee expenses consistent with First Day Motion
- Utilities includes deposit consistent with First Day Motion
- Taxes includes sales and use tax (excludes payroll taxes) consistent with First Day Motion
- Freight & Shipping expenses consistent with First Day Motion
- Customer Related Costs includes cost of products either manufactured by the company or outsourced through third parties includes broker services, customer rebates consistent with First Day Motion
- Customer Postage includes prepaid customer postage consistent with Customer Practices First Day Motion
- Corporate Expenses includes information technology and other operating expenses
- Professional Fees subject to Court approval to the extent required
- First Lien Interest for term loan and Revolver A and B Interest and Letter of Credit fees to be paid consistent with Cash Collateral First Day Motion