# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| **WORKFLOW MANAGEMENT, INC.,** | ) |  |
| <u>et</u> <u>al.</u>, | ) | Case No. 10-74617 (SCS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

---

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## FOR WORKFLOW MANAGEMENT, INC.
## AND ITS AFFILIATED DEBTORS

---

Dated:  November 10, 2010

McGUIREWOODS LLP
Douglas M.  Foley (VSB No.  34364)
Patrick L.  Hayden (VSB No.  30351)
9000 World Trade Center
101 West Main Street
Norfolk, Virginia 23510
(757) 640-3700

TAVENNER & BERAN, PLC
Lynn L. Tavenner (VSB No. 30083)
Paula S. Beran (VSB No. 34679)
20 North Eighth Street
Second Floor
Richmond, Virginia 23219
(804) 783-8300

Attorneys for the Debtors and
Debtors in Possession

ARTICLE I.	DEFINITIONS ............................................................................................... 1

1.1.	"Administrative Expense Claim" .............................................................. 1

1.2.	"Affiliate" .................................................................................................. 1

1.3.	"Allowed" .................................................................................................. 1

1.4.	"Assets" ..................................................................................................... 1

1.5.	"Avoidance Actions" ................................................................................ 1

1.6.	"Ballot" ..................................................................................................... 1

1.7.	"Balloting Agent" ..................................................................................... 1

1.8.	"Bankruptcy Code" ................................................................................... 1

1.9.	"Bankruptcy Court" .................................................................................. 2

1.10.	"Bankruptcy Rules" .................................................................................. 2

1.11.	"Borrower" ................................................................................................ 2

1.12.	"Business Day" ......................................................................................... 2

1.13.	"Cash" ....................................................................................................... 2

1.14.	"Cash Collateral Orders" .......................................................................... 2

1.15.	"Causes of Action" ................................................................................... 2

1.16.	"Chapter 11 Cases" ................................................................................... 2

1.17.	"Claim" ..................................................................................................... 2

1.18.	"Claims Agent" ......................................................................................... 2

1.19.	"Committee" .............................................................................................. 2

1.20.	"Confirmation Date" ................................................................................. 2

1.21.	"Confirmation Hearing" ............................................................................ 3

1.22.	"Confirmation Order" ............................................................................... 3

1.23.	"Contested Claim" .................................................................................... 3

1.24.	"Contested Claims Reserve" ..................................................................... 3

1.25.	"Convenience Class Claim" ...................................................................... 3

1.26.	"Cross Lien Holder" .................................................................................. 3

1.27.	"CS" .......................................................................................................... 3

1.28.	"Cure Cost" ............................................................................................... 3

1.29.	"Debtors" ................................................................................................... 3

1.30.	"Debtor-in-Possession" ............................................................................ 3

1.31.	"Disallowed" ............................................................................................. 3

1.32. "Disbursing Agent"..........................................................................................4

1.33. "Disclosure Statement"....................................................................................4

1.34. "Disclosure Statement Order"..........................................................................4

1.35. "Distribution Date"...........................................................................................4

1.36. "Effective Date".................................................................................................4

1.37. "Entity".............................................................................................................4

1.38. "Equity Interest"...............................................................................................4

1.39. "Estate".............................................................................................................4

1.40. "Exculpated Persons".......................................................................................4

1.41. "Exit Lender".....................................................................................................5

1.42. "Exit Loan".......................................................................................................5

1.43. "Exit Loan Agreement".....................................................................................5

1.44. "Fee Application"..............................................................................................5

1.45. "Fee Claim".......................................................................................................5

1.46. "Final Order"....................................................................................................5

1.47. "First Lien Administrative Agent".....................................................................5

1.48. "First Lien Credit Agreement"..........................................................................5

1.49. "First Lien Credit Facility"...............................................................................5

1.50. "First Lien Guaranties".....................................................................................5

1.51. "First Lien Guaranty Claims"...........................................................................5

1.52. "First Lien Lender Claims"...............................................................................5

1.53. "First Lien Lenders".........................................................................................6

1.54. "First Lien Loan Documents"............................................................................6

1.55. "First Lien Mortgages".....................................................................................6

1.56. "First Lien Pledge Agreement".........................................................................6

1.57. "First Lien Secured Parties"..............................................................................6

1.58. "General Unsecured Claim"..............................................................................6

1.59. "Guarantors".....................................................................................................6

1.60. "Guaranty".........................................................................................................6

1.61. "Insider".............................................................................................................6

1.62. "Intercompany Claim".......................................................................................6

1.63. "Intercreditor Agreement".................................................................................6

1.64. "Internal Revenue Code"...................................................................................7

1.65. "IRS" ................................................................................................................ 7

1.66. "Issuer" ............................................................................................................ 7

1.67. "Lease Rejection Damage Claim" ..................................................................... 7

1.68. "Letter of Credit Subfacility" ........................................................................ 7

1.69. "Letters of Credit" ........................................................................................... 7

1.70. "Loan Parties" .................................................................................................. 7

1.71. "Notice of Confirmation" ............................................................................... 7

1.72. "Objection Deadline" ...................................................................................... 7

1.73. "Ohio Development Loan" ............................................................................... 7

1.74. "Ohio Equipment" ........................................................................................... 7

1.75. "Ohio Security Agreement" ............................................................................ 7

1.76. "Other Guaranty Claims " ............................................................................... 7

1.77. "Other Secured Claims" ................................................................................... 8

1.78. "PBGC" ............................................................................................................. 8

1.79. "Pension Plan" ................................................................................................. 8

1.80. "Perseus" .......................................................................................................... 8

1.81. "Person" ........................................................................................................... 8

1.82. "Petition Date" ................................................................................................. 8

1.83. "Plan" ............................................................................................................... 8

1.84. "Plan Distribution" .......................................................................................... 8

1.85. "Plan Documents" ............................................................................................ 8

1.86. "Plan Supplement" ........................................................................................... 8

1.87. "Prepetition Agents" ........................................................................................ 8

1.88. "Prepetition Collateral" ................................................................................... 8

1.89. "Prepetition Personal Property Collateral" .................................................... 8

1.90. "Prepetition Real Property Collateral" ........................................................... 9

1.91. "Prepetition Secured Parties" .......................................................................... 9

1.92. "Priority Non-Tax Claim" ............................................................................... 9

1.93. "Priority Tax Claim" ........................................................................................ 9

1.94. "Professional" .................................................................................................. 9

1.95. "Rejection Damage Claim" .............................................................................. 9

1.96. "Reorganized Debtors" .................................................................................... 9

1.97. "Revolver A" .................................................................................................... 9

1.98. "Revolver B" ........................................................................................... 9

1.99. "Revolving Credit Facility" ....................................................................... 9

1.100. "Schedules" ............................................................................................ 9

1.101. "Second Lien Administrative Agent" ........................................................ 9

1.102. "Second Lien Credit Agreement" .............................................................. 9

1.103. "Second Lien Credit Facility" ................................................................... 9

1.104. "Second Lien Guaranties" ....................................................................... 10

1.105. "Second Lien Guaranty Claims" .............................................................. 10

1.106. "Second Lien Lender Claims" .................................................................. 10

1.107. "Second Lien Lenders" ............................................................................ 10

1.108. "Second Lien Loan Documents" .............................................................. 10

1.109. "Second Lien Mortgages" ....................................................................... 10

1.110. "Second Lien Pledge Agreement" ........................................................... 10

1.111. "Second Lien Secured Parties" ............................................................... 10

1.112. "Section 503(b)(9) Bar Date" .................................................................. 10

1.113. "Section 503(b)(9) Claims" ..................................................................... 10

1.114. "Secured Claim" ..................................................................................... 10

1.115. "SilverPoint" .......................................................................................... 11

1.116. "Subordinated Claim" ............................................................................. 11

1.117. "Subsidiary Debtor" ............................................................................... 11

1.118. "Subsidiary Equity Interest" ................................................................... 11

1.119. "Term Loan Facility" .............................................................................. 11

1.120. "Unsecured Contingent Claim" ............................................................... 11

1.121. "Unsecured Note Claims" ....................................................................... 11

1.122. "Unsecured Notes" .................................................................................. 11

1.123. "U.S. Trustee" ........................................................................................ 11

1.124. "WF Holdings/Carlyle Note" ................................................................... 11

1.125. "WF Capital" .......................................................................................... 11

1.126. "WF Capital Equity Interests" ................................................................. 11

1.127. "WF Capital/BB&T Note" ....................................................................... 11

1.128. "WF Capital/Perseus Convertible Note" .................................................. 12

1.129. "WF Capital/Perseus Interest Note" ........................................................ 12

1.130. "Workflow Management/Perseus Note" ................................................... 12

ARTICLE II.      INTERPRETATION AND APPLICATION ................................................... 12

2.1.     Interpretation ................................................................................. 12

2.2.     Application of Definitions and Rules of Construction Contained in the Bankruptcy Code ......................................................................... 12

2.3.     Other Terms ................................................................................... 12

2.4.     Incorporation of Plan Documents .................................................. 13

ARTICLE III.     CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ................. 13

3.1.     Administrative Expense Claims and Tax Claims ............................... 13

3.2.     Claims and Equity Interests ............................................................ 13

3.3.     Separate Classification of Other Secured Claims ............................. 15

ARTICLE IV.     IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS ..................................................................... 15

4.1.     Impaired and Unimpaired Classes of Claims .................................... 15

4.2.     Impairment Controversies ............................................................... 15

4.3.     Classification Controversies ............................................................ 15

ARTICLE V.     PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN ................................................... 15

5.1.     Class 1 – Priority Non-Tax Claims. ................................................. 15

5.2.     Class 2 – First Lien Lender Claims .................................................. 16

5.3.     Class 3 –First Lien Lender Claims of Cross Lien Holders ................. 16

5.4.     Class 4 – Second Lien Lender Claims .............................................. 16

5.5.     Class 5 – Second Lien Lender Claims of Cross Lien Holders ............ 16

5.6.     Class 6 – Other Secured Claims ...................................................... 17

5.7.     Class 7 – General Unsecured Claims ............................................... 17

5.8.     Class 8 – Lease Rejection Damage Claims ....................................... 17

5.9.     Class 9 – Unsecured Note Claims .................................................... 18

5.10.     Class 10 – Unsecured Contingent Claims ........................................ 18

5.11.     Class 11 – Intercompany Claims ..................................................... 18

5.12.     Class 12 – WF Capital Equity Interests ........................................... 18

5.13.     Class 13 – Subsidiary Equity Interests ............................................ 18

5.14.     Class 14 – Convenience Claims ...................................................... 19

5.15.     Deemed Satisfaction of Other Guaranty Claims ............................... 19

5.16.     Reinstatement of Pension Plan ........................................................ 19

5.17. Reinstatement of Insurance Policies ................................................................ 19

ARTICLE VI. PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS
UNDER THE PLAN ................................................................................. 19

6.1. Unclassified Claims ............................................................................... 19

6.2. Treatment of Administrative Expense Claims ....................................... 19

6.3. Treatment of Priority Tax Claims .......................................................... 21

ARTICLE VII. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR
EQUITY INTERESTS ............................................................................. 21

7.1. Classes Entitled to Vote ......................................................................... 21

7.2. Class Acceptance Requirement ............................................................... 22

7.3. Tabulation of Votes on a Non-Consolidated Basis ................................ 22

7.4. Separate Plan for Each Debtor ............................................................... 22

7.5. Cramdown ............................................................................................... 22

ARTICLE VIII. MEANS FOR IMPLEMENTATION OF THE PLAN ................................ 22

8.1. Certain Transactions On or Prior to the Effective Date ......................... 22

8.2. Corporate Action .................................................................................... 23

8.3. Continued Corporate Existence of the Debtors ..................................... 23

8.4. Re-vesting of Assets ............................................................................... 24

8.5. Initial Boards of Directors ..................................................................... 24

8.6. Officers ................................................................................................... 24

8.7. Retention of Causes of Action/Reservation of Rights .......................... 24

ARTICLE IX. THE DISBURSING AGENT ....................................................................... 25

9.1. Appointment of the Disbursing Agent ................................................... 25

9.2. Powers and Duties .................................................................................. 25

9.3. Disbursing Agent Post-Effective Date .................................................. 25

ARTICLE X. DISTRIBUTION PROVISIONS ................................................................... 26

10.1. Sources of Cash for Plan Distributions .................................................. 26

10.2. Investment of Funds Held by the Disbursing Agent; Tax Reporting by the
Disbursing Agent .................................................................................... 26

10.3. Plan Distributions ................................................................................... 26

10.4. Timing of Plan Distributions ................................................................. 26

10.5. Address for Delivery of Plan Distributions/Unclaimed Distributions ................ 27

10.6. Time Bar to Cash Payments ................................................................... 27

| | 10.7. | Manner of Payment under the Plan | 27 |
|---|---|---|---|
| | 10.8. | Expenses Incurred on or after the Effective Date and Claims of the Disbursing Agent | 27 |
| | 10.9. | Fractional Plan Distributions | 28 |
| | 10.10. | Surrender and Cancellation of Instruments | 28 |
| ARTICLE XI. | | PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS | 28 |
| | 11.1. | Prosecution of Contested Claims | 28 |
| | 11.2. | Objection Deadline | 28 |
| | 11.3. | Claims Settlement | 29 |
| | 11.4. | Entitlement to Plan Distributions Upon Allowance | 29 |
| | 11.5. | Contested Claims Reserve | 29 |
| | 11.6. | Estimation of Claims | 29 |
| | 11.7. | No Recourse Against the Debtors or the Reorganized Debtors | 30 |
| ARTICLE XII. | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 30 |
| | 12.1. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 30 |
| | 12.2. | Cure Costs | 31 |
| | 12.3. | Claims Arising from Rejected Contracts | 32 |
| ARTICLE XIII. | | SETTLEMENTS AND COMPROMISES | 32 |
| | 13.1. | [Reserved] | 32 |
| ARTICLE XIV. | | CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE | 32 |
| | 14.1. | Conditions Precedent to Confirmation | 32 |
| | 14.2. | Conditions Precedent to the Occurrence of the Effective Date | 33 |
| | 14.3. | Waiver of Conditions | 33 |
| | 14.4. | Effect of Non-Occurrence of the Effective Date | 33 |
| ARTICLE XV. | | RETENTION OF JURISDICTION | 33 |
| ARTICLE XVI. | | MISCELLANEOUS PROVISIONS | 35 |
| | 16.1. | Third Party Agreements; Subordination | 35 |
| | 16.2. | Payment of Statutory Fees | 36 |
| | 16.3. | Satisfaction of Claims | 36 |
| | 16.4. | Exculpation | 36 |
| | 16.5. | Discharge of Liabilities | 36 |

16.6.    Discharge of Debtors ..................................................................... 37

16.7.    Notices ....................................................................................... 37

16.8.    Headings .................................................................................... 38

16.9.    Governing Law ........................................................................... 38

16.10.   Expedited Determination .............................................................. 38

16.11.   Exemption from Transfer Taxes ..................................................... 38

16.12.   Retiree Benefits........................................................................... 38

16.13.   Notice of Entry of Confirmation Order and Relevant Dates ............... 38

16.14.   Interest and Attorneys' Fees ......................................................... 39

16.15.   Modification of the Plan ............................................................... 39

16.16.   Revocation of Plan...................................................................... 39

16.17.   Setoff Rights .............................................................................. 40

16.18.   Compliance with Tax Requirements................................................ 40

16.19.   Rates......................................................................................... 40

16.20.   Injunctions ................................................................................ 40

16.21.   Binding Effect............................................................................. 41

16.22.   Severability ............................................................................... 41

16.23.   No Admissions............................................................................ 41

16.24.   Dissolution of the Committee ........................................................ 42

## EXHIBITS AND SCHEDULES

Debtors ………………………………………………………………….…Exhibit A

First Lien Term Sheet.......................................................................Schedule 1

Second Lien Term Sheet ...................................................................Schedule 2

Exit Loan Term Sheet ......................................................................Schedule 3

Workflow Management, Inc., and its affiliated debtors in the above-captioned jointly administered chapter 11 cases (the "Debtors"), hereby propose the following first amended joint chapter 11 plan of reorganization:

# ARTICLE I.

# DEFINITIONS

In this Plan, the following definitions apply:

**1.1.** "**Administrative Expense Claim**" means any right to payment, whether secured or unsecured, constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Chapter 11 Cases including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, and any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code.

**1.2.** "**Affiliate**" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

**1.3.** "**Allowed**" means, with respect to a Claim: (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (ii) any timely filed, liquidated, non-contingent Claim as to which the time for objection permitted by the Plan has expired and no objection has been interposed, or (iii) any Claim expressly allowed by a Final Order or by agreement in accordance with the provisions of the Plan.

**1.4.** "**Assets**" means, with respect to any Debtor, all of such Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

**1.5.** "**Avoidance Actions**" means all Causes of Action of the Estates that arise under section 544, 545, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

**1.6.** "**Ballot**" means those certain ballots sent to holders of Claims and Equity Interests for purposes of voting on the Plan.

**1.7.** "**Balloting Agent**" means Kurtzman Carson Consultants LLC.

**1.8.** "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

**1.9.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Virginia, Norfolk Division, or such other court having jurisdiction over the Chapter 11 Cases.

**1.10.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases.

**1.11.** "**Borrower**" means Workflow Management, Inc.

**1.12.** **"Business Day**" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

**1.13.** **"Cash"** means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

**1.14.** **"Cash Collateral Orders"** means the orders of the Bankruptcy Court, dated October 1, 2010, October 8, 2010, and October 29, 2010, granting the Debtors' authority to use cash collateral on an interim basis, and the order of the Bankruptcy Court dated XXXX, XX, granting the Debtors' authority to use cash collateral on a final basis.

**1.15.** **"Causes of Action"** means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise.

**1.16.** **"Chapter 11 Cases"** means the cases commenced under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to each of the Debtors styled as In re Workflow Management, Inc., et al., Chapter 11 Case No. 10-74617 (SCS), Jointly Administered.

**1.17.** **"Claim"** means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.18.** **"Claims Agent"** means Kurtzman Carson Consultants LLC.

**1.19.** **"Committee"** means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases, if any.

**1.20.** **"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.21.** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.22.** **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan.

**1.23.** **"Contested Claim"** means any Claim that is not an Allowed Claim or a Disallowed Claim.

**1.24.** **"Contested Claims Reserve"** means a reserve of Cash that may be established in accordance with Article 11.5 of the Plan.

**1.25.** **"Convenience Class Claim"** means a Claim, excluding a Claim for principal and interest based on a note issued under any indenture, loan agreement, or credit agreement, against any of the Debtors that otherwise would be a General Unsecured Claim that is either (i) in an amount that is equal to or less than $2,000 or (ii) a claim which is in an amount greater than $2,000 but whose holder has agreed on its Ballot to reduce its Claim to the amount of $2,000 in order to be treated as a Convenience Class Claim.

**1.26.** **"Cross Lien Holder"** means any Person that, together with its Affiliates (including the direct and indirect holders of its Equity Interests, other investors in such Person, and its and their other Affiliates), at the time of voting on the Plan or on the record date for voting on the Plan established by the Bankruptcy Court, as applicable, holds both a First Lien Lender Claim and a Second Lien Lender Claim.

**1.27.** **"CS"** means Credit Suisse, Cayman Islands Branch.

**1.28.** **"Cure Cost"** means the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an Executory Contract or Unexpired Lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.29.** **"Debtors"** means, collectively, WF Capital, and its direct and indirect subsidiaries, that are debtors in the Chapter 11 Cases as identified on <u>Exhibit A</u> annexed hereto.

**1.30.** **"Debtor-in-Possession"** means any Debtor, in its capacity as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**1.31.** **"Disallowed"** when used with respect to a Claim, means a Claim, or such portion of a Claim, (a) that has been disallowed by a Final Order, including any claims that are disallowed by failing to comply the Bankruptcy Court's order establishing the bar date for filing proofs of Claim, or (b) which were included on the Schedules as disputed or contingent and for which no contrary proof of Claim was timely filed.

**1.32. "Disbursing Agent"** means the Reorganized Debtors, in (a) making the Plan Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order, and (b) performing any other act or task that is or may be delegated to the Disbursing Agent under the Plan.

**1.33. "Disclosure Statement"** means the Disclosure Statement filed with respect to the Plan, as it may be amended or modified from time to time.

**1.34. "Disclosure Statement Order"** means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

**1.35. "Distribution Date"** means, with respect to any Claim, (i) the Effective Date or a date that is as soon as reasonably practicable after the Effective Date, if such Claim is then an Allowed Claim, (ii) a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, if not Allowed on the Effective Date; or (iii) the date of payment otherwise prescribed in this Plan.

**1.36. "Effective Date"** means a date selected by the Debtors which must be a Business Day that is no later than thirty (30) Business Days after all of the conditions specified in Article 14.2 have been satisfied or waived (to the extent subject to waiver).

**1.37. "Entity"** means any person or organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

**1.38. "Equity Interest"** means any outstanding ownership interest in any of the Debtors, including without limitation, interests evidenced by common or preferred stock, partnership interests, membership interests, warrants and options or other rights to purchase or otherwise receive any ownership interest in any of the Debtors and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation.

**1.39. "Estate"** means the estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

**1.40. "Exculpated Persons"** means each of (a) (i)the Debtors, (ii) the Reorganized Debtors, (iii) the Committee and the members thereof in their capacities as such, (iv) the Exit Lender; (b) (i) Perseus, (ii) the First Lien Secured Parties, and (iii) the Second Lien Secured Parties, to the extent such Person in this clause (b) votes in favor of the Plan (to the extent that such entity is eligible to vote on the Plan) and does not otherwise object to confirmation of the Plan; and (c) and all affiliates, officers, directors, principals, shareholders, parents, subsidiaries, members, auditors, accountants, financial advisors, predecessors, successors, servants, employees, agents, counsel, attorneys, partners, insurers, underwriters, administrators, executors, representatives or assigns of each of the foregoing Person listed in clause (a) or (b) to the extent such Person is an Exculpated Person.

**1.41.** **"Exit Lender"** means _____.

**1.42.** **"Exit Loan"** means that certain unsecured loan from the Exit Lender to the Debtors, in an original principal amount of $12.5 million ($12,500,000), to be used by the Debtors pursuant to the terms hereof and the Exit Loan Agreement.

**1.43.** **"Exit Loan Agreement"** means that certain loan agreement dated as of the Effective Date, between the Exit Lender and the Debtors, substantially on the terms provided in the term sheet attached hereto as Schedule 3 and in the form contained in the Plan Supplement, as amended, supplemented or modified from time to time.

**1.44.** **"Fee Application"** means an application for allowance and payment of a Fee Claim.

**1.45.** **"Fee Claim"** means a Claim of a Professional.

**1.46.** **"Final Order"** means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing is then pending, or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

**1.47.** **"First Lien Administrative Agent"** means CS, in its capacity as administrative agent for the First Lien Secured Parties pursuant to the First Lien Loan Documents.

**1.48.** **"First Lien Credit Agreement"** means that certain First Lien Credit Agreement, dated as of November 30, 2005, between Workflow Management, Inc., as borrower, the First Lien Lenders and the First Lien Administrative Agent, as amended from time to time.

**1.49.** **"First Lien Credit Facility"** means the Term Loan Facility and the Revolving Credit Facility made available pursuant to the First Lien Loan Documents.

**1.50.** **"First Lien Guaranties"** means the Guaranties entered into by the Guarantors in favor of the First Lien Administrative Agent for the benefit of the First Lien Secured Parties on account of the First Lien Lender Claims, as amended from time to time.

**1.51.** **"First Lien Guaranty Claims"** means any and all Claims against the Guarantors arising from or in connection with the First Lien Guaranties.

**1.52.** **"First Lien Lender Claims"** means any and all Claims, including the First Lien Guaranty Claims, against any of the Debtors arising from or in connection with the First Lien Loan Documents.

**1.53.** **"First Lien Lenders"** means the lenders who are party, from time to time, to the First Lien Credit Agreement.

**1.54.** "**First Lien Loan Documents**" means the First Lien Credit Agreement, the notes which evidence the loans under the First Lien Credit Facility, the fee letters referred to in the First Lien Credit Agreement, the First Lien Pledge Agreement, the First Lien Guaranties, the First Lien Mortgages, any outstanding Letters of Credit, and the Intercreditor Agreement, as any such documents are amended from time to time.

**1.55.** "**First Lien Mortgages**" means any mortgage recorded in favor of the First Lien Administrative Agent which secures the First Lien Lender Claims, as amended from time to time.

**1.56.** "**First Lien Pledge Agreement**" means that certain Pledge and Security Agreement dated as of November 30, 2005, granting a first priority security interest in substantially all of the personal property assets of the Loan Parties, by each Loan Party in favor of the First Lien Administrative Agent for the benefit of the First Lien Secured Parties, together with all documents, instruments and agreements executed or entered into in connection therewith, as amended from time to time.

**1.57.** "**First Lien Secured Parties**" means the First Lien Administrative Agent, the First Lien Lenders and the Issuer.

**1.58.** **"General Unsecured Claim"** means any unsecured Claim against a Debtor, other than an Administrative Expense Claim, a Convenience Class Claim, an Intercompany Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Unsecured Note Claim, a Lease Rejection Damage Claim, or an Unsecured Contingent Claim.

**1.59.** "**Guarantors**" means each of Workflow Holdings Corporation; WF Holdings, Inc.; Workflow Direct, Inc.; Workflow Management Acquisition II Corp.; WFIH, Inc.; WFMI, Inc.; Workflow of Florida, Inc.; Workflow Solutions LLC; SFI of Puerto Rico, Inc.; Old FGS, Inc.; Old UE, LLC; The Relizon Company; Relizon Wisconsin Inc.; Relizon (Texas) Ltd., LLP; Relizon SNE Inc.; Relizon KNE Inc.; Relizon de Mexico Inc.; Formcraft Holdings General Partner, Inc.; and Formcraft Holdings Limited Partner, Inc.

**1.60.** **"Guaranty"** means any guaranty by one or more Debtors of an obligation of any other Debtor.

**1.61.** **"Insider"** means with respect to any Person, all Persons that would fall within the definition assigned to such terms in section 101(31) of the Bankruptcy Code.

**1.62.** **"Intercompany Claim"** means any Claim held by any Debtor against any other Debtor that occurred or came into existence prior to the Petition Date.

**1.63.** **"Intercreditor Agreement"** means that certain Intercreditor Agreement, dated as of November 30, 2005, as amended April 30, 2009, by and between the First Lien Administrative Agent and the Second Lien Administrative Agent, and acknowledged by each Loan Party,

together with all documents, instruments and agreements executed or entered into in connection therewith, and any amendments thereto.

**1.64.** **"Internal Revenue Code"** means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

**1.65.** "**IRS**" means the United States Internal Revenue Service.

**1.66.** "**Issuer**" means Credit Suisse, as issuer of the outstanding Letters of Credit under the Letter of Credit Subfacility.

**1.67.** **"Lease Rejection Damage Claim**" means any Claim arising out of the rejection of an unexpired lease of non-residential real property pursuant to section 365 of the Bankruptcy Code.

**1.68.** "**Letter of Credit Subfacility**" means the Letter of Credit subfacility under, and that forms a part of, the Revolving Credit Facility under the First Lien Credit Agreement.

**1.69.** "**Letters of Credit**" means any letters of credit issued by the Issuer under the Letter of Credit Subfacility, together with all documents, instruments and agreements executed or entered into in connection therewith, and any amendments thereto.

**1.70.** "**Loan Parties**" means the Guarantors and the Borrower.

**1.71.** **"Notice of Confirmation"** means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims and Equity Interests.

**1.72.** **"Objection Deadline"** means the deadline for filing objections to Claims as set forth in Article 11.2 of the Plan.

**1.73.** **"Ohio Development Loan"** means that certain loan made pursuant to a loan agreement between The Relizon Company and the State of Ohio Director of Development, dated as of January 31, 2003, in the original principal amount of $800,000, which matures on January 31, 2013 and is secured pursuant to the Ohio Security Agreement.

**1.74.** **"Ohio Equipment"** means that certain equipment securing the Ohio Development Loan pursuant to the Ohio Security Agreement.

**1.75.** **"Ohio Security Agreement"** means that certain Security Agreement between The Relizon Company and the State of Ohio Director of Development, dated as of January 31, 2003, which grants a first priority security interest and lien in the Ohio Equipment, and provides a negative covenant precluding the encumbrance of the Ohio Equipment by any other security interest or lien.

**1.76.** **"Other Guaranty Claims "** means any Claim arising out of a Guaranty, except the First Lien Guaranty Claims and the Second Lien Guaranty Claims.

**1.77.** **"Other Secured Claims"** means all Secured Claims other than the First Lien Lender Claims and the Second Lien Lender Claims, and including the Ohio Development Loan.

**1.78.** **"PBGC"** means the Pension Benefit Guaranty Corporation.

**1.79.** **"Pension Plan"** means the Relizon Company retirement plan.

**1.80.** **"Perseus"** means Perseus, L.L.C., Perseus Partners VII, L.P., Perseus Acquisition/Recapitalization Fund, L.L.C., Perseus 2000 Expansion, L.L.C., WF Holdings Co-Investment, L.P. and Perseus Market Opportunity Fund, L.P., and each of their respective present and former officers, directors and employees.

**1.81.** **"Person"** means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

**1.82.** **"Petition Date"** means September 29, 2010.

**1.83.** **"Plan"** means this first amended joint chapter 11 plan of reorganization, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

**1.84.** **"Plan Distribution"** means the payment or distribution under the Plan of Cash, Assets, or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim or Allowed Equity Interest.

**1.85.** **"Plan Documents"** means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Article 2.4 of the Plan.

**1.86.** **"Plan Supplement"** means the compilation of Plan Documents or forms of documents specified in the Plan, including, but not limited to any exhibits or schedules to the Plan not included herewith, each in form and substance acceptable to the Debtors, which Debtors shall, as provided in Article 2.4, file with the Bankruptcy Court on or before the date that is ten (10) days prior to the Confirmation Hearing or at such other time as established by the Bankruptcy Court, all of which are incorporated herein by reference.

**1.87.** **"Prepetition Agents"** means the First Lien Administrative Agent and the Second Lien Administrative Agent.

**1.88.** **"Prepetition Collateral"** means the Prepetition Personal Property Collateral and the Prepetition Real Property Collateral.

**1.89.** **"Prepetition Personal Property Collateral"** means the personal property collateral pledged pursuant to the First Lien Pledge Agreement and the Second Lien Pledge Agreement.

**1.90.** "**Prepetition Real Property Collateral**" means the real property collateral pledged pursuant to the First Lien Mortgages and the Second Lien Mortgages.

**1.91.** "**Prepetition Secured Parties**" means the First Lien Secured Parties and the Second Lien Secured Parties.

**1.92.** "**Priority Non-Tax Claim**" means any Claim entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**1.93.** "**Priority Tax Claim**" means any Claim, whether secured or unsecured, entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.94.** "**Professional**" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in these Chapter 11 Cases.

**1.95.** "**Rejection Damage Claim**" means any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

**1.96.** "**Reorganized Debtors**" means from and after the Effective Date, WF Capital and its affiliated Debtors and any successors thereto by merger, consolidation, or otherwise.

**1.97.** "**Revolver A**" means that portion of the Revolving Credit Facility which matures May 31, 2011.

**1.98.** "**Revolver B**" means that portion of the Revolving Credit Facility which matures November 30, 2010, and was owned by SPCP Group LLC on the Petition Date.

**1.99.** "**Revolving Credit Facility**" means the revolving loan facility established pursuant to the First Lien Credit Agreement.

**1.100.** "**Schedules**" means the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by each of the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

**1.101.** "**Second Lien Administrative Agent**" means SilverPoint, in its capacity as successor administrative agent for the Second Lien Secured Parties pursuant to the Second Lien Loan Documents.

**1.102.** "**Second Lien Credit Agreement**" means that certain Second Lien Credit Agreement, dated as of November 30, 2005, between Workflow Management, Inc., as borrower, the Second Lien Lenders and the Second Lien Administrative Agent, as amended from time to time.

**1.103.** "**Second Lien Credit Facility**" means the term loan facility established pursuant to the Second Lien Credit Agreement.

**1.104.** "**Second Lien Guaranties**" means the Guaranties entered into by the Guarantors in favor of the Second Lien Administrative Agent, for the benefit of the Second Lien Secured Parties on account of the Second Lien Lender Claims, as amended from time to time.

**1.105.** "**Second Lien Guaranty Claims**" means any and all Claims against the Guarantors arising from or in connection with the Second Lien Guaranties.

**1.106.** "**Second Lien Lender Claims**" means any and all Claims, including the Second Lien Guaranty Claims, against any of the Debtors arising from or in connection with the Second Lien Loan Documents.

**1.107.** "**Second Lien Lenders**" means the lenders that are party, from time to time, to the Second Lien Credit Agreement.

**1.108.** "**Second Lien Loan Documents**" means the Second Lien Credit Agreement, the notes which evidence the loans outstanding under the Second Lien Credit Facility, the fee letter referred to in the Second Lien Credit Agreement, the Second Lien Pledge Agreement, the Second Lien Guaranties, the Second Lien Mortgages, and the Intercreditor Agreement, as any such documents are amended from time to time.

**1.109.** "**Second Lien Mortgages**" means any mortgage recorded in favor of the Second Lien Administrative Agent which secures the Second Lien Lender Claims, as amended from time to time.

**1.110.** "**Second Lien Pledge Agreement**" means that certain Pledge and Security Agreement dated as of November 30, 2005, granting a second priority security interest in substantially all of the personal property assets of the Loan Parties, by each Loan Party in favor of the Second Lien Administrative Agent, for the benefit of the Second Lien Secured Parties, together with all documents, instruments and agreements executed or entered into in connection therewith, as amended from time to time.

**1.111.** "**Second Lien Secured Parties**" means the Second Lien Administrative Agent and the Second Lien Lenders.

**1.112.** "**Section 503(b)(9) Bar Date**" means the deadline for the filing of Section 503(b)(9) Claims established pursuant to an order of the Bankruptcy Court.

**1.113.** "**Section 503(b)(9) Claims**" means any Claims against any of the Debtors entitled to administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code.

**1.114.** "**Secured Claim**" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such

interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the class of which Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

**1.115.** **"SilverPoint"** means Silver Point Finance L.L.C.

**1.116.** **"Subordinated Claim"** means a Claim against any Debtor subordinated by a Final Order.

**1.117.** **"Subsidiary Debtor"** means any Debtor other than WF Capital.

**1.118.** **"Subsidiary Equity Interest"** means any Equity Interest in a Subsidiary Debtor.

**1.119.** "**Term Loan Facility**" means the term loan facility established pursuant to the First Lien Credit Agreement.

**1.120.** "**Unsecured Contingent Claim**" means any Claim for which a proof of Claim was filed and which Claim is contingent in nature, but excluding any Claim estimated pursuant to section 11.6 hereof.

**1.121.** **"Unsecured Note Claims"** means a Claim against any Debtor arising under any of the Unsecured Notes.

**1.122.** **"Unsecured Notes"** means the WF Capital/BB&T Note, the WF Holdings/Carlyle Note, WF Capital/Perseus Convertible Note, the WF Capital/Perseus Interest Note, and the Workflow Management/Perseus Note.

**1.123.** **"U.S. Trustee"** means the Office of the United States Trustee for Region 4.

**1.124.** **"WF Holdings/Carlyle Note"** means the subordinated promissory note made by WF Holdings, Inc. payable to Carlyle Partners III, L.P., as holder representative for the benefit of the beneficial holders identified on Schedule I thereto, dated December 21, 2006, in the amount of approximately $12,500,000 (including accrued, but unpaid interest as of September 30, 2010), and any other documents appurtenant thereto, as applicable, and any amendments thereto.

**1.125.** **"WF Capital"** means WF Capital Holdings, Inc., a Delaware corporation, one of the Debtors and Debtors-in-Possession in the Chapter 11 Cases.

**1.126.** **"WF Capital Equity Interests"** means all Equity Interests in WF Capital.

**1.127.** **"WF Capital/BB&T Note"** means the note made by WF Capital payable to Branch Banking & Trust Company, dated as of December 31, 2008, in the amount of approximately $20 million (not including accrued, but unpaid interest as of September 30, 2010), and any other documents appurtenant thereto, as applicable, and any amendments thereto.

**1.128.  "WF Capital/Perseus Convertible Note"** means the amended and restated convertible note dated as of March 4, 2008, and made by WF Capital payable to Perseus Partners VII, L.P., in the amount of approximately $58.5 million (including accrued, but unpaid interest as of September 30, 2010), and any other documents appurtenant thereto, as applicable, and any amendments thereto, which note is convertible, at the note holder's option, to WF Capital Equity Interests.

**1.129.  "WF Capital/Perseus Interest Note"** means the demand note made by WF Capital payable to Perseus Market Opportunity Fund, L.P., in the amount of approximately $302,000 (including accrued, but unpaid interest as of September 30, 2010), and any other documents appurtenant thereto, as applicable, and any amendments thereto.

**1.130.  "Workflow Management/Perseus Note"** means the promissory note dated February 9, 2010, and made by Workflow Management, Inc. payable to Perseus, L.L.C., which was subsequently assigned by Perseus, L.L.C. to Perseus Market Opportunity Fund, L.P., in the amount of approximately $1.1 million (including accrued, but unpaid interest as of September 30, 2010), and any other documents appurtenant thereto, as applicable, and any amendments thereto.

## ARTICLE II.

## INTERPRETATION AND APPLICATION

### 2.1.    Interpretation.

Unless otherwise specified, all section, article, exhibit and schedule references in the Plan are to the respective section in, article of, or exhibit or schedule to, the Plan, as the same may be amended, waived, or modified from time to time.  Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender.  The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

### 2.2.    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.

Words and terms defined in section 101 of the Bankruptcy Code have the same meanings when used in the Plan, unless a different definition is set forth in Article 1 hereof.  The rules of construction contained in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to the construction of the Plan.  For the purposes of construction of the Plan, "or" is disjunctive.

### 2.3.    Other Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

**2.4.**　　**Incorporation of Plan Documents.**

All appendices, exhibits and schedules to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents shall be filed with the Bankruptcy Court as part of the Plan Supplement not less than ten (10) days prior to the commencement of the Confirmation Hearing or at such other time as established by the Bankruptcy Court, provided, however, that any Plan Documents that are or may be subject to confidentiality provisions or otherwise contain confidential or propriety information may be filed in redacted form or under seal.

Holders of Claims and Equity Interests may obtain a copy of the Plan Documents (in redacted form, as applicable, and excluding any Plan Documents that are filed under seal), once filed, by a written request sent to the following address:

> Workflow Ballot Processing Center
> c/o Kurtzman Carson Consultants LLC
> 2335 Alaska Ave
> El Segundo, CA 90245-4808
> T: (866) 967-1786
> www.kccllc.net/workflow

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Except as otherwise provided herein, for the purposes of organization, voting and all confirmation matters, all Claims and all Equity Interests in the Debtors will be classified as set forth in this Article III.

**3.1.**　　**Administrative Expense Claims and Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims will not be classified under the Plan, and will instead be treated separately as unclassified Claims on the terms set forth in Article VI.

**3.2.**　　**Claims and Equity Interests.**

The Claims against and the Equity Interests in, with respect to and to the extent applicable for, each Debtor are classified under the Plan as follows:

(a)　　Class 1 – Priority Non-Tax Claims

Class 1 shall consist of all Priority Non-Tax Claims.

(b)　　Class 2 – First Lien Lender Claims

Class 2 shall consist of all First Lien Lender Claims, except First Lien Lender Claims held by Cross Lien Holders.

(c)      <u>Class 3 – First Lien Lender Claims of Cross Lien Holders</u>

Class 3 shall consist of all First Lien Lender Claims that are held by Cross Lien Holders.

(d)      <u>Class 4– Second Lien Lender Claims</u>

Class 4 shall consist of all Second Lien Lender Claims, except Second Lien Lender Claims held by Cross Lien Holders.

(e)      <u>Class 5 – Second Lien Lender Claims of Cross Lien Holders</u>

Class 5 shall consist of all Second Lien Lender Claims that are held by Cross Lien Holders.

(f)      <u>Class 6 – Other Secured Claims</u>

Class 6 shall consist of all Other Secured Claims.

(g)      <u>Class 7 – General Unsecured Claims</u>

Class 7 shall consist of all General Unsecured Claims, subject to section 12.3 of the Plan.

(h)      <u>Class 8 – Lease Rejection Damage Claims</u>

Class 8 shall consist of all Lease Rejection Damage Claims.

(i)      <u>Class 9 – Unsecured Note Claims</u>

Class 9 shall consist of all Unsecured Note Claims.

(j)      <u>Class 10 – Unsecured Contingent Claims</u>

Class 10 shall consist of all Unsecured Contingent Claims.

(k)      <u>Class 11 – Intercompany Claims</u>

Class 11 shall consist of all Intercompany Claims.

(l)      <u>Class 12 – WF Capital Equity Interests</u>

Class 12 shall consist of all WF Capital Equity Interests.

(m)      <u>Class 13 – Subsidiary Equity Interests</u>

Class 13 shall consist of all Subsidiary Equity Interests.

(n)      <u>Class 14 – Convenience Claims</u>

Class 14 shall consist of all Convenience Claims.

### 3.3. <u>Separate Classification of Other Secured Claims.</u>

Although all Other Secured Claims against the Debtors have been placed in a single class for purposes of nomenclature, each such Other Secured Claim shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions.

## ARTICLE IV.

## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS

### 4.1. <u>Impaired and Unimpaired Classes of Claims.</u>

Priority Non-Tax Claims, Intercompany Claims, WF Capital Equity Interests and Subsidiary Equity Interests are not impaired under the Plan. All other classes of Claims and Equity Interests are impaired under the Plan.

### 4.2. <u>Impairment Controversies.</u>

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after upon notice and motion, determine such controversy at the Confirmation Hearing.

### 4.3. <u>Classification Controversies.</u>

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is properly classified under the Plan, the Bankruptcy Court shall, upon motion and notice, determine such controversy at the Confirmation Hearing. If the Court finds the classification of such Claim or Equity Interest, or any class of Claims or Equity Interests, is improper, such Claims or Equity Interests shall be reclassified and the ballots previously cast by the holders of such Claims or Equity Interests shall be counted in, and the Claim or Equity Interest shall receive the treatment prescribed in, the class in which the Bankruptcy Court determines such Claims or Equity Interests should have been classified, without the necessity of resoliciting votes on the Plan.

## ARTICLE V.

## PROVISIONS FOR TREATMENT OF CLAIMS
## AND EQUITY INTERESTS UNDER THE PLAN

The classes of Claims against and Equity Interests in, with respect to and to the extent applicable for, each Debtor shall be treated under the Plan as follows:

### 5.1. <u>Class 1 – Priority Non-Tax Claims.</u>

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of each Allowed Priority Non-Tax Claim, each Allowed Priority Non-Tax

Claim shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Claim entitles the holder in respect of such Claim shall be fully reinstated and retained, and such Allowed Priority Non-Tax Claim (including any amounts to which such holder is entitled pursuant to section 1124(2) of the Bankruptcy Code) shall be paid in full in accordance with such reinstated rights on the Effective Date.

**5.2.** **Class 2 – First Lien Lender Claims.**

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of each Allowed First Lien Lender Claim, each holder of an Allowed First Lien Lender Claim shall retain the liens securing its First Lien Lender Claim and receive deferred cash payments totaling at least the amount of such Allowed First Lien Lender Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in each Debtor's interest in such property, in the amounts and on the terms indicated on Schedule 1 attached hereto.

**5.3.** **Class 3 –First Lien Lender Claims of Cross Lien Holders.**

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of such holder's Allowed First Lien Lender Claim, each holder of an Allowed First Lien Lender Claim that is a Cross Lien Holder shall retain the liens securing its First Lien Lender Claim and receive deferred cash payments totaling at least the amount of such Allowed First Lien Lender Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in each Debtor's interest in such property, in the amounts and on the terms indicated on Schedule 1 attached hereto.

**5.4.** **Class 4 – Second Lien Lender Claims.**

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of such holder's Allowed Second Lien Lender Claim, each holder of an Allowed Second Lien Lender Claim shall retain the liens securing its Second Lien Lender Claim and receive deferred cash payments totaling at least the amount of such Allowed Second Lien Lender Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in each Debtor's interest in such property, in the amounts and on the terms indicated on Schedule 2 attached hereto.

**5.5.** **Class 5 – Second Lien Lender Claims of Cross Lien Holders**

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of such holder's Allowed Second Lien Lender Claim, each holder of an Allowed Second Lien Lender Claim that is a Cross Lien Holder shall retain the liens securing its Second Lien Lender Claim and receive deferred cash payments totaling at least the amount of such Allowed Second Lien Lender Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in each Debtor's interest in such property, in the amounts and on the terms indicated on Schedule 2 attached hereto.

**5.6.** __Class 6 – Other Secured Claims.__

Except to the extent that the holder agrees to less favorable treatment, each holder of an Allowed Other Secured Claim against any Debtor shall, at the sole option of the Debtor obligated for the payment of such Allowed Other Secured Claim, in full and complete satisfaction, settlement and release of and in exchange for such Allowed Claim, (i) receive from such Debtor on the Distribution Date, Cash equal to the Allowed amount of such claim; (ii) retain its lien in such property, or the proceeds of such property, securing such Allowed Other Secured Claim and be paid in the ordinary course of business in accordance with the terms existing between the Debtors and such holder with respect to such Allowed Other Secured Claim prior to the Petition Date; (iii) retain its lien in such property, or the proceeds of such property, securing such Allowed Other Secured Claim and receive deferred cash payments totaling at least the amount of such Allowed Other Secured Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in each Debtor's interest in such property, or (iv) be transferred the collateral securing such Claim, each in full and complete satisfaction of such claim.

**5.7.** __Class 7 – General Unsecured Claims.__

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of each Allowed General Unsecured Claim (subject to section 12.3 of the Plan), each holder of an Allowed General Unsecured Claim shall receive, in the sole discretion of the Debtors, either (i)(a) on the Distribution Date, a Cash payment in an amount equal to fifty percent (50%) of the amount of such holder's Allowed General Unsecured Claim, without interest, and (b) sixty (60) days after the Distribution Date, an additional Cash payment in an amount equal to fifty percent (50%) of the amount of such holder's Allowed General Unsecured Claim, without interest; or (ii) payment in the ordinary course of business in accordance with the terms existing between the Debtor and such holder with respect to such Allowed General Unsecured Claim prior to the Petition Date.

**5.8.** __Class 8 – Lease Rejection Damage Claims.__

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of each Lease Rejection Damage Claim, each holder of an Allowed Lease Rejection Damage Claim shall receive, in the sole discretion of the Debtors, either (i)(a) on the Distribution Date, a Cash payment in an amount equal to fifty percent (50%) of the amount of such holder's Allowed Lease Rejection Damage Claim, without interest, and (b) sixty (60) days after the Distribution Date, an additional Cash payment in an amount equal to fifty percent (50%) of the amount of such holder's Allowed Lease Rejection Damage Claim, without interest; or (ii) on the Distribution Date, a Cash payment in the amount of 1/12th of the amount of such holder's Allowed Lease Rejection Damage Claim, without interest, and additional Cash payments in the amount of 1/12th of such holder's Allowed Lease Rejection Damage Claim, without interest, on the last Business Day of each calendar month for the subsequent eleven calendar months beginning in the calendar month that is after the month in which the Distribution Date occurs.

**5.9.** **Class 9 – Unsecured Note Claims.**

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of each Allowed Unsecured Note Claim, each Allowed Unsecured Note Claim shall be, in full and complete satisfaction, settlement and release of and in exchange for such Allowed Unsecured Note Claim, reinstated, without interest during the pendency of the Chapter 11 Cases and notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of an Allowed Unsecured Note Claim to demand or receive payment of such Unsecured Note Claim prior to its stated maturity from and after the occurrence of a default, interest at an increased rate from and after the occurrence of a default, or any other right or benefit provided to such holder from and after the occurrence of a default.

**5.10.** **Class 10 – Unsecured Contingent Claims.**

Except to the extent that the holder agrees to less favorable treatment, each Allowed Unsecured Contingent Claim shall receive, upon the Allowed Unsecured Contingent Claim becoming a liquidated, fixed, and non-contingent claim, in the sole discretion of the Debtors, (i) (a) thirty (30) days after such date, a Cash payment in an amount equal to fifty percent (50%) of the amount of such holder's Allowed Unsecured Contingent Claim, without interest, and (b) sixty (60) days after such date, an additional Cash payment in an amount equal to fifty percent (50%) of the amount of such holder's Allowed Unsecured Contingent Claim, without interest; or (ii) all of the legal, equitable and contractual rights to which such Claim entitles the holder in respect of such Claim shall be fully reinstated and retained.

**5.11.** **Class 11 – Intercompany Claims.**

Each Allowed Intercompany Claim shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Claim entitles a holder in respect of such Claim shall be fully reinstated and retained.

**5.12.** **Class 12 – WF Capital Equity Interests.**

Each Allowed WF Capital Equity Interest shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Equity Interest entitles the holder in respect of such Equity Interest shall be fully reinstated and retained.

**5.13.** **Class 13 – Subsidiary Equity Interests.**

Each Allowed Subsidiary Equity Interest shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Equity Interest entitles a holder in respect of such Equity Interest shall be fully reinstated and retained.

**5.14.**  **Class 14 – Convenience Claims.**

Each holder of an Allowed Convenience Claim shall receive pursuant to the Plan, on the Distribution Date, a single Cash payment in an amount equal to one hundred percent (100%) of such holder's Allowed Convenience Claim, without interest.

**5.15.**  **Deemed Satisfaction of Other Guaranty Claims.**

All Other Guaranty Claims shall be allowed in the amount of zero dollars ($0.00) and deemed satisfied in full as a result of distributions made on the underlying Allowed claim guaranteed in respect of such Guaranty Claim, pursuant to Article 5.  From and after the Effective Date, no Other Guaranty Claim shall be of further force or effect.

**5.16.**  **Reinstatement of Pension Plan.**

All obligations of the Debtors under or pertaining to the Pension Plan shall be reinstated in full on the Effective Date.

**5.17.**  **Reinstatement of Insurance Policies.**

All insurance agreements, and all obligations of the Debtors and the counterparties thereto shall be reinstated in full, and will be enforceable according to their terms and applicable law on the Effective Date.  The Debtors' coverage under its director and officer liability insurance agreements (including any tail coverage) shall remain in full force and effect after the Effective Date for the term provided under such policies.  To the extent executory, such insurance agreements shall be deemed assumed pursuant to Article XII of the Plan.

## ARTICLE VI.

## PROVISIONS FOR TREATMENT
## OF UNCLASSIFIED CLAIMS UNDER THE PLAN

**6.1.**  **Unclassified Claims.**

Administrative Expense Claims and Priority Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively. Administrative Expense Claims and Priority Tax Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

**6.2.**  **Treatment of Administrative Expense Claims.**

All Administrative Expense Claims shall be treated as follows:

(a)  Time for Filing Administrative Expense Claims.

The holder of an Administrative Expense Claim, other than (i) a Fee Claim; (ii) a liability incurred and payable after the Petition Date in the ordinary course of business by a

Debtor (and not past due); (iii) a Section 503(b)(9) Claim; or (iv) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, the Committee, and the U.S. Trustee, notice of such Administrative Expense Claim within forty (40) days after service of Notice of Confirmation or such other specific date as may be established by the Bankruptcy Court. Such notice must include at a minimum (A) the name of the Debtor(s) which are purported to be liable for the Claim, (B) the name of the holder of the Claim, (C) the amount of the Claim, and (D) the basis of the Claim (including any documentation evidencing or supporting such Claim). **THE FAILURE TO FILE A PROOF OF ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE AND THE FAILURE TO SERVE SUCH NOTICE TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED, DISALLOWED AND DISCHARGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.**

(b)     Time for Filing Fee Claims.

Each Professional who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date or such other specific date as may be established by the Bankruptcy Court. **THE FAILURE TO FILE TIMELY AND SERVE SUCH FEE APPLICATION SHALL RESULT IN THE FEE CLAIM BEING FOREVER BARRED AND DISCHARGED.**

(c)     Time for Filing Section 503(b)(9) Claims.

In accordance with the Bar Date Order, the deadline for filing a Section 503(b)(9) Claim is December 8, 2010 at 5:00 p.m., Prevailing Pacific Time. **THE FAILURE TO SUBMIT SUCH REQUEST BY THE BAR DATE SHALL RESULT IN THE SECTION 503(B)(9) CLAIM BEING DEEMED DISALLOWED AS AN ADMINISTRATIVE EXPENSE CLAIM.** Such disallowance does not prevent such Claim from being Allowed as a Claim other than as an Administrative Expense Claim to the extent otherwise allowable.

(d)     Allowance of Administrative Expense Claims, Fee Claims and Section 503(b)(9) Claims.

An Administrative Expense Claim (other than a Fee Claim or Section 503(b)(9) Claim) with respect to which notice has been properly and timely filed and served pursuant to Article 6.2(a), or a Section 503(b)(9) Claim with respect to which a request for allowance has been properly filed and served pursuant to Article 6.2(c), shall become an Allowed Administrative Expense Claim if no objection is filed within thirty (30) days after the later of (i) the Effective Date, or (ii) the date of service of the applicable notice of Administrative Expense Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 30-day period (or any extension thereof), the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Article 6.2(b) shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order.

(e)     Payment of Allowed Administrative Expense Claims.

On the Distribution Date, each holder of an Allowed Administrative Expense Claim, shall receive in full satisfaction of such Claims (i) the amount of such holder's Allowed Administrative Expense Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Expense Claim; provided, further, that an Administrative Expense Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business.

### 6.3.    Treatment of Priority Tax Claims.

(a)     Unless otherwise agreed with a holder of an Allowed Priority Tax Claim, the Debtors, in their sole discretion, may choose whether Allowed Priority Tax Claims will be paid either: (1) in Cash, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest from the Effective Date at a fixed annual rate equal to five percent (5%) and paid in regular installments of equal amount over a period not exceeding five (5) years from the Petition Date; or (2) in full in Cash on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.  The Debtors reserve the right to prepay, without penalty, at any time under option (1) above. Alternatively, a holder of an Allowed Priority Tax Claim may elect to receive the same treatment of its Claims as is offered to holders of Allowed General Unsecured Claims as provided in Article 5.5.

(b)     The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtors are in compliance with Article 6.3.  So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under Article 6.3 or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

### ARTICLE VII.

### ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

### 7.1.    Classes Entitled to Vote.

Only holders of Claims in the following classes are permitted to vote on the Plan: First Lien Lender Claims; First Lien Lender Claims of Cross Lien Holders; Second Lien Lender Claims; Second Lien Lender Claims of Cross Lien Holders; Other Secured Claims; General Unsecured Claims; Lease Rejection Damage Claims; Unsecured Note Claims; Unsecured Contingent Claims; and Convenience Claims.

**7.2. Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan. A class of Equity Interests shall have accepted the Plan if it is accepted by holders of at least two-thirds (2/3) in amount of the Equity Interests in such class that actually vote on the Plan.

**7.3. Tabulation of Votes on a Non-Consolidated Basis.**

The Balloting Agent will tabulate all votes on the Plan on a non-consolidated basis by class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code with respect to each Debtor.

**7.4. Separate Plan for Each Debtor.**

This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and, accordingly, the classifications set forth in Classes 1 through 14 shall be deemed to apply to each of the Debtors separately, as applicable. For example, without limitation and for illustration purposes only, WF Capital is not a borrower or a guarantor on the First Lien Loan Documents or the Second Lien Loan Documents; therefore the WF Capital Plan does not contain a Class 2 or Class 4 as WF Capital has no creditors that would be classified in Class 2 or Class 4.

**7.5. Cramdown.**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a) of the Bankruptcy Code, except subsection (8) thereof, the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, the Plan.

## ARTICLE VIII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1. Certain Transactions On or Prior to the Effective Date.**

Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Reorganized Debtors shall, on or prior to the Effective Date (i) execute and deliver all debt instruments and related documents, including collateral documents, contemplated under the Plan, including the Exit Loan; (ii) implement all settlements and compromises as set forth in or contemplated by the Plan; (iii) amend and restate its constituent documents in accordance with the terms of this Plan; and (iv) perform all obligations under the Plan Documents.

**8.2.    Corporate Action.**

(a)    The entry of the Confirmation Order shall constitute authorization for the Debtors and the Reorganized Debtors (as the case may be) to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, any action required by the stockholders or directors of the Debtors and the Reorganized Debtors (as the case may be), including, among other things, (i) the adoption or amendment of any organizational documents; (ii) the modification, termination or cancellation of any outstanding instrument, document or agreement evidencing the First Lien Lender Claims or the Second Lien Lender Claims, as required by the Plan; (iii) all transfers of Assets that are to occur pursuant to the Plan; (iv) the incurrence of all obligations contemplated by the Plan, including the Exit Loan, and the making of all Plan Distributions; (v) the reinstatement and assumption of all indemnity obligations to the directors and officers of the Debtors; (vi) the implementation of all settlements and compromises as set forth in or contemplated by the Plan; and (vii) entering into the Exit Loan Agreement and any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

(b)    The officers of the Debtors and the Reorganized Debtors, as the case may be, are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of and on behalf of the Debtors.  All obligations of the Debtors to indemnify and hold harmless their current and former directors, officers and employees, whether arising under the Debtors' constituent documents, contract, law or equity, shall be fully reinstated and assumed by the Debtors upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed (or assumed and assigned, as applicable) under section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date.  Nothing in this Plan shall release any obligations of the Debtors to indemnify and hold harmless their current and former directors, officers and employees, which obligations are reinstated.  Nothing in this Plan, including Article 16.20, shall enjoin any of the Debtors' current and former directors, officers and employees from asserting any indemnity or hold harmless right against the Debtors.

(c)    The constituent documents of the Reorganized Debtors shall, as of the Effective Date, be amended to prohibit the issuance of non-voting equity securities by such Debtor as required by section 1123(a)(6) of the Bankruptcy Code, provided, however, that following the Effective Date, the Reorganized Debtors shall be entitled to issue non-voting securities, in their sole discretion.

**8.3.    Continued Corporate Existence of the Debtors.**

Each of the Debtors shall continue to exist, as a Reorganized Debtor, after the Effective Date as a separate entity, with all the powers available to such legal entity, in accordance with applicable law and pursuant to their constituent documents, as modified by the

Plan.  On or after the Effective Date, the Reorganized Debtors may, within their sole and exclusive discretion, take such action as permitted by applicable law, their constituent documents, and the Plan Documents, as they determine is reasonable and appropriate, <u>including</u> (a) causing any or all of the Reorganized Debtors to be merged into one or more of the other Reorganized Debtors or other legal entities; (b) liquidating any of the Reorganized Debtors; and (c) changing the legal name of any of the Reorganized Debtors.

**8.4.     <u>Re-vesting of Assets.</u>**

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates and any property acquired by a Debtor or Reorganized Debtor under the Plan shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided herein.  On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, each Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

**8.5.     <u>Initial Boards of Directors.</u>**

From and after the Effective Date, the members of the board of directors (or managers, as applicable) of the Reorganized Debtors shall be as identified in the Plan Supplement.  Thereafter, the members of the board of directors (or managers, as applicable) of each of the Reorganized Debtors shall be selected and determined in accordance with the provisions of the organizational documents of such Reorganized Debtors and applicable law.

**8.6.     <u>Officers.</u>**

The current officers of each of the Debtors shall continue in such positions after the Effective Date in accordance with their respective employment agreements, if any, and applicable law.  From and after the Effective Date, the officers of each of the Reorganized Debtors shall be selected and appointed by the respective boards of directors of such entities, in accordance with, and pursuant to, the provisions of applicable law and their respective organizational documents.

**8.7.     <u>Retention of Causes of Action/Reservation of Rights.</u>**

All Causes of Action, excluding Avoidance Actions, belonging to any of the Debtors shall, upon the occurrence of the Effective Date, be vested in the Reorganized Debtors for the benefit of the Debtors and their Estates.  The rights of the Reorganized Debtors to commence, prosecute or settle such Causes of Action, respectively, shall be preserved notwithstanding the occurrence of the Effective Date.

**No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors will not pursue any and all available Causes of Action against them. The Debtors and the Estates expressly reserve all rights to prosecute any and all Causes of Action against any Person, <u>except</u> as otherwise provided in the Plan.** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

## ARTICLE IX.

## THE DISBURSING AGENT

### 9.1.    <u>Appointment of the Disbursing Agent.</u>

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be appointed to serve as the Disbursing Agent, and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

### 9.2.    <u>Powers and Duties.</u>

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims and Equity Interests; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in Article XI, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in Article XI; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims that are outstanding at such time; such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

### 9.3.    <u>Disbursing Agent Post-Effective Date.</u>

**<u>Except</u> as otherwise provided in this Article 9.3, the Disbursing Agent, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, Entities, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, <u>except</u> solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence. No holder of a Claim or an Equity Interest, or**

**representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained in this Article 9.3 shall preclude or impair any holder of an Allowed Claim or Allowed Equity Interest from bringing an action in the Bankruptcy Court against any Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Equity Interest.**

**ARTICLE X.**

**DISTRIBUTION PROVISIONS**

**10.1.    Sources of Cash for Plan Distributions.**

All Cash necessary for the Disbursing Agent to make payments and Plan Distributions shall be obtained from the Cash of the Reorganized Debtors, proceeds of the Exit Loan, and the Cash held in the Contested Claims Reserve, if any, as applicable.

**10.2.    Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent.**

The Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state, and local taxes. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Disbursing Agent of a private letter ruling if the Disbursing Agent so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent), the Disbursing Agent may (a) treat the funds and other property held by it as held in a single trust for federal income tax purposes in accordance with the trust provisions of the Internal Revenue Code (sections 641 et seq.), and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

**10.3.    Plan Distributions.**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Distribution Date therefor.

**10.4.    Timing of Plan Distributions.**

Each Plan Distribution shall be made on the relevant Distribution Date therefor. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. A Plan Distribution shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

For federal income tax purposes, <u>except</u> to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**10.5.     <u>Address for Delivery of Plan Distributions/Unclaimed Distributions.</u>**

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (a) in the Schedules, (b) on the proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e) or (d) in any notice served by such holder giving details of a change of address. If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to the Reorganized Debtors. Supplemental Plan Distributions may be made from time to time at the discretion of the Disbursing Agent.

**10.6.     <u>Time Bar to Cash Payments.</u>**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any claims in respect of such void check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to the Reorganized Debtors.

**10.7.     <u>Manner of Payment under the Plan.</u>**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**10.8.     <u>Expenses Incurred on or after the Effective Date and Claims of the Disbursing Agent.</u>**

<u>Except</u> as otherwise ordered by the Bankruptcy Court or as provided in the Plan, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent on or after the Effective Date (<u>including</u>, but not limited to, taxes) shall be paid when due. Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of

business.  Any dispute regarding compensation shall be resolved by agreement of the parties or if the parties are unable to agree, as determined by the Bankruptcy Court.

### 10.9. <u>Fractional Plan Distributions.</u>

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractional shares or fractions of dollars will be made.  Fractional shares and fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half share or one-half dollar, as applicable, to be rounded down).

### 10.10. <u>Surrender and Cancellation of Instruments.</u>

Unless otherwise provided in this Plan, as a condition to receiving any Plan Distribution, on or before the Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note, other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (i) surrender such certificate, instrument or note representing such Claim, and (ii) execute and deliver such other documents as may be necessary to effectuate the Plan in the sole determination of the Disbursing Agent.  Such certificate, instrument or note, shall thereafter be cancelled and extinguished.  The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (1) such certificates, instruments or notes are surrendered, or (2) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form.  Any such holder who fails to surrender such certificates, instruments or notes, or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution.  All property in respect of such forfeited Claims shall revert to the Reorganized Debtors.


## ARTICLE XI.

## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

### 11.1. <u>Prosecution of Contested Claims.</u>

After the Effective Date, only the Reorganized Debtors may object to the allowance of Contested Claims filed with the Bankruptcy Court.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Article 11.3.

### 11.2. <u>Objection Deadline.</u>

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Disbursing Agent without notice or a hearing), objections to Claims shall be

filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

### 11.3. Claims Settlement.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

### 11.4. Entitlement to Plan Distributions Upon Allowance.

Notwithstanding any other provision hereof, if any portion of a Claim is a Contested Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Claim becomes an Allowed Claim that is not a Contested Claim, subject to the setoff rights as provided in Article 16.17. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

### 11.5. Contested Claims Reserve.

The Debtors may establish a Contested Claims Reserve in a segregated account for the purpose of effectuating distributions to the holders of Contested Claims pending the allowance or disallowance of such Claims in accordance with the Plan.

### 11.6. Estimation of Claims.

The Debtors and the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any Unsecured Contingent Claim, unliquidated or Contested Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Unsecured Contingent Claim, the amount so estimated shall constitute (a) the Allowed amount of such Claim, which shall be reclassified as a General Unsecured Claim; (b) a maximum limitation on such Unsecured Contingent Claim, or (c) in the event such Unsecured Contingent Claim is estimated in connection with the estimation of other Unsecured Contingent Claims, a maximum limitation on the aggregate amount of Allowed Claims on account of such Unsecured Contingent Claims so estimated. In the event that the Bankruptcy Court estimates any unliquidated or Contested Claim, the amount so estimated shall constitute (a) the Allowed amount of such Contested Claim; (b) a maximum limitation on such Contested Claim, or (c) in the event such Contested Claim is estimated in connection with the estimation of other Contested Claims within the same Class, a maximum limitation on the aggregate amount of Allowed Claims on account of such Contested Claims so estimated. If the estimated amount constitutes a maximum limitation on the amount of such Claim, or on more than one such Claim within a Class of Claims, as applicable, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to

object to the allowance of such Claims.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or otherwise resolved by any mechanism approved by the Bankruptcy Court.

**11.7.**  **No Recourse Against the Debtors or the Reorganized Debtors.**

If a Contested Claim Reserve is established pursuant to Article 11.5, any holder of a Contested Claim that ultimately becomes an Allowed Claim shall be entitled to receive its applicable distribution under the Plan solely from any Contested Claim Reserve established on account of such Contested Claims.  In no event shall any holder of a Contested Claim have any recourse with respect to distributions made, or to be made, under the Plan to holders of such Claims, to any Debtor or the Reorganized Debtors on account of such Contested Claim, regardless of whether such Contested Claim shall ultimately become an Allowed Claim, and regardless of whether sufficient Cash or other property remains available for distribution in the Contested Claim Reserve established on account of such Contested Claims at the time such Claim becomes entitled to receive a distribution under the Plan.

# ARTICLE XII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**12.1.**  **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)    All executory contracts and unexpired leases of the Debtors shall be assumed pursuant to the provisions of section 365 of the Bankruptcy Code effective as of and subject to the occurrence of the Effective Date, unless another date is specified in the Plan except:  (i) any executory contracts and unexpired leases that are the subject of separate motions to assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date; (ii) contracts and leases listed in a schedule to the Disclosure Statement and any subsequently filed "Schedule of Rejected Executory Contracts and Unexpired Leases" to be filed by the Debtors with the Bankruptcy Court before the entry of, or as an exhibit to, the Confirmation Order; (iii) all executory contracts and unexpired leases rejected by order of the Bankruptcy Court entered before the Effective Date; and (iv) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to this Article of the Plan and for which the Debtors make a motion to reject such contract or lease at any time based upon the existence of such dispute or the resolution of such dispute.  The Debtors reserve the right to amend the schedule to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases" prior to the entry of the Confirmation Order.  Each executory contract and unexpired lease to be assumed by the Debtors shall include modifications, amendments, supplements, restatements or other similar agreements made directly or indirectly by any agreement, instrument or other document that affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the schedule to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases."

(b)     The inclusion of a contract, lease or other agreement in this Article 12.1 or on any schedule to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases" shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtors.  The Debtors reserve all rights with respect to the characterization of any such agreements.

(c)     The Plan shall constitute a motion to assume and assign to the Reorganized Debtors such executory contracts and unexpired leases assumed pursuant to this Article 12.1, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that the requirements of section 365(f) of the Bankruptcy Code have been satisfied.

(d)     The Plan shall constitute a motion to reject such executory contracts and unexpired leases as set forth in the schedule to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases" as of the effective date denoted on the Schedule of Rejected Executory Contracts and Unexpired Leases.  Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code, subject to the occurrence of the Effective Date, and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their estates.

(e)     Any non-Debtor counterparty to an agreement, contract or unexpired lease to be assumed and assigned who disputes the assumption and assignment of an executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Debtors, a written objection to the assumption and assignment, which objection shall set forth the basis for the dispute by no later than ten (10) days prior to the Confirmation Hearing.  The failure to timely object shall be deemed a waiver of any and all objections to the assumption and assignment of executory contracts and leases as set forth herein or as otherwise designated as being assumed or assumed and assigned in this Article 12.1.

## 12.2.   **Cure Costs.**

The provisions (if any) of each Executory Contract or Unexpired Lease to be assumed under the Plan which are or may be in default shall be satisfied solely by Cure Costs.  In the event of a dispute regarding the assumption of an Executory Contract or Unexpired Lease, the provision of Cure Costs to the counterparty of the Executory Contract or Unexpired Lease shall occur as soon as reasonably practicable following the entry of a Final Order resolving such dispute.

**12.3.   Claims Arising from Rejected Contracts.**

Rejection Damage Claims must be submitted to the Claims Agent, with copies to counsel for the Debtors, on the later of December 8, 2010 and the first Business Day that is thirty (30) days following the effective date of the rejection of such Executory Contract or Unexpired Lease.  Properly submitted Rejection Damage Claims shall be treated as Class 7 General Unsecured Claims under the Plan, except to the extent that a Rejection Damage Claim is also a Lease Rejection Damage Claim, in which case, such claim shall be treated as a Class 8 Lease Rejection Damage Claim under the Plan.  All Lease Rejection Damage Claims shall be subject to objection by the Reorganized Debtors.  Any Rejection Damage Claims that are not properly submitted pursuant to this Article 12.3 will forever be barred from assertion and shall not be enforceable against the Reorganized Debtors, their respective Estates, Affiliates or Assets.

## ARTICLE XIII.

## SETTLEMENTS AND COMPROMISES

**13.1.   [Reserved].**

## ARTICLE XIV.

## CONDITIONS PRECEDENT TO
## CONFIRMATION OF THE PLAN AND
## THE OCCURRENCE OF THE EFFECTIVE DATE

**14.1.   Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan:

(a)      The clerk of the Bankruptcy Court shall have entered an order or orders:

(i)      approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(ii)     authorizing the solicitation of votes with respect to the Plan;

(iii)    determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan;

(iv)     confirming and giving effect to the terms and provisions of the Plan;

(v)      determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan;

(vi)     approving the Plan Documents; and

(vii)     authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to, the transactions contemplated by the Plan and the Plan Documents.

(b)     The Confirmation Order, the Plan Documents and the Plan are each in a form satisfactory to the Debtors.

## 14.2.     Conditions Precedent to the Occurrence of the Effective Date.

The following are conditions precedent to the occurrence of the Effective Date:

(a)     The Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction;

(b)     There is sufficient available Cash to make all payments to be made on the Effective Date;

(c)     The closing of the Exit Loan; and

(d)     All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments required to be made on the Effective Date, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtors under the Plan and the Plan Documents.

## 14.3.     Waiver of Conditions.

The Debtors may waive any one or more of the conditions set forth in Article 14.1 or Article 14.2(b) or (c) in a writing executed by each of them without notice or order of the Bankruptcy Court and without notice to any parties in interest.

## 14.4.     Effect of Non-Occurrence of the Effective Date.

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in a Debtor; (b) prejudice in any manner the rights of any party-in-interest; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtors or any other party-in-interest.

## ARTICLE XV.

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan, or (c) that relates to the following:

(i)      To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)     To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Disbursing Agent or the Debtors, as applicable, after the Effective Date;

(iii)    To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)     To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)      To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)     To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan, the Plan Documents or their interpretation, implementation, enforcement, or consummation;

(viii)   To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

(ix)     To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estates;

(x)      To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)     To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Reorganized Debtors, the Debtors-in-Possession, or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiii)   To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtors commenced by the Disbursing Agent, the Debtors or any third parties, as applicable, before or after the Effective Date;

(xiv)   To enter an order or final decree closing the Chapter 11 Cases;

(xv)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvi)   To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE XVI.

## MISCELLANEOUS PROVISIONS

### 16.1.   <u>Third Party Agreements; Subordination.</u>

The Plan Distributions to the various classes of Claims and Equity Interests hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise.  All of such rights and any agreements relating thereto shall remain in full force and effect, <u>except</u> as compromised and settled pursuant to the Plan.  Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan.  The right of the Debtors to seek subordination of any Claim or Equity Interest pursuant to section 510 of the Bankruptcy Code is fully reserved; and the treatment afforded any Claim or Equity Interest that becomes a Subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a Subordinated Claim or subordinated Equity Interest.  Notwithstanding the foregoing, the Intercreditor Agreement shall remain in full force and effect.

**16.2.    Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

**16.3.    Satisfaction of Claims.**

The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, <u>including</u> any accrued postpetition interest, against the Debtors and the Debtors-in-Possession, or any of their Estates, Assets, properties, or interests in property.  <u>Except</u> as otherwise provided herein, on the Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors-in-Possession shall be satisfied, discharged, and released in full.  The Reorganized Debtors shall not be responsible for any pre-Effective Date obligations of the Debtors or the Debtors-in-Possession, <u>except</u> those expressly assumed by any Reorganized Debtor(s), as applicable.  <u>Except</u> as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against the Reorganized Debtors, their respective successors or assigns, or their Estates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

**16.4.    Exculpation.**

**The Debtors and any Exculpated Persons shall not be liable for any Cause of Action arising in connection with or out of the administration of the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, <u>except</u> for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.  The Confirmation Order shall enjoin all holders of Claims and Equity Interests from asserting or prosecuting any Claim or Cause of Action against any Exculpated Person as to which such Exculpated Person has been exculpated from liability pursuant to the preceding sentence.**

**16.5.    Discharge of Liabilities.**

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be precluded from asserting against the Reorganized Debtors, the Debtors, the Estates, the Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

(i)    <u>**EXCEPT**</u> **AS OTHERWISE PROVIDED IN THE PLAN, THE REORGANIZED DEBTORS SHALL NOT HAVE, AND SHALL NOT BE**

**CONSTRUED TO HAVE OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (<u>INCLUDING</u>, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTORS) AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO THE REORGANIZED DEBTORS.**

**16.6.  <u>Discharge of Debtors.</u>**

<u>Except</u> as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever.  <u>Except</u> as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, <u>including</u>, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto.  As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtors or property of the Debtors or their Estates to the extent it relates to a discharged Claim.

**16.7.  <u>Notices.</u>**

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Workflow Management, Inc.
> Attention: L. Scott Seymour, General Counsel
> 150 West Main Street
> Post Office Box 3037
> Norfolk, Virginia 23514
> T (757) 624.3000
> F (757) 624.3169
>
> --and--

McGuireWoods LLP
Douglas M. Foley, Esq.
Patrick L. Hayden, Esq.
9000 World Trade Center
101 West Main Street
Norfolk, Virginia 23510
Telephone: (757) 640-3700
Facsimile: (757) 640-3701

**16.8. Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**16.9. Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

**16.10. Expedited Determination.**

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors.

**16.11. Exemption from Transfer Taxes.**

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**16.12. Retiree Benefits.**

Pursuant to section 1129(a)(13), on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**16.13. Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of

Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

**16.14.  Interest and Attorneys' Fees.**

(a)     Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law.

(b)     Except as set forth in the Plan or as ordered by the Bankruptcy Court, no award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim.

**16.15.  Modification of the Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Debtors may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

**16.16.  Revocation of Plan.**

(a)     The Debtors reserve the right to revoke and withdraw the Plan or to adjourn the Confirmation Hearing with respect to any one or more of the Debtors prior to the occurrence of the Effective Date.  If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors, or if the Effective Date does not occur as to any Debtor, then, as to such Debtor, the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in such Debtor or to prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor.

(b)     In the event that the Debtors choose to adjourn the Confirmation Hearing with respect to any one or more of the Debtors, the Debtors reserve the right to proceed with confirmation of the Plan with respect to those Debtors in relation to which the Confirmation Hearing has not been adjourned.  With respect to those Debtors with respect to which the Confirmation Hearing has been adjourned, the Debtors reserve the right to amend, modify, revoke or withdraw the Plan and/or submit any new plan of reorganization at such times and in such manner as they consider appropriate, subject to the provisions of the Bankruptcy Code.

**16.17.  Setoff Rights.**

In the event that any Debtor has a Claim of any nature whatsoever against the holder of a Claim against such Debtor, then such Debtor may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) such Debtor's Claim against such holder. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that any Debtor may have against the holder of any Claim.

**16.18.  Compliance with Tax Requirements.**

In connection with the Plan, the Debtors and the Disbursing Agent, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Equity Interest that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Plan Distribution.  The Disbursing Agent has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

**16.19.  Rates.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

**16.20.  Injunctions.**

**On the Effective Date and except as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Debtors, the Reorganized Debtors, the Estates, the Assets, or the Disbursing Agent or their respective assets and property, with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):**

(i)  commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

(ii)  enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

(iii)  creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

(iv)    asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Article 16.17.

**16.21.  Binding Effect.**

The Plan shall be binding upon the Reorganized Debtors, the holders of all Claims and Equity Interests, parties in interest, Persons and Entities and their respective successors and assigns.  To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**16.22.  Severability.**

**IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTORS MAY MODIFY THE PLAN IN ACCORDANCE WITH ARTICLE 16.15 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.**

**16.23.  No Admissions.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS OR THEIR AFFILIATES, AS DEBTORS AND DEBTORS-IN-POSSESSION IN THESE CHAPTER 11 CASES.**

## 16.24. Dissolution of the Committee.

Effective on the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be exculpated from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee, and (ii) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

Dated:  November 10, 2010                    Respectfully submitted,

**WORKFLOW MANAGEMENT, INC.**

By:_____
Name:
Title:

**WORKFLOW HOLDINGS CORPORATION**

By:_____
Name:
Title:

**WORKFLOW SOLUTIONS LLC**

By:_____
Name:
Title:

**WORKFLOW DIRECT, INC.**

By:_____
Name:
Title:

**WF CAPITAL HOLDINGS, INC.**

By:_____
Name:
Title:

**WF HOLDINGS, INC.**

By:  _____
Name:
Title:


**WORKFLOW OF FLORIDA, INC.**

By: _____
Name:
Title:


**WORKFLOW MANAGEMENT
ACQUISITION II CORP.**

By: _____
Name:
Title:


**WFIH, INC.**

By: _____
Name:
Title:


**WFMI, INC.**

By: _____
Name:
Title:


**THE RELIZON COMPANY**

By: _____
Name:
Title:


**RELIZON KNE INC.**

By: _____
Name:
Title:

**RELIZON SNE INC.**

By:_____
Name:
Title:


**OLD FGS, INC.**

By:_____
Name:
Title:


**OLD UE, LLC**

By:_____
Name:
Title:


**SFI OF PUERTO RICO, INC.**

By:_____
Name:
Title:


**RELIZON WISCONSIN INC.**

By:_____
Name:
Title:


**RELIZON (TEXAS) LTD.  LLP**

By:_____
Name:
Title:


**RELIZON DE MEXICO INC.**

By:_____
Name:
Title:

**FORMCRAFT HOLDINGS GENERAL PARTNER, INC.**

By:_____
Name:
Title:

**FORMCRAFT HOLDINGS LIMITED PARTNER, INC.**

By:_____
Name:
Title:

# EXHIBIT A

## DEBTORS

| ENTITY | CASE NO. | ID NUMBER |
|---|---|---|
| FORMCRAFT HOLDINGS GENERAL PARTNER, INC. | 10-74631 | 52-2255683 |
| FORMCRAFT HOLDINGS LIMITED PARTNER, INC. | 10-74630 | 52-2255684 |
| OLD FGS, INC. | 10-74615 | 22-3171438 |
| RELIZON DE MEXICO INC. | 10-74628 | 20-3686996 |
| RELIZON KNE INC. | 10-74632 | 51-0413935 |
| RELIZON SNE INC. | 10-74629 | 51-0414537 |
| RELIZON (TEXAS) LTD., LLP | 10-74635 | 76-0566437 |
| RELIZON WISCONSIN INC. | 10-74633 | 39-1818440 |
| SFI OF PUERTO RICO, INC. | 10-74626 | 52-2103413 |
| THE RELIZON COMPANY | 10-74618 | 52-2254702 |
| OLD UE, LLC | 10-74616 | 54-1894060 |
| WF CAPITAL HOLDINGS, INC. | 10-74614 | 42-1685548 |
| WF HOLDINGS, INC. | 10-74620 | 20-0969106 |
| WFIH, INC. | 10-74623 | 20-2010527 |
| WFMI, INC. | 10-74622 | 52-2164282 |
| WORKFLOW DIRECT, INC. | 10-74627 | 95-3817497 |
| WORKFLOW HOLDINGS CORPORATION | 10-74621 | 20-3839217 |
| WORKFLOW MANAGEMENT ACQUISITION II CORP. | 10-74625 | 52-2242039 |
| WORKFLOW MANAGEMENT, INC. | 10-74617 | 06-1507104 |
| WORKFLOW OF FLORIDA, INC. | 10-74624 | 52-2164281 |
| WORKFLOW SOLUTIONS LLC | 10-74619 | 54-1893769 |

**Workflow Management, Inc.**

**First Lien Term Loan Plan Treatment Term Sheet**

**Debtors Obligated**:  The Loan Parties.

**First Lien Lender Claims:**  The total Allowed amount of the First Lien Lender Claims is approximately $137,000,000 plus (a) any amounts drawn on Letters of Credit when drawn, and (b) any allowed additional interest or fees accrued and unpaid as of the Effective Date (collectively, the "First Lien Lender Allowed Amount").

**Loan Party's Participation:**  The First Lien Lender Allowed Amount reflects the deemed satisfaction of the $5 million participation in the First Lien Lender Claims owned by The Relizon Company which shall be deemed satisfied on the Effective Date.

**Interest Rate**:  Interest shall accrue on the First Lien Lender Allowed Amount and be paid in cash quarterly in arrears at the rate of 7.5% per annum from the Effective Date to the Maturity Date.

**Amortization**:  Principal payments on the First Lien Lender Allowed Amount will be made quarterly beginning in the second quarter of 2011 in the amount of: (i) of $1,000,000 per fiscal quarter on the last business day of each applicable fiscal quarter of 2011; (ii) $2,000,000 per fiscal quarter on the last business day of each fiscal quarter of 2012; and (iii) $3,000,000 per fiscal quarter on the last business day of each fiscal quarter until the Maturity Date

**Maturity Date**:  All amounts outstanding pertaining to the First Lien Lender Allowed Amount shall be paid in full in cash by the date that is three and one-half (3 ½ ) years after the Effective Date; provided that the Loan Parties may, in their sole discretion, extend the Maturity Date for one year upon payment of an extension fee in the amount of 200 basis points of the then outstanding amount of the First Lien Lender Allowed Amount.

**Mandatory Prepayments:**  To be determined.

| | |
|---|---|
| **Collateral**: | The First Lien Secured Parties shall retain their liens on the Prepetition Collateral and on any other collateral provided for in the Cash Collateral Order (collectively, the "Collateral"). |
| **Fees:** | $125,000 administrative fee payable annually in advance to the First Lien Agent. |
| **Permitted Actions**: | Making all payments required to be made under the Plan. |
| **Condition**: | Effective Date of the Plan. |
| **Representations and Warranties:** | To be determined. |

**Financial Covenants**:    Financial covenants will include:

(i)    Maximum capital expenditures;

(ii)    Maximum total debt/trailing twelve month EBITDA;

(iii)    Minimum trailing twelve month EBITDA;

(iv)    Minimum liquidity; and

(v)    Financial reporting will include:  (a) annual, audited, financial statements, (b) quarterly, internally prepared, financial statements, (c) monthly, internally prepared, financial statements and a budget, and (d) other reporting as mutually agreed between the Loan Parties and the First Lien Agent.

| | |
|---|---|
| **Other Covenants:** | Other non-financial covenants which are customary in facilities of the nature of the First Lien Credit Facility. |
| **Events of Default**: | Usual and customary events of default, including, but not limited to, defaults relating to payment, violation of covenants, breach of representations or warranties, bankruptcy or insolvency, judgment, ERISA, environmental and other events of default which are customary in facilities of the nature of the First Lien Credit Facility. |

**Debtors Obligated**:       The Loan Parties.

**Second Lien Lender Claims:**       The total Allowed amount of the Second Lien Lender Claims is approximately $205,000,000, plus any additional allowed interest or fees accrued and unpaid as of the Effective Date pursuant to the Cash Collateral Orders (collectively, the "Second Lien Lender Allowed Amount").

**Interest Rate**:       11.5% interest per annum shall accrue on the Second Lien Lender Allowed Amount; 8.75% of the interest will be paid in cash quarterly in arrears and 2.75% of the interest paid in payable-in-kind notes quarterly in arrears.

**Maturity Date**:       The Second Lien Lender Allowed Amount shall be paid in full, in Cash on December 31, 2015.

**Collateral**:       The Second Lien Secured Parties shall retain their second liens on the Prepetition Collateral and on any other collateral provided for in the Cash Collateral Orders (collectively, the "Collateral").

**Fees**:       $75,000 administrative fee payable annually in advance to the Second Lien Agent.

**Permitted Actions**:       Making all payments required to be made under the Plan.

**Optional Redemption**:       The term loan shall be redeemable at the option of the Borrower at any time.

**Condition**:       The Effective Date of the Plan.

**Representations and Warranties:**       To be determined.

**Financial Covenants**:       Financial covenants appropriately discounted from the First Lien Lender Claim financial covenants, including:

(vi)       Maximum capital expenditures;

(vii)       Maximum total debt/trailing twelve month EBITDA;

(viii)  Minimum trailing twelve month EBITDA; and

(ix)  Financial reporting requirements will include:
(a) annual, audited, financial statements, (b) quarterly, internally prepared, financial statements, (c) monthly, internally prepared, financial statements and a budget, and (d) other reporting as mutually agreed between the Loan Parties and the Second Lien Agent.

**<u>Other Covenants:</u>**  Usual and customary non-financial covenants for second lien loans.

**<u>Events of Default</u>**:  Usual and customary events of default, including, but not limited to, defaults relating to payment, violation of covenants, breach of representations or warranties, bankruptcy or insolvency, judgment, ERISA, environmental and other events of default which are customary in facilities of the nature of the Second Lien Credit Facility.

**Workflow Management, Inc.**

**Exit Loan Term Sheet**

**Debtors Obligated**:         All Debtors.

**Principal Amount:**        $12.5 million.

**Interest Rate**:        15% interest per annum shall accrue and be capitalized on any amounts borrowed under the Exit Loan.

**Maturity Date**:        The Exit Loan shall mature and all outstanding balances thereunder shall be paid in full, in Cash on December 31, 2015.

**Collateral**:        None.

**Subordination:**        The Exit Loan shall be subordinated in right of payment to the First Lien Loan Obligations and the Second Lien Loan Obligations.

**Condition**:        The Effective Date of the Plan.

**Representations and Warranties:**        To be determined.

**Financial Covenants**:        Usual and customary financial covenants.

**Other Covenants:**        Usual and customary non-financial covenants.

**Events of Default**:        Usual and customary events of default, including, but not limited to, defaults relating to payment, violation of covenants, breach of representations or warranties, bankruptcy or insolvency, judgment, ERISA, environmental and other events of default which are customary in facilities of the nature of the Second Lien Credit Facility.