Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 W. Main Street
Norfolk, Virginia 23510
(757) 640-3700

Attorneys for the Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| WORKFLOW MANAGEMENT, INC., | ) | |
| et al., | ) | Case No. 10-74617 (SCS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## NOTICE OF FILING OF PROPOSED FINAL ORDER (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) AUTHORIZING DEBTORS TO PROVIDE ADEQUATE PROTECTION IN FORM  OF REPLACEMENT LIENS, ADMINISTRATIVE EXPENSE CLAIMS, AND ACCRUAL OR PAYMENT OF INTEREST, AND (III) GRANTING CERTAIN RELATED RELIEF

**PLEASE TAKE NOTICE** that in connection with the hearing to be held on November 30, 2010, the above-captioned Debtors have filed the proposed Final Order (I) Authorizing Debtors to Use Cash Collateral, (II) Authorizing Debtors to Provide Adequate Protection in Form of Replacement Liens, Administrative Expense Claims, and Accrual or Payment of Interest, and (III) Granting Certain Related Relief (the "Proposed Final Order"), which is attached hereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that a blacklined copy of the Proposed Final Order compared to the proposed Interim Order (I) Authorizing Debtors to Use Cash Collateral, (II) Authorizing Debtors to Provide Adequate Protection in Form of Replacement Liens, Administrative Expense Claims, and Accrual or Payment of Interest, (III) Scheduling Final Cash Collateral Hearing, and (IV) Granting Certain Related Relief (the "First Day Proposed Interim Order") submitted as Exhibit A to the Motion of the Debtors for Entry of an Order (I) Authorizing Debtors to Use Cash Collateral, (II) Authorizing Debtors to Provide Adequate Protection in Form of Replacement Liens, Administrative Expense Claims, and Accrual or Payment of Interest, (III) Scheduling Final Cash Collateral Hearing, and (IV) Granting Certain Related Relief (Docket No. 26) is attached hereto as Exhibit B.

**PLEASE TAKE FURTHER NOTICE** that a blacklined copy of the Proposed Final Order compared to the Third Interim Order (I) Authorizing Debtors to Use Cash Collateral,

(II) Authorizing Debtors to Provide Adequate Protection in Form of Replacement Liens, Administrative Expense Claims, and Accrual or Payment of Interest, (III) Scheduling Final Cash Collateral Hearing, and (IV) Granting Certain Related Relief (Docket No. 199)(the "Third Interim Order") is attached as Exhibit C hereto.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve their rights to supplement or amend the Proposed Final Order at anytime prior to the conclusion of the hearing on November 30, 2010.

Dated: Norfolk, Virginia
November 16, 2010

WORKFLOW MANAGEMENT, INC., <u>et al</u>.


/s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia, 23510
(757) 640-3700

Attorneys for the Debtors and Debtors in Possession

**<u>EXHIBIT A</u>**
(Proposed Final Order)

Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia 23510
(757) 640-3700

Attorneys for the Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| WORKFLOW MANAGEMENT, INC., | ) | Case No. 10-74617(SCS) |
| et al., | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**PROPOSED FINAL ORDER (I) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL, (II) AUTHORIZING DEBTORS TO PROVIDE ADEQUATE
PROTECTION IN FORM OF REPLACEMENT LIENS, ADMINISTRATIVE
EXPENSE CLAIMS, AND ACCRUAL OR PAYMENT OF INTEREST, AND (III)
<u>GRANTING CERTAIN RELATED RELIEF</u>**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in

possession (the "Debtors"),[1] pursuant to sections 105(a), 361, and 363 of Title 11 of the

United States Code (the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 of the Local Rules for

---

[1] The Debtors and the last four digits of the Debtors' taxpayer identification numbers are as follows:
Workflow Management, Inc. (7104); Workflow Holdings Corporation (9217); WF Capital Holdings, Inc.
(5548); WF Holdings, Inc. (9106); Workflow Direct, Inc. (7497); Workflow Management Acquisition II
Corp. (2039); WFIH, Inc. (0527); WFMI, Inc. (4282); Workflow of Florida, Inc. (4281); Workflow Solutions
LLC (3769); SFI of Puerto Rico, Inc. (3413); Old FGS, Inc. (1438); Old UE, LLC (4060); The Relizon
Company (4702); Relizon Wisconsin Inc. (8440); Relizon (Texas) Ltd., LLP (6437); Relizon SNE Inc.
(4537); Relizon KNE Inc. (3935); Relizon de Mexico Inc. (6996); Formcraft Holdings General Partner, Inc.
(5683); Formcraft Holdings Limited Partner, Inc. (5684). The mailing address for WF Capital Holdings,
Inc., Old FGS, Inc., and Old UE, LLC is 150 West Main Street, Suite 2100, Norfolk, Virginia 23501. For all
other Debtors, the mailing address is 220 E. Monument Avenue, Dayton, Ohio 45402.

the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"), for the entry of an interim order: (i) authorizing the Debtors to use Cash Collateral[2]; (ii) authorizing adequate protection to the Prepetition Secured Parties in the form of replacement liens, administrative expense claims and the accrual or payment of interest and fees; and (iii) scheduling a hearing (the "Final Hearing") to consider entry of a final order authorizing the Debtors to use Cash Collateral (the "Final Order"); and upon the Bogutsky Affidavit; and upon preliminary hearings on the Motion having occurred on September 30, 2010, October 7, 2010, October 27, 2010 (the "Preliminary Hearings") and the Final Hearing having occurred on November 30, 2010, pursuant to Bankruptcy Rule 4001(b)(2); and the Court having entered on October 1, 2010 an interim order authorizing the Debtors to use Cash Collateral through October 7, 2010 on the terms described in such interim order (the "First Interim Order") (Docket No. 39); and the Court having entered on October 8, 2010 a second interim order authorizing the Debtors to use Cash Collateral through October 27, 2010 on the terms described in such second interim order (the "Second Interim Order") (Docket No. 107); and the Court having entered on October 29, 2010 a third interim order authorizing the Debtors to use Cash Collateral through December 1, 2010 (the "Third Interim Order") (Docket No. 199); and upon the record presented at the Preliminary Hearings and the Final Hearing; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, the Debtors' creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby,

**FOUND AND DETERMINED that:**

---

[2] Capitalized terms used, but not defined herein, shall be ascribed the meanings given them in the Motion.

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.      Venue of the Debtors' chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      On October 5, 2010, the United States Trustee appointed the official committee of unsecured creditors (the "Committee").

D.      Notice of the Preliminary Hearings, and the Final Hearing, and the relief requested in the Motion has been given to: (i) the office of the United States Trustee for the Eastern District of Virginia; (ii) the First Lien Agent and its counsel; (iii) the Second Lien Agent and its counsel; (iv) the United States Attorney for the Eastern District of Virginia; (v) the Internal Revenue Service; (vi) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vii) the Committee and its counsel (once appointed); and (viii) the financial institutions at which the Debtors maintain bank accounts.  As such, sufficient and adequate notice of the Preliminary Hearings, and the Final Hearing, and the relief requested in the Motion has been given pursuant to sections 102 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and Local Rule 2002-1, and no further notice is required.

E.      As provided in Recital E of the Third Interim Order, subject to the rights of the Committee as provided in the Third Interim Order, the total amount of outstanding First Lien Loan Obligations was $141,553,802.26[3] in principal, and $4,819,000.00[4] in face

---

[3] This does not include increases based upon the September 30, 2010 PIK amount and based upon postpetition draws on letters of credit.

[4] This does not include reductions based upon postpetition draws on letters of credit.

amount of undrawn Letters of Credit, and the total amount of outstanding Second Lien Loan Obligations was $190,936,685.80 in principal. The foregoing amounts do not include any interest, fees, charges, indemnities, or other amounts owing in addition to principal and undrawn Letters of Credit in respect of First Lien Loan Obligations and Second Lien Loan Obligations.

F.        Subject to the rights of the Committee as provided in the Third Interim Order, including in regard to Recital G of the Third Interim Order, the First Lien Loan Obligations and the Second Lien Loan Obligations are secured by liens on and security interests in essentially all of the personal and real property of the Debtors who are Loan Parties, and all proceeds thereof, including the Cash Collateral as further described in the Motion (the "Prepetition Collateral").

G.        Without the use of Cash Collateral, the Debtors lack sufficient available sources of working capital and financing to carry on the operation of their business. The Debtors' ability to maintain business relationships with their vendors, suppliers, employees, and customers, and to purchase and supply new inventory and otherwise finance their operations, is essential to the Debtors' continued viability.

H.        The Debtors require the ability to use Cash Collateral in accordance with the terms of this Final Order to avoid immediate and irreparable harm to the Debtors and their estates. In the absence of the use of Cash Collateral, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors and their estates would occur. The preservation, maintenance, and enhancement of the

going concern value of the Debtors is critical to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

I.     Good cause has been shown for the entry of this Final Order. Among other things, entry of this Final Order will minimize disruption of the Debtors' affairs and permit them to meet payroll and other expenses. The use of Cash Collateral authorized hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates.

J.     The Cash Collateral is not diminishing on account of the Debtors' use thereof during the Use Period, as defined hereinafter, and the Adequate Protection, as defined hereinafter, provided to the First Lien Secured Parties and to the Second Lien Secured Parties pursuant to the provisions of this Final Order is sufficient to protect such parties' interests in the Cash Collateral.

K.     The Budget, as defined hereinafter, and the expenditures indicated therein, are reasonable and necessary, and are in the best interests of the Debtors, their estates, creditors and other parties in interest.

L.     The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2). This Court concludes that entry of this Final Order is in the best interests of the Debtors, their estates and creditors and will maximize the value of their assets for the benefit of all creditors.

Based on the foregoing findings of fact and conclusions, and upon the record made before this Court by the Debtors at the Preliminary Hearings, and the Final Hearing, and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted, subject to the terms and conditions set forth in this Final Order.  Any objections to the entry of this Final Order, including the objections of \_\_\_\_\_ and \_\_\_\_\_, not withdrawn or resolved in this Final Order are hereby overruled.

2.      Subject to the terms of this Final Order, the Debtors are authorized to use Cash Collateral from December 1, 2010 to and including January 31, 2011 (the "Use Period") on the terms, for the purposes, and in the amounts set forth in the budget attached hereto as <u>Exhibit A</u> (the "Budget"),[5] and in accordance with orders of this Court.  The Debtors shall be deemed to be in compliance with the Budget, and no Event of Default (as defined hereinafter) shall occur hereunder, for so long as the Debtors are in compliance with the following (collectively, the "Allowed Variances"):[6]

> On a weekly basis, the Debtors may make aggregate disbursements in payment of expenses of all types identified in the Budget if the amount of such disbursements, when added to the aggregate amounts disbursed by the Debtors in payment of expenses of all types identified in the Budget during the previous three weeks, does not exceed 110% of the aggregate amount forecast in the Budget to be disbursed for all expenses during such four week period; provided, however, that the Debtors are permitted to spend, during the Use Period, only 100% of the aggregate amounts set forth in each of the "Debtors Professional Fees" line item, the "Committee Professional Fees" line item, the "First Lien

---

[5] Notwithstanding that the Budget includes periods prior to and subsequent to the Use Period, and notwithstanding that certain provisions of this Final Order refer to expenditures occurring or forecast to occur during periods prior to and subsequent to the Use Period, nothing in this Final Order shall be deemed to approve any use of Cash Collateral in any period other than the Use Period.

[6] For purposes of calculating Allowed Variances, the applicable weekly forecasts for the weeks ending November 12, November 19 and November 26, 2010 shall be as indicated on the budget which is attached as Exhibit A to the Third Interim Order.

Professional Fees" line item and the "Second Lien Professional Fees" line item in the Budget, on account of each respective group of professionals, during the Use Period regardless of which weekly period during the Use Period that such amounts are paid (without prejudice to the Debtors, any such estate professionals, or the Prepetition Agents seeking the allowance and payment of fees and expenses in excess of such amounts by further order of the Court).

3.     The Debtors may also vary from the Budget with the consent of each Prepetition Agent (and the Debtors shall provide notice of any such request to the Committee at the time such request is made), or by further Order of the Court.

4.     Provided that they are in compliance with the Budget and with the other terms of this Order and any other order of the Court which pertains to cash expenditures that are subject to this Final Order, the Debtors shall be permitted to use Cash Collateral in accordance with their cash management system consistent with prepetition practices. Notwithstanding anything contained in previous orders of this Court, the Debtors are authorized to use Cash Collateral to pay pension plan obligations during the Use Period.

5.     Notwithstanding anything contained in the First Interim Order, the Second Interim Order or the Third Interim Order to the contrary, but subject to Recitals E and G of the Third Interim Order, and the rights of the Committee as provided in the Third Interim Order, the Debtors may use Cash Collateral (including pertaining to the Committee) for any of the following (a) to object, contest or raise any defense to the validity, perfection, priority or enforceability of the First Lien Loan Obligations or the Second Lien Loan Obligations or the liens granted under the First Lien Loan Documents or the Second Lien Loan Documents, respectively, or (b) to modify the rights of the Prepetition Lenders under this Final Order or under the First Interim Order, the Second Interim Order or the Third

Interim Order, or (c) to investigate, prepare, or file any adversary proceeding or contested matter against any of the Prepetition Secured Parties (or their respective affiliates or their or their affiliates' respective officers, directors, employees, agents, or advisors) (collectively, and together with the Prepetition Secured Parties, the "Prepetition Secured Party Releasees") seeking to invalidate, avoid, subordinate, or otherwise challenge, in whole or in any part or manner, any claims or liens of the Prepetition Secured Parties pertaining to the Prepetition Credit Facilities, or investigate, prepare, or file an adversary proceeding asserting any other cause of action against any of the Prepetition Secured Party Releasees pertaining to the Prepetition Credit Facilities. Nothing in this Final Order shall prohibit the Debtors and their counsel from cooperating with the Committee in regard to any investigations.

6. The Prepetition Secured Parties are entitled, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, to adequate protection of their interests in the Cash Collateral in an amount equal to the Collateral Diminution (as defined below). As used herein, "Collateral Diminution" on any date of determination shall mean an amount equal to the postpetition diminution of the value, if any, of the Cash Collateral upon which any of the Prepetition Secured Parties had, on the Petition Date, valid, perfected, enforceable and unavoidable liens or security interests as of such date, as compared to the value of such Cash Collateral on the Petition Date, as a result of the Debtors' use of the Cash Collateral. As adequate protection for any Collateral Diminution, each Prepetition Agent (for the benefit of the applicable Prepetition Secured Parties) is hereby granted the following (collectively, the "Adequate Protection"):

(a)     <u>Adequate Protection Claims</u>.  Allowed superpriority administrative expense claims, in the amount of any Collateral Diminution, as and to the extent provided in section 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which Adequate Protection Claims shall have recourse to and be payable from all pre- and post-petition property of the Debtors, excluding causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof.  The Adequate Protection Claims shall be senior to all other administrative expense claims and shall be subject and subordinate only to the Carveout (defined below) and, as among the Prepetition Secured Parties, as provided in the Intercreditor Agreement (or, to the extent not so provided, shall have the same relative priorities as other claims of the Prepetition Secured Parties thereunder).

(b)     <u>Adequate Protection Liens</u>.  As security for the payment of the amount of any Collateral Diminution, each Prepetition Agent (for itself and for the benefit of the applicable Prepetition Secured Parties) is hereby granted (without the necessity of the execution by the Debtors or any other person or entity, or the filing or recordation by any person or entity, of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on (collectively, the "Adequate Protection Liens") all property acquired by the Debtors after the Petition Date, excluding causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof (the "Post-petition Collateral"), subject and subordinate only to: (i) valid, perfected and enforceable prepetition liens (including, without limitation, the lien of the Ohio Director encumbering the Ohio Equipment to secure the Ohio Development Loan) which are senior to the Prepetition Agents' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code; (ii) the Carveout; and (iii) as among the Prepetition Secured Parties, as provided in the Intercreditor Agreement.

(c)     <u>Adequate Protection Priorities</u>.  The Adequate Protection Liens granted pursuant to subparagraph (b) above shall have the same relative priority vis-a-vis the Post-petition Collateral and otherwise as the security interests and liens held by the First Lien Agent and the Second Lien Agent have, respectively, to secure the First Lien Loan Obligations and the Second Lien Loan Obligations, respectively, in accordance with the applicable First Lien Loan Documents and the Second Lien Loan Documents, including the Intercreditor Agreement.  The application of payments received with respect to the foregoing (and pursuant to the Adequate Protection Claims) shall be made in the order of priority as set forth for payment of proceeds of Collateral (as that term is defined in the Intercreditor Agreement) in the

First Lien Loan Documents and the Second Lien Loan Documents, including the Intercreditor Agreement.

(d)     <u>Adequate Protection Payments and Accrual of Interest</u>.  (i) The First Lien Agent (for the benefit of itself and the First Lien Secured Parties) shall receive from the Debtors payment, in arrears on the last business day of each calendar month, beginning on December 31, 2010, of current interest (calculated at the LIBO Rate applicable to outstanding loans under the First Lien Credit Agreement prior to the Petition Date, plus the additional 2% default amount beginning on the Petition Date) payable in cash, and letter of credit fees, and all other current fees and disbursements (including, but not limited to, the amounts set forth in clause (ii) of subparagraph (e) below, pertaining to the First Lien Agent, at the applicable default rates under the First Lien Credit Agreement), including the payment in cash of the portion of such aggregate accrued and unpaid interest that is otherwise payable under the terms of the First Lien Credit Agreement by capitalizing such portion and adding such portion to the principal balance of the applicable loan, all subject to section 506(b) of the Bankruptcy Code.  (ii) Interest on the outstanding Second Lien Loan Obligations will accrue post-petition (calculated at the applicable LIBO Rate or Base Rate applicable to outstanding loans under the Second Lien Credit Agreement in accordance with the terms of the Second Lien Credit Agreement, plus the 2% default amount beginning on the Petition Date), and (A) the portion of such aggregate accrued interest that is payable pursuant to the Second Lien Credit Agreement by capitalizing such interest and adding it to the outstanding principal amount of the loans thereunder shall continue to be paid, subject to section 506(b) of the Bankruptcy Code, in such manner on the applicable payment dates under the Second Lien Credit Agreement, and (B) the remainder of such aggregate accrued interest will accrue, subject to section 506(b) of the Bankruptcy Code, and not be paid in cash during the Use Period, without further order of the Court.  Nothing herein shall be deemed a waiver by any party (a) pertaining to assertions regarding the accrual of interest under the Second Lien Credit Agreement at the default rate, (b) pertaining to assertions regarding the accrual or payment of interest under the First Lien Credit Agreement at the default rate for the period before or after the Petition Date, or (c) pertaining to assertions regarding the accrual or payment of interest under the First Lien Credit Agreement at the default Alternate Base Rate (as defined in the First Lien Credit Agreement), or the rights of any party to dispute such assertions referenced in clauses (a) through (c) of this sentence.

(e)     <u>Fees and Expenses</u>.  As additional adequate protection, the Debtors shall pay in cash, on a current basis, the reasonable out-of-pocket and professional fees and expenses (including, but not limited to, the fees and

disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the First Lien Agent under the First Lien Credit Agreement and by the Second Lien Agent under the Second Lien Credit Agreement, each arising subsequent to the Petition Date. The payment of the fees, expenses and disbursements set forth in this subparagraph (e) (including professional fees and expenses of any professionals or advisors retained by or on behalf of the First Lien Agent and the Second Lien Agent) shall be made within ten (10) business days after the receipt by the Debtors and the Committee (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications; provided, however, that the Debtors and the Committee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtors pay in full the undisputed portion of such Invoiced Fees, with the Disputed Invoiced Fees being paid upon resolution of any dispute by the parties, or by the Court after notice and a hearing; and provided, further, however, that the fees and expenses payable to the First Lien Agent under this subparagraph (e) during the term of this Final Order shall not exceed $300,000 per calendar month, and the fees and expenses payable to the Second Lien Agent under this subparagraph (e) during the term of this Final Order shall not exceed $300,000 per calendar month, without prejudice to the First Lien Agent or the Second Lien Agent asserting a claim for payment of a higher amount of fees and expenses (whether such fees and expenses are incurred during the term of this Final Order or otherwise). Notwithstanding any other provision of this Final Order or of the Budget, any savings of the Debtors attributable to payments to the First Lien Agent or Second Lien Agent in amounts lower than those set forth in the preceding sentence shall not be applied to other items in the Budget or otherwise increase the permitted expenditures of the Debtors.

(f) <u>Information</u>. The Debtors shall provide to each Prepetition Agent and to the Committee weekly, to be delivered by each Friday, beginning on December 3, 2010, (a) a report in the form of the Budget, comparing actual results to budgeted amounts for all categories appearing in the Budget (including both receipts and disbursements, and being sufficient to allow determination of whether the Debtors are in compliance with this Final Order) for the period ending seven (7) days prior to the date of each such report, and (b) a report listing all bank accounts where cash is held which identifies the financial institution, account number and cash balance of each such account, as of the date which is seven (7) days prior to the date of each such report. For the avoidance of doubt, the reports to be delivered on December 3, 2010 (for the period ending November 26, 2010), and each report delivered thereafter, and the Debtors' compliance requirements with regard thereto, shall be

determined in regard to this Final Order. The Debtors shall not open any new accounts (other than bank accounts authorized by other orders of this Court) without the prior written consent of the First Lien Agent and the Second Lien Agent.

7. The Adequate Protection Liens and Adequate Protection Claims granted pursuant to this Final Order shall constitute valid and duly perfected security interests and liens and allowed administrative expense claims, respectively, only to the extent that the respective Prepetition Secured Parties had valid, unavoidable and duly perfected liens on the Prepetition Collateral, including the Cash Collateral, on the Petition Date, and subject to any defenses that may exist with respect to prepetition liens. The payment by the Debtors of any amounts in cash to the First Lien Secured Parties or the Second Lien Secured Parties under the terms of this Final Order, and the accrual, including without limitation, by payment in kind, by the Debtors of any amounts as interest or fees to any of the First Lien Secured Parties or the Second Lien Secured Parties under the terms of this Final Order, shall be subject to allowance and recharacterization in accordance with section 506(b) of the Bankruptcy Code.

8. Under the circumstances and given that the Adequate Protection is consistent with the Bankruptcy Code, the Court finds that the Adequate Protection provided herein is reasonable and sufficient to protect the interests of the respective Prepetition Secured Parties in the Cash Collateral, for the period covered by this Final Order. Notwithstanding any other provision hereof, the grant of the Adequate Protection pursuant hereto is without prejudice to the right of either Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.

9.    As between the First Lien Secured Parties and the Second Lien Secured

Parties, the Adequate Protection provided to each Prepetition Agent for the benefit of the

applicable Prepetition Secured Parties shall be governed by the terms of the Intercreditor

Agreement.  For the avoidance of doubt, to the extent that the Intercreditor Agreement is

deemed inapplicable, all rights of the First Lien Secured Parties hereunder shall be senior

in all respects to all rights of the Second Lien Secured Parties hereunder.

10.    Notwithstanding any provision of this Final Order to the contrary, the

Adequate Protection granted to the Prepetition Secured Parties pursuant to this Final Order

shall be subject and subordinate to (a) the payment of allowed fees and expenses incurred

by professionals retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code by

the Debtors or the Committee in an aggregate amount not to exceed $400,000 following

the termination of the use of Cash Collateral in accordance with the provisions hereof or

the Final Order (the "Termination Date"), plus all fees and expenses paid prior to the

Termination Date, and plus all unpaid fees and expenses previously allowed or incurred (to

the extent subsequently allowed) by any such professionals prior to the Termination Date

(not to exceed the aggregate amount of fees and expenses for such professionals reflected

in any weekly period in the Budget, pro rated for the time period prior to the Termination

Date), subject to Court approval; and (b) quarterly fees required to be paid pursuant to 28

U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court

(collectively, the "Carveout").  So long as the Debtors remain entitled to use Cash

Collateral, and so long as such payments are authorized under the Budget or otherwise

under Paragraph 2 of this Final Order, the Debtors shall be permitted to pay all

compensation and reimbursement allowed and payable under sections 330 and 331 of the Bankruptcy Code, and orders of this Court.

11. The Debtors shall be permitted to use Cash Collateral under the terms of this Final Order until the earlier of (i) the expiration of the Use Period, and (ii) 5:00 p.m., prevailing Eastern Time, on the date that is three (3) business days after the date on which the Debtors and the Committee receive notice in writing, by electronic mail, from either of the First Lien Agent or the Second Lien Agent (subject to the restrictions on the Second Lien Agent set forth in the Intercreditor Agreement) of the occurrence of an "Event of Default" (provided that such three (3) business-day notice period shall be reduced to two (2) business days if any applicable "Event of Default" is a payment default), provided that clause (ii) shall not apply in respect of any Event of Default that is cured by the Debtors within such three (3) or two (2) business-day period, as applicable. Notwithstanding any order entered by the Court that permits the Debtors to make expenditures in accordance with the terms thereof, such order shall be subject to this Final Order (or to any further order permitting the Debtors to use cash collateral on the terms specified therein), and such expenditures may be made only to the extent permitted hereby (or by such further cash collateral order).

12. For purposes of this Final Order and the use of Cash Collateral, an "Event of Default" shall occur if:

      (a)      the Debtors in any material respect failed to perform or otherwise violated any of their obligations in accordance with the First Interim Order, the Second Interim Order or the Third Interim Order except as modified herein;

(b)        the Debtors fail to perform any of their obligations in accordance with the terms of this Final Order, including, without limitation, (i) the Debtors' failure to use Cash Collateral in compliance with the Budget (subject to the Allowed Variances), or (ii) the Debtors' failure to comply with the Adequate Protection obligations;

(c)        a Chapter 11 trustee (or an examiner with powers of a Chapter 11 trustee) is appointed; or

(d)        the Debtors' chapter 11 cases are converted to cases under Chapter 7 or dismissed;

13.      Upon the occurrence of an Event of Default, and upon the expiration of any period applicable to a cure right, if any, the Debtors shall not be permitted to use Cash Collateral without further order of the Court, which may be requested on an expedited basis.

14.      Any termination of the Debtors' right to use Cash Collateral pursuant to the terms of this Final Order shall be without prejudice to the right of the Debtors, or any successor thereto, to request authority from this Court to use Cash Collateral over the objection of any of the Prepetition Secured Parties and shall be without prejudice to any parties' rights (subject to the Intercreditor Agreement) to contest any such request. The Debtors may request a hearing seeking such authority on one (1) business day's notice, subject to the Court's availability.

15.      For so long as the Debtors' authority to use Cash Collateral hereunder has not been revoked or terminated, the Prepetition Secured Parties are hereby barred from placing an administrative hold on any account holding any of the Cash Collateral.

16.      The provisions of this Final Order and any actions taken pursuant hereto shall survive (a) the termination or withdrawal of this Final Order, and (b) the entry of any

further order which may be entered by the Court or any other court of competent jurisdiction, including without limitation any further order in respect of cash collateral and any order (i) confirming any plans of reorganization in the Debtors' chapter 11 cases, (ii) converting the Debtors' chapter 11 cases to Chapter 7 cases, or (iii) dismissing the Debtors' chapter 11 cases, and the terms and provisions of this Final Order as well as the Adequate Protection Claims and Adequate Protection Liens granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of such order, and such Adequate Protection Claims and Adequate Protection Liens shall maintain their priority as provided by this Final Order.

17. Any stay, modification, reversal, lapse, or vacation of this Final Order shall not affect the validity of any obligation of the Debtors to any of the Prepetition Secured Parties incurred pursuant to this Final Order. Notwithstanding any such stay, modification, reversal, lapse, or vacation, all use of Cash Collateral and all obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal, lapse, or vacation, shall be governed in all respects by the original provisions hereof and the Prepetition Secured Parties shall be entitled to all the rights, privileges, and benefits, including without limitation, the Adequate Protection Liens granted prior to the date of such stay, modification, reversal, lapse, or vacation. This Final Order shall be without prejudice to the Debtors' right to seek to use Cash Collateral or to propose different adequate protection, over the objection of any party, in connection with any further interim or final cash collateral order of the Court for any period following any termination of the

Debtors' right to use Cash Collateral pursuant to the terms of this Final Order or following January 31, 2011.

18.     This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, or any other Bankruptcy Rule or Local Rule, this Final Order shall be effective and enforceable immediately upon entry and there shall be no stay of execution or effectiveness of this Final Order.

19.     The Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to the interpretation or implementation of this Final Order.

20.     The Debtors shall, within two (2) business days after the date of entry of this Final Order on the Court's docket, mail copies of a notice of the entry of this Final Order, together with a copy of this Final Order, to the parties having been given notice of the Preliminary Hearings and the Final Hearing, to any party that has filed prior to such date a request for notice with this Court, and to counsel for the Committee.  The Debtors shall make copies of the First Lien Loan Documents and the Second Lien Loan Documents available to creditors and other parties in interest upon request to counsel.

21.     The requirement under Local Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

Dated:     Norfolk, Virginia
           November ___, 2010


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

/s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia, 23510
(757) 640-3700

Attorneys for the Debtors and
Debtors in Possession

## <u>CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)</u>

Pursuant to Local Rule 9022-1(C), I hereby certify that the foregoing proposed

order has been endorsed by all necessary parties.

/s/ Douglas M. Foley
Douglas M. Foley

\27124616.5

**Workflow Management Inc., et al**
**Budget**
**(dollars in thousands)**

| | Actual | Actual | Actual | Actual | Actual | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending (Friday): | 10/8/2010 | 10/15/2010 | 10/22/2010 | 10/29/2010 | 11/5/2010 | 11/12/2010* | 11/19/2010 | 11/26/2010 | 12/3/2010 | 12/10/2010 | 12/17/2010 | 12/24/2010 | 12/31/2010 | 1/7/2011 | 1/14/2011 | 1/21/2011 | 1/28/2011 | 2/4/2011 | Total |
| **Total Cash Receipts** | 14,108 | 12,738 | 11,430 | 14,931 | 12,553 | 14,184 | 11,770 | 9,759 | 9,413 | 12,559 | 12,028 | 12,589 | 12,993 | 11,576 | 11,278 | 11,346 | 12,563 | 11,461 | 219,280 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | | | |
| Payroll | (5,583) | (1,156) | (6,901) | (404) | (5,277) | (424) | (6,279) | (523) | (5,138) | (579) | (4,974) | (625) | (6,534) | (625) | (5,619) | (625) | (6,723) | (647) | (58,636) |
| Rent - RE & Equipment | (1,432) | - | (8) | (1,387) | (79) | (185) | (50) | (1,772) | (50) | (50) | (50) | (430) | (1,492) | (50) | (50) | (430) | (1,492) | (50) | (9,057) |
| Utilities | (345) | - | - | (23) | (161) | (17) | (120) | (245) | (120) | (120) | (120) | (245) | (120) | (120) | (120) | (120) | (245) | (120) | (2,361) |
| Taxes (ex. Payroll) | (98) | (632) | (588) | (413) | (0) | (240) | (240) | (1,214) | (120) | - | (172) | (1,100) | (334) | (35) | (80) | (428) | (1,040) | (100) | (6,595) |
| Freight & Shipping | (432) | (331) | (391) | (413) | (262) | (414) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (338) | (6,293) |
| Customer Related Costs | (3,398) | (4,053) | (5,149) | (7,678) | (6,325) | (6,163) | (5,398) | (4,559) | (5,198) | (5,423) | (5,298) | (4,598) | (5,198) | (5,298) | (4,598) | (5,398) | (5,648) | (4,544) | (93,823) |
| Customer Postage | (1,295) | (857) | (526) | (911) | (717) | (731) | (720) | (664) | (662) | (710) | (810) | (710) | (710) | (710) | (910) | (710) | (710) | (710) | (13,771) |
| Corporate Expenses | (171) | (26) | (265) | (217) | (194) | (717) | (750) | (750) | (875) | (750) | (750) | (750) | (750) | (875) | (750) | (750) | (750) | (875) | (10,964) |
| Subtotal Operating Disbursements | (12,753) | (7,054) | (13,826) | (11,447) | (13,015) | (8,890) | (14,768) | (8,971) | (12,380) | (8,142) | (13,439) | (8,029) | (15,177) | (8,095) | (12,812) | (9,410) | (16,006) | (7,283) | (201,499) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | | | | | |
| Principal Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 1st Lien Interest | - | - | - | (929) | - | - | - | - | (960) | - | - | - | (960) | - | - | - | - | (960) | (3,810) |
| 2nd Lien Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Revolver Interest & LC Fees | - | - | - | (274) | - | - | - | - | (264) | - | - | - | (301) | - | - | - | - | (301) | (1,139) |
| Debtor Professional Fees | - | - | - | - | - | - | - | - | (1,862) | - | - | - | - | - | (1,339) | - | - | (1,254) | (4,454) |
| Committee Professional Fees | - | - | - | - | - | - | - | - | (300) | - | - | - | - | - | (300) | - | - | (300) | (900) |
| First Lien Professional Fees | - | - | (5) | - | (54) | (13) | - | - | (300) | (300) | - | - | - | (300) | - | - | - | - | (972) |
| Second Lien Professional Fees | - | - | (174) | - | (102) | - | - | - | (300) | (300) | - | - | - | - | (300) | - | - | - | (1,177) |
| US Trustee Fees | - | - | - | (7) | - | - | - | - | - | - | - | - | - | - | - | - | (125) | - | (132) |
| Subtotal Non-Operating Disbursements | - | - | (179) | (1,210) | (156) | (13) | - | - | (3,985) | (600) | - | - | (1,261) | (1,939) | (300) | - | (125) | (2,815) | (12,584) |
| **Net Increase (Decrease) in Cash** | 1,355 | 5,684 | (2,576) | 2,275 | (617) | 5,281 | (2,999) | 788 | (6,952) | 3,817 | (1,411) | 4,560 | (3,444) | 1,542 | (1,835) | 1,935 | (3,568) | 1,363 | 5,198 |
| **Cash Balance Rollforward** | | | | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | 14,992 | 16,347 | 22,031 | 19,455 | 21,730 | 21,113 | 26,394 | 23,395 | 24,183 | 17,231 | 21,047 | 19,636 | 24,196 | 20,752 | 22,294 | 20,459 | 22,395 | 18,827 | 14,992 |
| Net Increase (Decrease) in Cash | 1,355 | 5,684 | (2,576) | 2,275 | (617) | 5,281 | (2,999) | 788 | (6,952) | 3,817 | (1,411) | 4,560 | (3,444) | 1,542 | (1,835) | 1,935 | (3,568) | 1,363 | 5,198 |
| Ending Book Balance | 16,347 | 22,031 | 19,455 | 21,730 | 21,113 | 26,394 | 23,395 | 24,183 | 17,231 | 21,047 | 19,636 | 24,196 | 20,752 | 22,294 | 20,459 | 22,395 | 18,827 | 20,190 | 20,190 |

**Weekly Cash Flow Forecast Assumptions**

• Initial period includes nine days from September 30 to October 8, 2010

• Payroll includes payroll and other compensation, payroll taxes, employee benefits, expense reimbursements and temporary employee expenses consistent with First Day Motion

• Utilities includes deposit consistent with First Day Motion

• Taxes includes sales and use tax (excludes payroll taxes) consistent with First Day Motion

• Freight & Shipping expenses consistent with First Day Motion

• Customer Related Costs includes cost of products either manufactured by the company or outsourced through third parties includes broker services, customer rebates consistent with First Day Motion

• Customer Postage includes prepaid customer postage consistent with Customer Practices First Day Motion

• Corporate Expenses includes information technology and other operating expenses

• Professional Fees subject to Court approval to the extent required

• First Lien Interest for term loan and Revolver A and B Interest and Letter of Credit fees to be paid consistent with Cash Collateral Motion

• Debtor Professional Fees line does not include ordinary course professionals or the Debtors' auditors

* Actual week ended 11/12/2010 preliminary, actual subject to review and finalization

**EXHIBIT B**
(Blackline Proposed Final Order to First Day Proposed Interim Order)

**Douglas M. Foley (VSB No. 34364)**
**Patrick L. Hayden (VSB No. 30351)**
**McGUIREWOODS LLP**
**9000 World Trade Center**
**101 West Main Street**
**Norfolk, Virginia 23510**
**(757) 640-3700**

**Attorneys for the Debtors and**
**Debtors in Possession**

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ~~Workflow Management, Inc. et al.,~~ **WORKFLOW MANAGEMENT, INC.,** | ) | |
| Case No. 10-~~——(——)~~**74617(SCS)** | | |
| **et al.,** | ) | |
| | ) | |
| Debtors. | ) | (~~Joint Administration Pending~~**Jointly** |
| **Administered**) | | |
| | ) | |

## ~~INTERIM~~**PROPOSED FINAL** ORDER (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) AUTHORIZING DEBTORS TO PROVIDE ADEQUATE PROTECTION IN FORM OF REPLACEMENT LIENS, ADMINISTRATIVE EXPENSE CLAIMS, AND ACCRUAL OR PAYMENT OF INTEREST, **AND** (III) ~~SCHEDULING FINAL CASH COLLATERAL HEARING, AND (IV)~~ GRANTING CERTAIN RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in

possession (the "Debtors")**,**[1]~~;~~ pursuant to sections 105(a), 361, and 363 of Title 11 of the

United States Code (the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of

---

[1] The Debtors and the last four digits of the Debtors' taxpayer identification numbers are as follows: Workflow Management, Inc. (7104); Workflow Holdings Corporation (9217); WF Capital Holdings, Inc. (5548); WF Holdings, Inc. (9106); Workflow Direct, Inc. (7497); Workflow Management Acquisition II Corp. (2039); WFIH, Inc. (0527); WFMI, Inc. (4282); Workflow of Florida, Inc. (4281); Workflow Solutions LLC (3769); SFI of Puerto Rico, Inc. (3413); Old FGS, Inc. (1438); Old UE, LLC (4060); The Relizon Company (4702); Relizon Wisconsin Inc. (8440); Relizon (Texas) Ltd., LLP (6437); Relizon SNE Inc. (4537); Relizon KNE Inc. (3935); Relizon de Mexico Inc. (6996); Formcraft Holdings General Partner, Inc. (5683); Formcraft Holdings Limited Partner, Inc. (5684). The mailing address for WF Capital Holdings,

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"), for the entry of an interim order: (i) authorizing the Debtors to use Cash Collateral[2]; (ii) authorizing adequate protection to the Prepetition Secured Parties in the form of replacement liens, administrative expense claims and the accrual or payment of interest and fees; and (iii) scheduling a hearing (the "Final Hearing") to consider entry of a final order authorizing the Debtors to use Cash Collateral (the "Final Order"); and upon the Bogutsky Affidavit; and upon ~~a~~ preliminary ~~hearing~~**hearings** on the Motion having occurred on September ~~—,~~**30, 2010, October 7, 2010, October 27,** 2010 (the "Preliminary **Hearings") and the Final** Hearing~~")~~. **having occurred on November 30, 2010,** pursuant to Bankruptcy Rule 4001(b)(2); and **the Court having entered on October 1, 2010 an interim order authorizing the Debtors to use Cash Collateral through October 7, 2010 on the terms described in such interim order (the "First Interim Order") (Docket No. 39); and the Court having entered on October 8, 2010 a second interim order authorizing the Debtors to use Cash Collateral through October 27, 2010 on the terms described in such second interim order (the "Second Interim Order") (Docket No. 107); and the Court having entered on October 29, 2010 a third interim order authorizing the Debtors to use Cash Collateral through December 1, 2010 (the "Third Interim Order") (Docket No. 199); and** upon the record presented at the Preliminary **Hearings and the Final** Hearing; and it appearing that the relief requested by the Motion

---

Inc., Old FGS, Inc., and Old UE, LLC is 150 West Main Street, Suite 2100, Norfolk, Virginia 23501. For all other Debtors, the mailing address is 220 E. Monument Avenue, Dayton, Ohio 45402.

[2] Capitalized terms used, but not defined herein, shall be ascribed the meanings given them in the Motion.

is in the best interests of the Debtors' estates, the Debtors' creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby,

**FOUND AND DETERMINED that:**

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.      Venue of the Debtors' chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.      On October 5, 2010,** the United States Trustee **appointed the official committee of unsecured creditors (the "Committee").**

**D.**      ~~C.~~ Notice of the Preliminary **Hearings, and the Final** Hearing**,** and the relief requested in the Motion has been given to: (i) the office of the United States Trustee for the Eastern District of Virginia; (ii) the First Lien Agent and its counsel; (iii) the Second Lien Agent and its counsel; (iv) the United States Attorney for the Eastern District of Virginia; (v) the Internal Revenue Service; (vi) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; ~~and~~ (vii**) the Committee and its counsel (once appointed); and (viii**) the financial institutions at which the Debtors maintain bank accounts.  As such, sufficient and adequate notice of the Preliminary **Hearings, and the Final** Hearing**,** and the relief requested in the Motion has been given pursuant to sections 102 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and Local Rule 2002-1, and no further notice is required.

**E.**      ~~D.~~ As ~~of the Petition Date~~**provided in Recital E of the Third Interim Order, subject to the rights of the Committee as provided in the Third Interim**

3

**Order**, the total amount of outstanding First Lien Loan Obligations was ~~approximately~~ ~~$146.5 million (including the~~**$141,553,802.26[3] in principal, and $4,819,000.00[4] in** face amount of undrawn Letters of Credit~~)~~, and the total amount of outstanding Second Lien Loan Obligations was ~~approximately $196.5 million.~~ **$190,936,685.80 in principal.  The foregoing amounts do not include any interest, fees, charges, indemnities, or other amounts owing in addition to principal and undrawn Letters of Credit in respect of First Lien Loan Obligations and Second Lien Loan Obligations.**

      **F.**      ~~E. The Prepetition Agents assert that~~**Subject to the rights of the Committee as provided in the Third Interim Order, including in regard to Recital G of the Third Interim Order,** the First Lien Loan Obligations and the Second Lien Loan Obligations are secured by liens on and security interests in essentially all of the personal and real property of the Debtors who are Loan Parties, and all proceeds thereof, including the Cash Collateral as further described in the Motion (the "Prepetition Collateral").[5]

      **G.**      ~~F.~~ Without the use of Cash Collateral, the Debtors lack sufficient available sources of working capital and financing to carry on the operation of their business.  The Debtors' ability to maintain business relationships with their vendors, suppliers,

---

[3] *This does not include increases based upon the September 30, 2010 PIK amount and based upon postpetition draws on letters of credit.*

[4] *This does not include reductions based upon postpetition draws on letters of credit.*

[5] ~~To the extent that the First Lien Secured Parties and the Second Lien Secured Parties consent to the use of Cash Collateral on the terms provided herein, the Debtors will not contest the validity, priority, perfection or enforceability of their respective liens and claims (but shall retain their right to seek to equitably subordinate such claims) pertaining to the Prepetition Credit Facilities; however, the validity, priority perfection and enforceability of such liens and claims will in any event be subject to the review of any official committee of unsecured creditors appointed in these cases as necessary.~~

employees, and customers, and to purchase and supply new inventory and otherwise finance their operations, is essential to the Debtors' continued viability.

**H.** ~~G.~~ The Debtors require the ability to use Cash Collateral in accordance with the terms of this ~~Interim~~**Final** Order to avoid immediate and irreparable harm to the Debtors and their estates.  In the absence of the use of Cash Collateral, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors and their estates would occur.  The preservation, maintenance, and enhancement of the going concern value of the Debtors is critical to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

**I.** ~~H.~~ Good cause has been shown for the entry of this ~~Interim~~**Final** Order. Among other things, entry of this ~~Interim~~**Final** Order will minimize disruption of the Debtors' affairs and permit them to meet payroll and other expenses.  The use of Cash Collateral authorized hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates.

**J.** ~~I.~~ The **Cash Collateral is not diminishing on account of the Debtors' use thereof during the Use Period, as defined hereinafter, and the Adequate Protection, as defined hereinafter, provided to the First Lien Secured Parties and to the Second Lien Secured Parties pursuant to the provisions of this Final Order is sufficient to protect such parties' interests in the Cash Collateral.**

**K.** **The Budget, as defined hereinafter, and the expenditures indicated therein, are reasonable and necessary, and are in the best interests of the Debtors, their estates, creditors and other parties in interest.**

**L.**     **The** Debtors have requested ~~immediate~~ entry of this ~~Interim~~**Final** Order pursuant to Bankruptcy Rule 4001(b)(2).  This Court concludes that entry of this ~~Interim~~**Final** Order is in the best interests of the Debtors, their estates and creditors and will maximize the value of their assets for the benefit of all creditors.

Based on the foregoing findings of fact and conclusions, and upon the record made before this Court by the Debtors at the Preliminary **Hearings, and the Final** Hearing, and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted, subject to the terms and conditions set forth in this ~~Interim~~**Final** Order.  Any objections to the ~~Motion with respect to the~~ entry of this ~~Interim Order that have not been~~**Final Order, including the objections of _____ and _____, not** withdrawn~~, waived or settled, and all reservations of rights included therein,~~ **or resolved in this Final Order** are hereby ~~denied and~~ overruled.

2.      Subject to the terms of this ~~Interim~~**Final** Order, the Debtors are authorized to use Cash Collateral from ~~the Petition Date~~**December 1, 2010** to and including ~~the conclusion of the Final Hearing~~**January 31, 2011** (the "~~Interim~~**Use** Period") on the terms, for the purposes, and in the amounts set forth in the budget attached hereto as Exhibit A (the "Budget"),[5] and in accordance with orders of this Court~~; provided, that the Debtors may exceed the expenditures in the Budget~~**.  The Debtors shall be deemed to be in compliance with the Budget, and no Event of Default (as defined hereinafter) shall occur hereunder, for so long as the Debtors are in compliance with the following** (collectively, the "Allowed Variances")~~ as follows: .~~**:[6]**

        ~~(a)     during each week of the Budget,~~

---

[5] **Notwithstanding that the Budget includes periods prior to and subsequent to the Use Period, and notwithstanding that certain provisions of this Final Order refer to expenditures occurring or forecast to occur during periods prior to and subsequent to the Use Period, nothing in this Final Order shall be deemed to approve any use of Cash Collateral in any period other than the Use Period.**

(i)**On a weekly basis,** the Debtors may make aggregate disbursements in payment of expenses of all types identified in the Budget if the amount of such disbursements, when added to the aggregate amounts disbursed by the Debtors in payment of expenses of all types identified in the Budget during the previous three weeks, does not exceed ~~120~~**110**% of the aggregate amount forecast in the Budget to be disbursed for all expenses during such four week period; ~~and~~ **provided, however,** that the Debtors are permitted to **spend, during the Use Period, only 100% of the aggregate amounts set forth in each of the "Debtors Professional Fees" line item, the "Committee Professional Fees" line item, the "First Lien Professional Fees" line item and the "Second Lien Professional Fees" line item in the Budget, on account of each respective group of professionals, during the Use Period regardless of which weekly period during the Use Period that such amounts are paid (without prejudice to the Debtors, any such estate professionals, or the Prepetition Agents seeking the allowance and payment of fees and expenses in excess of such amounts by further order of the Court).**

~~(ii) the Debtors may make aggregate disbursements in payment of expenses of  the type identified in any line item of the Budget if the amount of such disbursements, when added to the aggregate amounts disbursed by the Debtors in payment of expenses of such type during the previous three weeks (without giving effect to any additional payments made during such previous three weeks that were permitted by reason of the proviso to this clause (a)(ii)) does not exceed 120% of the aggregate amount forecast in the Budget to be disbursed to pay such expenses during such four week period; provided, however, that the aggregate amount of the disbursements the Debtors may make in any week to pay expenses of the type identified in any line item of the Budget pursuant to this clause (a)(ii) shall be increased over the amount otherwise so permitted (before giving effect to this proviso) by an amount equal to the difference between (A) the aggregate amount of~~

_____

[6] **For purposes of calculating Allowed Variances, the applicable weekly forecasts for the weeks ending November 12, November 19 and November 26, 2010 shall be as indicated on the budget which is**

8

the disbursements ~~that the Debtors are permitted to~~ ~~make during such week~~ ~~pursuant to this clause (a)(ii) (without giving effect to this proviso) to pay expenses~~ ~~of the type identified in any other line item of the Budget, and (B) the actual~~ ~~disbursements made by the Debtors during such week in payment of such other~~ ~~expenses; and~~

~~(b)~~ ~~the Debtors may pay professional fees earlier or later than the times~~ ~~set forth in the Budget, and in amounts greater or less than as set forth in the~~ ~~Budget, provided that such payments shall be subject to Court approval to the~~ ~~extent required by the Bankruptcy Code, the Bankruptcy Rules, and Local Rules,~~ ~~and shall be paid as and when permitted by Court order, and in such amounts as the~~ ~~Court may authorize.~~

3. The Debtors may also vary from the Budget with the consent of each Prepetition Agent **(and the Debtors shall provide notice of any such request to the Committee at the time such request is made)**, or by further Order of the Court.

4. ~~The Debtors shall be permitted to use Cash Collateral in accordance with their cash management system consistent with prepetition practices.~~ **Provided that they are in compliance with the Budget and with the other terms of this Order and any other order of the Court which pertains to cash expenditures that are subject to this Final Order, the Debtors shall be permitted to use Cash Collateral in accordance with their cash management system consistent with prepetition practices. Notwithstanding anything contained in previous orders of this Court, the Debtors are**

---

**attached as Exhibit A to the Third Interim Order.**

9

**authorized to use Cash Collateral to pay pension plan obligations during the Use Period.**

**5.        Notwithstanding anything contained in the First Interim Order, the Second Interim Order or the Third Interim Order to the contrary, but subject to Recitals E and G of the Third Interim Order, and the rights of the Committee as provided in the Third Interim Order, the Debtors may use Cash Collateral (including pertaining to the Committee) for any of the following (a) to object, contest or raise any defense to the validity, perfection, priority or enforceability of the First Lien Loan Obligations or the Second Lien Loan Obligations or the liens granted under the First Lien Loan Documents or the Second Lien Loan Documents, respectively, or (b) to modify the rights of the Prepetition Lenders under this Final Order or under the First Interim Order, the Second Interim Order or the Third Interim Order, or (c) to investigate, prepare, or file any adversary proceeding or contested matter against any of the Prepetition Secured Parties (or their respective affiliates or their or their affiliates' respective officers, directors, employees, agents, or advisors) (collectively, and together with the Prepetition Secured Parties, the "Prepetition Secured Party Releasees") seeking to invalidate, avoid, subordinate, or otherwise challenge, in whole or in any part or manner, any claims or liens of the Prepetition Secured Parties pertaining to the Prepetition Credit Facilities, or investigate, prepare, or file an adversary proceeding asserting any other cause of action against any of the Prepetition Secured Party Releasees pertaining to the Prepetition Credit Facilities.**

**Nothing in this Final Order shall prohibit the Debtors and their counsel from cooperating with the Committee in regard to any investigations.**

**6.** ~~5.~~ The Prepetition Secured Parties are entitled, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, to adequate protection of their interests in the ~~Prepetition Collateral, including the~~ Cash Collateral~~,~~ in an amount equal to the Collateral Diminution (as defined below). As used herein, "Collateral Diminution" on any date of determination shall mean an amount equal to the postpetition diminution of the value, if any, of the ~~Prepetition~~**Cash** Collateral upon which any of the Prepetition Secured Parties had, on the Petition Date, valid, perfected, enforceable and unavoidable liens or security interests as of such date, ~~from~~**as compared to** the value of such ~~Prepetition~~**Cash** Collateral on the Petition Date, as a result of the Debtors' use of the Cash Collateral ~~in accordance with the terms and conditions of this Interim Order~~. As adequate protection for any Collateral Diminution, each Prepetition Agent (for the benefit of the applicable Prepetition Secured Parties) is hereby granted the following (collectively, the "Adequate Protection"):

(a)     Adequate Protection Claims. Allowed **superpriority** administrative expense claims, in the amount of any Collateral Diminution, as and to the extent provided in section 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which Adequate Protection Claims shall have recourse to and be payable from all pre- and post-petition property of the Debtors, excluding causes of action arising under chapter 5 of the Bankruptcy Code~~,~~ and the proceeds thereof. The Adequate Protection Claims **shall be senior to all other administrative expense claims and** shall be subject and subordinate only to the Carveout (defined below) and, as among the Prepetition Secured Parties, as provided in the Intercreditor Agreement **(or, to the extent not so provided, shall have the same relative priorities as other claims of the Prepetition Secured Parties thereunder)**.

(b)     Adequate Protection Liens. As security for the payment of the amount of any Collateral Diminution, each Prepetition Agent (for itself and for the benefit of the applicable Prepetition Secured Parties) is hereby granted

(without the necessity of the execution by the Debtors **or any other person or entity, or the filing or recordation by any person or entity,** of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on (collectively, the "Adequate Protection Liens") all property acquired by the Debtors after the Petition Date, excluding causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof (the "Post-petition Collateral"), subject and subordinate only to: (i) valid, perfected and enforceable prepetition liens (including, without limitation, the lien of the Ohio Director encumbering the Ohio Equipment to secure the Ohio Development Loan) which are senior to the Prepetition Agents' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code; (ii) the Carveout; and (iii) as among the Prepetition Secured Parties, as provided in the Intercreditor Agreement.

(c) Adequate Protection Priorities. The Adequate Protection ~~Claims and the Adequate Protection~~ Liens granted pursuant to ~~subparagraphs (a) and~~**subparagraph** (b) above shall have the same relative priority vis-a-vis the Post-petition Collateral and otherwise as the security interests and liens held by the First Lien Agent and the Second Lien Agent **have**, respectively, to secure the First Lien Loan Obligations and the Second Lien Loan Obligations, respectively, in accordance with the applicable First Lien Loan Documents and the Second Lien Loan Documents, including the Intercreditor Agreement. The application of payments received with respect to the foregoing **(and pursuant to** the Adequate Protection **Claims)** shall be made in the order of priority as set forth **for payment of proceeds of Collateral (as that term is defined in the Intercreditor Agreement)** in the First Lien Loan Documents and the Second Lien Loan Documents, including the Intercreditor Agreement.

(d) Adequate Protection Payments and Accrual of Interest. (i) The First Lien Agent (for the benefit of itself and the First Lien Secured Parties) shall receive from the Debtors: ~~(A) within two (2) business days after the date of entry of this Interim Order, payment of all accrued and outstanding interest (calculated at the non-default LIBO Rate or the non-default Base Rate, as applicable prior to the Petition Date) and letter of credit fees (at the non-default rate applicable~~ under the First Lien Credit Agreement ~~prior to the Petition Date), that were payable in cash prior to the date of entry of this Interim Order pursuant to the terms of the First Lien Credit Agreement, and that portion of such aggregate accrued and unpaid interest that was payable by capitalizing and adding such interest to the principal balance of the applicable loan shall be paid in such manner on or as of such second~~

12

~~business day; and (B) thereafter, the payment, on the dates payable pursuant to the terms of the First Lien Credit Agreement, of the portion~~ **payment, in arrears on the last business day of each calendar month, beginning on December 31, 2010,** of current interest (calculated at the ~~applicable non-default~~ LIBO Rate ~~or Base Rate as~~ applicable to outstanding loans ~~thereunder~~ under the First Lien Credit Agreement prior to the Petition Date**, plus the additional 2% default amount beginning on the Petition Date**) payable in cash~~,~~ and letter of credit fees, and all other current fees and disbursements (including, but not limited to, the amounts set forth in clause (ii) of subparagraph (e) below**, pertaining to the First Lien Agent,** at the applicable ~~non-~~default rates ~~in effect~~ under the First Lien Credit Agreement ~~prior to~~ the Petition Date)~~, and~~)**, including the payment in cash of** the portion of such aggregate accrued and unpaid interest that is **otherwise** payable under the terms of the First Lien Credit Agreement by capitalizing such portion and adding such portion to the principal balance of the applicable loan ~~shall continue to be paid in such manner~~**, all subject to section 506(b) of the Bankruptcy Code**.  (ii) Interest on the outstanding Second Lien Loan Obligations will accrue post-petition, ~~at the non-default LIBO Rate~~ **(calculated at the applicable LIBO Rate or Base Rate applicable to outstanding loans under the Second Lien Credit Agreement in accordance with the terms of the Second Lien Credit Agreement, plus the 2% default amount beginning on** the Petition Date), and (A) the portion of such aggregate accrued interest that is payable pursuant to the Second Lien Credit Agreement by capitalizing such interest and adding it to the outstanding principal amount of the loans thereunder shall continue to be paid**, subject to section 506(b) of the Bankruptcy Code,** in such manner on the applicable payment dates under the Second Lien Credit Agreement, and (B) the remainder of such aggregate accrued interest will accrue, subject to section 506(b) of the Bankruptcy Code, and not be paid in cash during the ~~course of these chapter 11 cases~~**Use Period**, without further order of the Court.  **Nothing herein shall be deemed a waiver by any party (a) pertaining to assertions regarding the accrual of interest under the Second Lien Credit Agreement at the default rate, (b) pertaining to assertions regarding the accrual or payment of interest under the First Lien Credit Agreement at the default rate for the period before or after the Petition Date, or (c) pertaining to assertions regarding the accrual or payment of interest under the First Lien Credit Agreement at the default Alternate Base Rate (as defined in the First Lien Credit Agreement), or the rights of any party to dispute such assertions referenced in clauses (a) through (c) of this sentence.**

~~(e)~~ **(e)** Fees and Expenses.  As additional adequate protection, ~~subject to section 506(b) of the Bankruptcy Code,~~ the Debtors shall pay ~~indefeasibly~~ in cash~~:~~

13

(i)~~,~~ **, on a current basis,** the reasonable **out-of-pocket and** professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the First Lien Agent under the First Lien Credit Agreement ~~arising prior to the Petition Date; and (ii) on a current basis, the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the First Lien Agent under the First~~**and by the Second Lien Agent under the Second** Lien Credit Agreement**, each** arising subsequent to the Petition Date.  The payment of the fees, expenses and disbursements set forth in this subparagraph (e) (including professional fees and expenses of any professionals or advisors retained by or on behalf of the First Lien Agent **and the Second Lien Agent**) shall be made within ten (10) business days after the receipt by the Debtors **and the Committee** (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications~~, including such amounts arising before and after the Petition Date~~; provided, however, that the Debtors **and the Committee** may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtors pay in full the undisputed portion of such Invoiced Fees, with the Disputed Invoiced Fees being paid upon resolution of any dispute by the parties, or by the Court after notice and a hearing~~.  The reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Second Lien Agent under the Second Lien Credit Agreement will accrue, subject to section 506(b) of the Bankruptcy Code, post-petition, but will not be paid in cash during the course of these chapter 11 cases, without further order of the Court~~**; and provided, further, however, that the fees and expenses payable to the First Lien Agent under this subparagraph (e) during the term of this Final Order shall not exceed $300,000 per calendar month, and the fees and expenses payable to the Second Lien Agent under this subparagraph (e) during the term of this Final Order shall not exceed $300,000 per calendar month, without prejudice to the First Lien Agent or the Second Lien Agent asserting a claim for payment of a higher amount of fees and expenses (whether such fees and expenses are incurred during the term of this Final Order or otherwise). Notwithstanding any other provision of this Final Order or of the Budget, any savings of the Debtors attributable to payments to the First Lien Agent or Second Lien Agent in amounts lower than those set forth in the preceding sentence shall not be applied to other items in the**

**Budget or otherwise increase the permitted expenditures of the Debtors**.

(f) **(f)** Information.  The Debtors shall provide to each Prepetition Agent ~~a weekly report~~**and to the Committee weekly, to be delivered by each Friday, beginning on December 3, 2010, (a) a report** in the form of the Budget, comparing actual results to budgeted amounts for all categories appearing in the Budget~~, to be delivered on each Friday beginning on October 8, 2010.~~ **(including both receipts and disbursements, and being sufficient to allow determination of whether the Debtors are in compliance with this Final Order) for the period ending seven (7) days prior to the date of each such report, and (b) a report listing all bank accounts where cash is held which identifies the financial institution, account number and cash balance of each such account, as of the date which is seven (7) days prior to the date of each such report.  For the avoidance of doubt, the reports to be delivered on December 3, 2010 (for the period ending November 26, 2010), and each report delivered thereafter, and the Debtors' compliance requirements with regard thereto, shall be determined in regard to this Final Order.  The Debtors shall not open any new accounts (other than bank accounts authorized by other orders of this Court) without the prior written consent of the First Lien Agent and the Second Lien Agent.**

**7.**  ~~6.~~ The Adequate Protection Liens and Adequate Protection Claims granted

pursuant to this ~~Interim~~**Final** Order shall constitute valid and duly perfected security

interests and liens and allowed administrative expense claims, respectively, only to the

extent that the respective Prepetition Secured Parties had valid, unavoidable and duly

perfected liens on the Prepetition Collateral, including the Cash Collateral, on the Petition

Date, and subject to any defenses that may exist with respect to ~~such liens.  The payment~~

~~or accrual~~**prepetition liens.  The payment by the Debtors of any amounts in cash to the**

**First Lien Secured Parties or the Second Lien Secured Parties under the terms of this**

**Final Order, and the accrual, including without limitation, by payment in kind,** by the

Debtors of any amounts as interest~~,~~ **or** fees ~~or expenses~~ to any of the First Lien Secured

Parties or ~~to~~ the Second Lien Secured Parties under **the terms of** this ~~Interim~~**Final** Order**,**

shall be subject to allowance and recharacterization in accordance with section 506(b) of the Bankruptcy Code.

**8.** ~~7.~~ Under the circumstances and given that the Adequate Protection is consistent with the Bankruptcy Code, the Court finds that the Adequate Protection provided herein is reasonable and sufficient to protect the interests of the respective Prepetition Secured Parties in the ~~Prepetition~~**Cash** Collateral, ~~including the Cash Collateral~~**for the period covered by this Final Order**.  Notwithstanding any other provision hereof, the grant of the Adequate Protection pursuant hereto is without prejudice to the right of either Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.

**9.** ~~8.~~ As between the First Lien Secured Parties and the Second Lien Secured Parties, the Adequate Protection provided to each Prepetition Agent for the benefit of the applicable Prepetition Secured Parties shall be governed by the terms of the Intercreditor Agreement.  **For the avoidance of doubt, to the extent that the Intercreditor Agreement is deemed inapplicable, all rights of the First Lien Secured Parties hereunder shall be senior in all respects to all rights of the Second Lien Secured Parties hereunder.**

**10.** ~~9.~~ Notwithstanding any provision of this ~~Interim~~**Final** Order to the contrary, the Adequate Protection granted to the Prepetition Secured Parties pursuant to this ~~Interim~~**Final** Order shall be subject and subordinate to~~:~~ (a) the payment of allowed fees and expenses incurred by professionals retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code by the Debtors or ~~any statutory committee of unsecured creditors~~**the**

**Committee** in an aggregate amount not to exceed $~~1,000,000~~**400,000** following the termination of the use of Cash Collateral ~~pursuant to~~**in accordance with** the provisions ~~of the Interim Order (as provided below)~~**hereof** or the Final Order (the "Termination Date"), plus all fees and expenses paid prior to the Termination Date**, and plus all unpaid fees and expenses** previously ~~awarded~~**allowed** or incurred **(to the extent subsequently allowed)** by any such professionals prior to the Termination Date **(not to exceed the aggregate amount of fees and expenses for such professionals reflected in any weekly period in the Budget, pro rated for the time period prior to the Termination Date)**, subject to Court approval; and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (collectively, the "Carveout"). So long as the Debtors remain entitled to use Cash Collateral, **and so long as such payments are authorized under the Budget or otherwise under Paragraph 2 of this Final Order,** the Debtors shall be permitted to pay all compensation and reimbursement allowed and payable under sections 330 and 331 of the Bankruptcy Code, and orders of this Court~~, and the amounts so paid prior to the Termination Date shall not reduce the Carveout~~.

**11.** ~~10. Subject to the Cure Right (as defined below), the~~**The** Debtors shall be permitted to use Cash Collateral under the terms of this ~~Interim~~**Final** Order until the earlier of (i) the expiration of the ~~Interim~~**Use** Period, and (ii) **5:00 p.m., prevailing Eastern Time, on** the date that is ~~five (5~~**three (3**) business days after the date ~~that~~**on which the Debtors and the Committee receive notice in writing, by electronic mail, from** either of the First Lien Agent or the Second Lien Agent (subject to the restrictions on the Second

17

Lien Agent set forth in the Intercreditor Agreement) ~~provide notice to the Debtors in writing~~ of the occurrence of an "Event of Default~~." "~~**" (provided that such three (3) business-day notice period shall be reduced to two (2) business days if any applicable "Event of Default" is a payment default), provided that clause (ii) shall not apply in respect of any Event of Default that is cured by the Debtors within such three (3) or two (2) business-day period, as applicable. Notwithstanding any order entered by the Court that permits the Debtors to make expenditures in accordance with the terms thereof, such order shall be subject to this Final Order (or to any further order permitting the Debtors to use cash collateral on the terms specified therein), and such expenditures may be made only to the extent permitted hereby (or by such further cash collateral order).**

> **12.** **For purposes of this Final** Order and the use of Cash Collateral, an "Event of Default" shall occur if**:**

> > **(a)** **the Debtors in any material respect failed to perform or otherwise violated any of their obligations in accordance with the First Interim Order, the Second Interim Order or the Third Interim Order except as modified herein;**

> > **(b)** ~~11. For purposes of this Interim~~ Order and the use of Cash Collateral, an "Event of Default" shall occur if ~~(a)~~ the Debtors fail to perform any of their obligations in accordance with the terms of ~~the Interim~~**this Final** Order, including, without limitation, (i) the Debtors' failure to use Cash Collateral in compliance with the Budget (subject to the Allowed Variances), or (ii) the Debtors' failure to comply with the Adequate Protection obligations;~~(b)~~

> > **(c)** a Chapter 11 trustee **(or an examiner with powers of a Chapter 11 trustee)** is appointed; or ~~(c)~~

      **(d)**        the Debtors' chapter 11 cases are converted to cases under Chapter ~~7. However, to the extent any Event of Default is a payment default or is otherwise susceptible to cure, the applicable Prepetition Agent shall provide the Debtors with written notice thereof and (x) in the case of a payment default, three (3) business days' opportunity to cure such default, or (y) in the case of any other default, ten (10) business days' opportunity to cure such default before the Debtors shall be prohibited from using Cash Collateral (the "Cure Right")~~**7 or dismissed;**

**13.**        **Upon the occurrence of an Event of Default, and upon the expiration of any period applicable to a cure right, if any, the Debtors shall not be permitted to use Cash Collateral without further order of the Court, which may be requested on an expedited basis**.

**14.**        ~~12.~~ Any termination of the Debtors' right to use Cash Collateral pursuant to the terms of this ~~Interim~~**Final** Order shall be without prejudice to the right of the Debtors, or any successor thereto, to request authority from this Court to use Cash Collateral over the objection of any of the Prepetition Secured Parties and shall be without prejudice to any parties' rights (subject to the Intercreditor Agreement) to contest any such request. The Debtors may request a hearing seeking such authority on one **(1)** business day's notice, subject to the Court's availability.

**15.**        ~~13. The~~**For so long as the Debtors' authority to use Cash Collateral hereunder has not been revoked or terminated, the** Prepetition Secured Parties are hereby barred from placing an administrative hold on any account holding any of the Cash Collateral.

**16.**        ~~14.~~ The provisions of this ~~Interim~~**Final** Order and any actions taken pursuant hereto shall survive **(a) the termination or withdrawal of this Final Order, and**

**(b) the** entry of any **further** order which may be entered **by the Court or any other court of competent jurisdiction, including without limitation any further order in respect of cash collateral and any order** (i) confirming any plans of reorganization in the Debtors' chapter 11 cases, (ii) converting the Debtors' chapter 11 cases to Chapter 7 cases, or (iii) dismissing the Debtors' chapter 11 cases, and the terms and provisions of this ~~Interim~~**Final** Order as well as the Adequate Protection **Claims and Adequate Protection** Liens granted pursuant to this ~~Interim~~**Final** Order shall continue in full force and effect notwithstanding the entry of such order, and such Adequate Protection **Claims and Adequate Protection** Liens shall maintain their priority as provided by this ~~Interim~~**Final** Order.

**17.**     ~~15.~~ Any stay, modification, reversal, lapse, or vacation of this ~~Interim~~**Final** Order shall not affect the validity of any obligation of the Debtors to any of the Prepetition Secured Parties incurred pursuant to this ~~Interim~~**Final** Order.  Notwithstanding any such stay, modification, reversal, lapse, or vacation, all use of Cash Collateral and all obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal, lapse, or vacation, shall be governed in all respects by the original provisions hereof and the Prepetition Secured Parties shall be entitled to all the rights, privileges, and benefits, including without limitation, the Adequate Protection Liens granted prior to the date of such stay, modification, reversal, lapse, or vacation.  **This Final Order shall be without prejudice to the Debtors' right to seek to use Cash Collateral or to propose different adequate protection, over the objection of any party, in connection with any further interim or final cash collateral order of the Court for any**

**period following any termination of the Debtors' right to use Cash Collateral pursuant to the terms of this Final Order or following January 31, 2011.**

**18.** ~~16.~~ This ~~Interim~~**Final** Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, or any other Bankruptcy Rule or Local Rule, this ~~Interim~~**Final** Order shall be effective and enforceable immediately upon entry and there shall be no stay of execution or effectiveness of this ~~Interim~~**Final** Order.

**19.** ~~17.~~ The Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to the interpretation or implementation of this ~~Interim~~**Final** Order.

**20.** ~~18.~~ The Debtors shall, ~~on or before October ___, 2010,~~**within two (2) business days after the date of entry of this Final Order on the Court's docket,** mail copies of a notice of the entry of this ~~Interim~~**Final** Order, together with a copy of this ~~Interim~~**Final** Order, to the parties having been given notice of the Preliminary **Hearings and the Final** Hearing, to any party that has filed prior to such date a request for notice with this Court, and to counsel for ~~any statutory committee of unsecured creditors appointed pursuant to 11 U.S.C. § 1102.~~**the Committee.**  The Debtors shall make copies of the First Lien Loan Documents and the Second Lien Loan Documents available to creditors and other parties in interest upon request to counsel.

~~19.     Any party in interest objecting to the use of Cash Collateral on the terms described herein shall file written objections with the United States Bankruptcy Court Clerk for the Eastern District of Virginia, Norfolk Division, no later than 4:00 p.m. on~~

October ____, 2010, which shall be served so that the same are received on or before such date and time by: (a) proposed counsel for the Debtors and Debtors in possession, McGuireWoods LLP, Attn: Douglas M. Foley, 9000 World Trade Center, 101 West Main Street, Norfolk, Virginia, 23510, (b) the First Lien Agent and its counsel; (c) the Second Lien Agent and its counsel; (d) counsel for any statutory committee appointed in these cases, and (e) the Office of the United States Trustee.

20.    The Final Hearing to consider the Motion will be held on October ____, 2010 at __:__ __ prevailing Eastern time.

21.    The requirement under Local Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

Dated:        Norfolk, Virginia
              September**November** ____, 2010


              _____
              UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

/s/ Draft
**/s/ Douglas M. Foley**
Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia, 23510
(757) 640-3700

~~Proposed~~ Attorneys for the Debtors and
Debtors in Possession

## <u>CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)</u>

Pursuant to Local Rule 9022-1(C), I hereby certify that the foregoing proposed

order has been endorsed by all necessary parties.

/s/ Draft
**/s/ Douglas M. Foley**
Douglas M. Foley

~~\27411000.1~~
**\27124616.5**

**EXHIBIT C**
(Blackline Proposed Final Order to Third Interim Order)

Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia 23510
(757) 640-3700

Attorneys for the Debtors and
Debtors in Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| WORKFLOW MANAGEMENT, INC., | ) | Case No. 10-74617(SCS) |
| et al., | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**~~THIRD INTERIM~~<u>PROPOSED FINAL</u> ORDER (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) AUTHORIZING DEBTORS TO PROVIDE ADEQUATE PROTECTION IN FORM OF REPLACEMENT LIENS, ADMINISTRATIVE EXPENSE CLAIMS, AND ACCRUAL OR PAYMENT OF INTEREST, ~~(III) SCHEDULING FINAL CASH COLLATERAL HEARING,~~AND (~~IV~~<u>III</u>) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in

possession (the "Debtors"),[1] pursuant to sections 105(a), 361, and 363 of Title 11 of the

United States Code (the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 of the Local Rules for

---

[1] The Debtors and the last four digits of the Debtors' taxpayer identification numbers are as follows: Workflow Management, Inc. (7104); Workflow Holdings Corporation (9217); WF Capital Holdings, Inc. (5548); WF Holdings, Inc. (9106); Workflow Direct, Inc. (7497); Workflow Management Acquisition II Corp. (2039); WFIH, Inc. (0527); WFMI, Inc. (4282); Workflow of Florida, Inc. (4281); Workflow Solutions LLC (3769); SFI of Puerto Rico, Inc. (3413); Old FGS, Inc. (1438); Old UE, LLC (4060); The Relizon Company (4702); Relizon Wisconsin Inc. (8440); Relizon (Texas) Ltd., LLP (6437); Relizon SNE Inc. (4537); Relizon KNE Inc. (3935); Relizon de Mexico Inc. (6996); Formcraft Holdings General Partner, Inc. (5683); Formcraft Holdings Limited Partner, Inc. (5684). The mailing address for WF Capital Holdings,

the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"), for the entry of an interim order: (i) authorizing the Debtors to use Cash Collateral[2]; (ii) authorizing adequate protection to the Prepetition Secured Parties in the form of replacement liens, administrative expense claims and the accrual or payment of interest and fees; and (iii) scheduling a hearing (the "Final Hearing") to consider entry of a final order authorizing the Debtors to use Cash Collateral (the "Final Order"); and upon the Bogutsky Affidavit; and upon preliminary hearings on the Motion having occurred on September 30, 2010, October 7, ~~2010 and~~ **2010,** October 27, 2010 (the "Preliminary Hearings")~~;~~ **and the Final Hearing having occurred on November 30, 2010,** pursuant to Bankruptcy Rule 4001(b)(2); and the Court having entered on October 1, 2010 an interim order authorizing the Debtors to use Cash Collateral through October 7, 2010 on the terms described in such interim order (the "First Interim Order") (Docket No. 39); and the Court having entered on October 8, 2010 a second interim order authorizing the Debtors to use Cash Collateral through October 27, 2010 on the terms described in such second interim order (the "Second Interim Order") (Docket No. 107); and **the Court having entered on October 29, 2010 a third interim order authorizing the Debtors to use Cash Collateral through December 1, 2010 (the "Third Interim Order") (Docket No. 199); and** upon the record presented at the Preliminary Hearings and ~~subject to the agreements of the parties as set forth on the records of the Preliminary Hearings~~ **the Final Hearing**; and it appearing that the relief requested by the Motion is in the best interests of the Debtors'

---

Inc., Old FGS, Inc., and Old UE, LLC is 150 West Main Street, Suite 2100, Norfolk, Virginia 23501. For all other Debtors, the mailing address is 220 E. Monument Avenue, Dayton, Ohio 45402.
[2] Capitalized terms used, but not defined herein, shall be ascribed the meanings given them in the Motion.

estates, the Debtors' creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby,

**FOUND AND DETERMINED that:**

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.     Venue of the Debtors' chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     On October 5, 2010, the United States Trustee appointed the official committee of unsecured creditors (the "Committee").

D.     Notice of the Preliminary Hearings**, and the Final Hearing,** and the relief requested in the Motion has been given to: (i) the office of the United States Trustee for the Eastern District of Virginia; (ii) the First Lien Agent and its counsel; (iii) the Second Lien Agent and its counsel; (iv) the United States Attorney for the Eastern District of Virginia; (v) the Internal Revenue Service; (vi) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vii) the Committee and its counsel (once appointed); and (viii) the financial institutions at which the Debtors maintain bank accounts.  As such, sufficient and adequate notice of the Preliminary Hearings**, and the Final Hearing,** and the relief requested in the Motion has been given pursuant to sections 102 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and Local Rule 2002-1, and no further notice is required.

E.     ~~Subject~~**As provided in Recital E of the Third Interim Order, subject** to the rights of the Committee~~, as set forth in this third interim order (this "Third Interim~~

~~Order"), to challenge the amount, validity, priority, perfection, enforceability and/or~~

~~voidability of the First Lien Loan Obligations and/or the Second Lien Loan Obligations, or~~

~~any payments made in regard thereto prior to the Petition Date, as of the Petition Date~~ **as**

**provided in the Third Interim Order**, the total amount of outstanding First Lien Loan

Obligations was $141,553,802.26[3] in principal, and $4,819,000.00[4] in face amount of

undrawn Letters of Credit, and the total amount of outstanding Second Lien Loan

Obligations was $190,936,685.80 in principal.  The foregoing amounts do not include any

interest, fees, charges, indemnities, or other amounts owing in addition to principal and

undrawn Letters of Credit in respect of First Lien Loan Obligations and Second Lien Loan

Obligations.

       F.      ~~The~~Subject to the rights of the Committee **as provided in the Third**

**Interim Order, including in regard to Recital G of the Third Interim Order, the** First

Lien Loan Obligations and the Second Lien Loan Obligations are secured by liens on and

security interests in essentially all of the personal and real property of the Debtors who are

Loan Parties, and all proceeds thereof, including the Cash Collateral as further described in

the Motion (the "Prepetition Collateral").

      ~~G.~~      Subject to the rights of the Committee~~, as set forth in this Third Interim~~

~~Order, to challenge the amount, validity, priority, perfection, enforceability and/or~~

~~voidability of the First Lien Loan Obligations and/or the Second Lien Loan Obligations, or~~

---

[3] *This does not include increases based upon the September 30, 2010 PIK amount and based upon* ~~*the*~~ ~~*October 22, 2010 letter*~~**postpetition draws on letters** *of credit* ~~*draw*~~.

[4] *This does not include* ~~*a reduction*~~**reductions** *based upon* ~~*the October 22, 2010 letter*~~**postpetition draws on** **letters** *of credit* ~~*draw*~~.

~~any payments made in regard thereto prior to the Petition Date, the Debtors hereby (i)~~

~~admit that the Loan Parties are truly, justly, validly, enforceably, and unavoidably indebted~~

~~under the Prepetition Credit Facilities in the principal and undrawn Letter of Credit~~

~~amounts specified in Recital E hereof, (ii) admit that the First Lien Loan Obligations and~~

~~the Second Lien Loan Obligations are secured by valid, perfected, enforceable and~~

~~unavoidable liens and security interests granted to the Prepetition Secured Parties, upon~~

~~and in the Prepetition Collateral, with the First Lien Loan Obligations having first priority~~

~~(except as otherwise permitted under the First Lien Credit Agreement) and with the Second~~

~~Lien Loan Obligations having second priority (except as otherwise permitted under the~~

~~Second Lien Credit Agreement and pursuant to the terms of the Intercreditor Agreement),~~

~~and (iii) waive and release any right, action or claim they may have to (x) invalidate,~~

~~subordinate, or otherwise challenge the amount of First Lien Loan Obligations and Second~~

~~Lien Loan Obligations as described in clause (i) above, (y) seek to avoid any payment~~

~~made on account of the First Lien Loan Obligations or the Second Lien Loan Obligations~~

~~prior to the Petition Date, or (z) dispute that the Prepetition Secured Parties hold valid,~~

~~perfected, enforceable and unavoidable security interests in, and liens on, the Prepetition~~

~~Collateral and the proceeds thereof as described in clause (ii) above; in each case,~~

~~notwithstanding any applicable law or rule (including without limitation Section 552 of the~~

~~Bankruptcy Code) to the contrary.~~

**G.** ~~H.~~ Without the use of Cash Collateral, the Debtors lack sufficient available

sources of working capital and financing to carry on the operation of their business.  The

Debtors' ability to maintain business relationships with their vendors, suppliers,

employees, and customers, and to purchase and supply new inventory and otherwise finance their operations, is essential to the Debtors' continued viability.

**H.** ~~I.~~ The Debtors require the ability to use Cash Collateral in accordance with the terms of this ~~Third Interim~~**Final** Order to avoid immediate and irreparable harm to the Debtors and their estates. In the absence of the use of Cash Collateral, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors and their estates would occur. The preservation, maintenance, and enhancement of the going concern value of the Debtors is critical to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

**I.** ~~J.   In light of the consent thereto of the First Lien Agent and the Second Lien Agent, good~~**Good** cause has been shown for the entry of this ~~Third Interim~~**Final** Order. Among other things, entry of this ~~Third Interim~~**Final** Order will minimize disruption of the Debtors' affairs and permit them to meet payroll and other expenses. The use of Cash Collateral authorized hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates.

**J.** ~~K.~~ The **Cash Collateral is not diminishing on account of the Debtors' use thereof during the Use Period, as defined hereinafter, and the Adequate Protection, as defined hereinafter, provided to the First Lien Secured Parties and to the Second Lien Secured Parties pursuant to the provisions of this Final Order is sufficient to protect such parties' interests in the Cash Collateral.**

**K.** **The Budget, as defined hereinafter, and the expenditures indicated therein, are reasonable and necessary, and are in the best interests of the Debtors, their estates, creditors and other parties in interest.**

~~**L.**~~ **The** Debtors have requested entry of this ~~Third Interim~~**Final** Order pursuant to Bankruptcy Rule 4001(b)(2).  This Court concludes that entry of this ~~Third Interim~~**Final** Order is in the best interests of the Debtors, their estates and creditors and will maximize the value of their assets for the benefit of all creditors.

Based on the foregoing findings of fact and conclusions, and upon the record made before this Court by the Debtors at the Preliminary Hearings, **and the Final Hearing,** and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED THAT**

1.     The Motion is granted, subject to the terms and conditions set forth in this ~~Third Interim~~**Final** Order.  Any objections to the entry of this ~~Third Interim Order~~**Final Order, including the objections of _____ and _____,** not withdrawn or resolved in this ~~Third Interim~~**Final** Order are hereby overruled.

2.     Subject to the terms of this ~~Third Interim~~**Final** Order, the Debtors are authorized to use Cash Collateral from ~~October 23,~~**December 1,** 2010 to and including ~~December 1, 2010~~**January 31, 2011** (the "~~Interim~~**Use** Period") on the terms, for the purposes, and in the amounts set forth in the budget attached hereto as Exhibit A (the "Budget"),[5] and in accordance with orders of this Court.  The Debtors shall be deemed to

---

[5] Notwithstanding that the Budget includes periods prior to and subsequent to the ~~Interim~~**Use** Period, and notwithstanding that certain provisions of this ~~Third Interim~~**Final** Order refer to ~~receipts and~~ expenditures occurring or forecast to occur during periods prior to and subsequent to the ~~Interim~~**Use** Period, nothing in this

be in compliance with the Budget, and no Event of Default (as defined hereinafter) shall

occur hereunder, for so long as the Debtors are in compliance with the following

(collectively, the "Allowed Variances"):[6]

~~(a)~~ On a weekly basis, the Debtors may make aggregate disbursements in payment of expenses of all types identified in the Budget if the amount of such disbursements, when added to the aggregate amounts disbursed by the Debtors in payment of expenses of all types identified in the Budget during the previous ~~week~~**three weeks**, does not exceed 110% of the aggregate amount forecast in the Budget to be disbursed for all expenses during such ~~two~~**four** week period; provided, however, that the Debtors are permitted to spend, during the ~~Interim~~**Use** Period, only 100% of the aggregate amounts set forth in each of the "Debtors Professional Fees" line item, the "Committee Professional Fees" line item, the "First Lien Professional Fees" line item and the "Second Lien Professional Fees" line item in the Budget, on account of each respective group of professionals, during the ~~Interim~~**Use** Period regardless of which weekly period during the ~~Interim~~**Use** Period that such amounts are paid (without prejudice to the Debtors, any such estate professionals, or **the** Prepetition Agents seeking the allowance and payment of fees and expenses in excess of such amounts by further order of the Court)~~;~~**.**

~~(b)        On a weekly basis, the Debtors' actual cash receipts, when added to the aggregate amount of actual cash receipts received during the previous week, are not less than 90% of the aggregate amount forecast in the Budget to be received during such two week period, provided, however, notwithstanding the foregoing, so long as the aggregate of the Debtors' actual cash receipts for the period from and including the Petition Date and through and including the last day of any subsequent weekly period in the Budget exceed the aggregate amount of cash receipts forecast in the Budget for the period from and including the Petition Date through and including the last day of such weekly period, the Debtors shall be deemed to have complied with this subparagraph (b);~~

---

~~Third Interim~~**Final** Order shall be deemed to approve any use of Cash Collateral in any period other than the ~~Interim~~**Use** Period.

[6] For purposes of calculating Allowed Variances, the applicable weekly forecasts for the weeks ending ~~October 8~~**November 12, November 19** and ~~October 15,~~**November 26,** 2010 shall be as indicated on the budget which is attached as Exhibit A to the ~~Second~~**Third** Interim Order.

(c)       ~~The aggregate amount of cash in the Debtors' bank accounts shall not be less than $15,000,000, at the close of business on each Friday during the Interim Period; and~~

(d)       ~~The EBITDA of the Debtors for the calendar month of October 2010, as determined in accordance with the definition of "EBITDA" contained in section 1.1 of the First Lien Credit Agreement shall not be less than $3,500,000, provided that the calculation of EBITDA, for the purpose of this clause (d) of this Third Interim Order only, shall exclude (i) expenses permitted under this Third Interim Order that relate to the Debtors' restructuring and integration costs described in subparagraph (f) of such definition (provided that the $9,000,000 aggregate limitation thereon for fiscal year 2010 contained in such subparagraph (f) shall not apply), and (ii) expenses permitted under this Third Interim Order and incurred by the Debtors for professionals retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code by the Debtors and the Committee, and for any professionals retained by the Prepetition Agents.~~

3.       The Debtors may also vary from the Budget with the consent of each Prepetition Agent (and the Debtors shall provide notice of any such request to the Committee at the time such request is made), or by further Order of the Court.

4.       Provided that they are in compliance with the Budget and with the other terms of this Order and any other order of the Court which pertains to cash expenditures that are subject to this ~~Third Interim~~**Final** Order, the Debtors shall be permitted to use Cash Collateral in accordance with their cash management system consistent with prepetition practices~~.~~ Notwithstanding anything **contained in previous orders of this Court, the Debtors are authorized to use Cash Collateral to pay pension plan obligations during the Use Period**.

5.       Notwithstanding anything contained in ~~this~~**the First Interim Order, the Second Interim Order or the** Third Interim Order to the contrary, **but subject to Recitals E and G of the Third Interim Order, and the rights of the Committee as provided in**

**the Third Interim Order,** the Debtors may ~~not~~ use ~~any~~ Cash Collateral (including pertaining to the Committee) for any of the following~~, without the prior written consent of the First Lien Agent and the Second Lien Agent, to the extent affected:~~ (a) to object, contest or raise any defense to the validity, perfection, priority or enforceability of the First Lien Loan Obligations or the Second Lien Loan Obligations or the liens granted under the First Lien Loan Documents or the Second Lien Loan Documents, respectively, or (b) to modify the rights of the Prepetition Lenders under this ~~Third Interim~~**Final** Order or under the First Interim Order ~~or~~**,** the Second **Interim Order or the Third** Interim Order, or (c) to investigate, prepare, or file any adversary proceeding or contested matter against any of the Prepetition Secured Parties (or their respective affiliates or their or their affiliates' respective officers, directors, employees, agents, or advisors) (collectively, and together with the Prepetition Secured Parties, the "Prepetition Secured Party Releasees") seeking to invalidate, avoid, subordinate, or otherwise challenge, in whole or in any part or manner, any claims or liens of the Prepetition Secured Parties pertaining to the Prepetition Credit Facilities, or investigate, prepare, or file an adversary proceeding asserting any other cause of action against any of the Prepetition Secured Party Releasees pertaining to the Prepetition Credit Facilities~~; provided that Cash Collateral may be used during the period specified in paragraph 18 of this Third Interim Order to pay the professional fees and expenses of the Committee in an amount not to exceed $25,000[7], in the aggregate, for the Committee and its professionals to (i) investigate the First Lien Loan Obligations and the Second Lien Loan Obligations, and (ii) investigate the liens and security interests granted~~

---

[7] ~~This is without prejudice to the rights of the Committee to seek an increase in such amount after notice and a hearing on an expedited basis, or the rights of any party to oppose any such request.~~

~~pursuant to the Prepetition Credit Facilities, the First Lien Loan Documents and the~~ ~~Second Lien Loan Documents, and provided further that nothing in this Third Interim~~**,** **<u>Nothing in this Final</u>** Order shall prohibit the Debtors and their counsel from cooperating with the Committee in regard to any ~~such~~ investigations.

6.       The Prepetition Secured Parties are entitled, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, to adequate protection of their interests in the ~~Prepetition~~ ~~Collateral, including the~~ Cash Collateral~~,~~ in an amount equal to the Collateral Diminution (as defined below).  As used herein, "Collateral Diminution" on any date of determination shall mean an amount equal to the postpetition diminution of the value, if any, of the ~~Prepetition~~**<u>Cash</u>** Collateral upon which any of the Prepetition Secured Parties had, on the Petition Date, valid, perfected, enforceable and unavoidable liens or security interests as of such date, as compared to the value of such ~~Prepetition~~**<u>Cash</u>** Collateral on the Petition Date, as a result of the Debtors' use of the Cash ~~Collateral, the imposition of the automatic~~ ~~stay, the existence of the Carveout (as defined below) and any payments made in~~ ~~connection therewith, or any use, sale, or lease of any Prepetition~~ Collateral.  As adequate protection for any Collateral Diminution, each Prepetition Agent (for the benefit of the applicable Prepetition Secured Parties) is hereby granted the following (collectively, the "Adequate Protection"):

(a)      <u>Adequate Protection Claims</u>.  Allowed superpriority administrative expense claims, in the amount of any Collateral Diminution, as and to the extent provided in section 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which Adequate Protection Claims shall have recourse to and be payable from all pre- and post-petition property of the Debtors, ~~including the proceeds of~~**<u>excluding</u>** causes of action ~~(but not the causes of~~ ~~action)~~ arising under chapter 5 of the Bankruptcy Code ~~(provided that the~~ ~~Prepetition Agents shall have recourse to the proceeds of such causes of~~

~~action only after recourse to all other property subject to the Adequate Protection Claims shall have been exhausted).[8]~~**and the proceeds thereof.** The Adequate Protection Claims shall be senior to all other administrative expense claims and shall be subject and subordinate only to the Carveout (defined below) and, as among the Prepetition Secured Parties, as provided in the Intercreditor Agreement (or, to the extent not so provided, shall have the same relative priorities as other claims of the Prepetition Secured Parties thereunder).

(b)  <u>Adequate Protection Liens</u>.  As security for the payment of the amount of any Collateral Diminution, each Prepetition Agent (for itself and for the benefit of the applicable Prepetition Secured Parties) is hereby granted (without the necessity of the execution by the Debtors or any other person or entity, or the filing or recordation by any person or entity, of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on (collectively, the "Adequate Protection Liens") all property acquired by the Debtors after the Petition Date, ~~including the proceeds of~~**excluding** causes of action ~~(but not the causes of action)~~ arising under chapter 5 of the Bankruptcy Code ~~(provided that the Prepetition Agents shall have recourse to the proceeds of such causes of action only after recourse to all other property subject to the Adequate Protection Liens shall have been exhausted)~~**and the proceeds thereof** (the "Post-petition Collateral"),[9] subject and subordinate only to: (i) valid, perfected and enforceable prepetition liens (including, without limitation, the lien of the Ohio Director encumbering the Ohio Equipment to secure the Ohio Development Loan) which are senior to the Prepetition Agents' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code; (ii) the Carveout; and (iii) as among the Prepetition Secured Parties, as provided in the Intercreditor Agreement.  ~~For the avoidance of doubt, any liens preserved for the benefit of the estate under Section 551 of the Bankruptcy Code shall be junior to the Adequate Protection Liens.~~

(c)  <u>Adequate Protection Priorities</u>.  The Adequate Protection Liens granted pursuant to subparagraph (b) above shall have the same relative priority vis-a-vis the Post-petition Collateral and otherwise as the security interests and

---

[8] ~~Inclusion of the Chapter 5 causes of action proceeds in the first sentence of paragraph 6(a) is approved on an interim basis only during the term of this Third Interim Order, conditioned upon 10-days notice to and right to object of parties in interest other than the Debtors and the Committee.~~

[9] ~~Inclusion of chapter 5 causes of action proceeds in the first sentence of paragraph 6(b) is approved on an interim basis only during the term of this Third Interim Order, conditioned upon 10-days notice to and right to object of parties in interest other than the Debtors and the Committee.~~

liens held by the First Lien Agent and the Second Lien Agent have, respectively, to secure the First Lien Loan Obligations and the Second Lien Loan Obligations, respectively, in accordance with the applicable First Lien Loan Documents and the Second Lien Loan Documents, including the Intercreditor Agreement. The application of payments received with respect to the foregoing (and pursuant to the Adequate Protection Claims) shall be made in the order of priority as set forth for payment of proceeds of Collateral (as that term is defined in the Intercreditor Agreement) in the First Lien Loan Documents and the Second Lien Loan Documents, including the Intercreditor Agreement.

(d)  <u>Adequate Protection Payments and Accrual of Interest</u>.  (i) The First Lien Agent (for the benefit of itself and the First Lien Secured Parties) shall receive from the Debtors payment, in arrears, on the last business day of each calendar month, beginning on ~~October 29,~~**December 31,** 2010, of current interest (calculated at the LIBO Rate applicable to outstanding loans under the First Lien Credit Agreement prior to the Petition Date, plus the additional 2% default amount beginning on the Petition Date) payable in cash, and letter of credit fees, and all other current fees and disbursements (including, but not limited to, the amounts set forth in clause (ii) of subparagraph (e) below, pertaining to the First Lien Agent, at the applicable default rates under the First Lien Credit Agreement), including the payment in cash of the portion of such aggregate accrued and unpaid interest that is otherwise payable under the terms of the First Lien Credit Agreement by capitalizing such portion and adding such portion to the principal balance of the applicable loan**, all subject to section 506(b) of the Bankruptcy Code**. (ii) Interest on the outstanding Second Lien Loan Obligations will accrue post-petition (calculated at the applicable LIBO Rate or Base Rate applicable to outstanding loans under the Second Lien Credit Agreement in accordance with the terms of the Second Lien Credit Agreement, plus the 2% default amount beginning on the Petition Date), and (A) the portion of such aggregate accrued interest that is payable pursuant to the Second Lien Credit Agreement by capitalizing such interest and adding it to the outstanding principal amount of the loans thereunder shall continue to be paid, subject to section 506(b) of the Bankruptcy Code, in such manner on the applicable payment dates under the Second Lien Credit Agreement, and (B) the remainder of such aggregate accrued interest will accrue, subject to section 506(b) of the Bankruptcy Code, and not be paid in cash during the ~~Interim~~**Use** Period, without further order of the Court.  Nothing herein shall be deemed a waiver by any party (a) pertaining to assertions regarding the accrual of interest under the Second Lien Credit Agreement at the default rate, (b) pertaining to assertions regarding the accrual or payment of interest under the First Lien Credit Agreement at the default rate for the period before **or after** the Petition Date, or (c) pertaining to assertions regarding

the accrual or payment of interest under the First Lien Credit Agreement at the default Alternate Base Rate (as defined in the First Lien Credit Agreement), or the rights of any party to dispute such assertions referenced in clauses (a) through (c) of this sentence. ~~Subject to Recital G and paragraphs 18 and 19 hereof, no payments made or required to be made under this paragraph (d) shall be subject to any counterclaim, setoff, recoupment, netting, or similar defense or deduction by the Debtors or their estates.~~

(e)   <u>Fees and Expenses</u>.  As additional adequate protection, the Debtors shall pay ~~indefeasibly in cash: (i) the reasonable out-of-pocket and professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the First Lien Agent under the First Lien Credit Agreement and by the Second Lien Agent under the Second Lien Credit Agreement, each arising prior to the Petition Date; and (ii)~~**in cash,** on a current basis, the reasonable out-of-pocket and professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the First Lien Agent under the First Lien Credit Agreement and by the Second Lien Agent under the Second Lien Credit Agreement, each arising subsequent to the Petition Date.  The payment of the fees, expenses and disbursements set forth in this subparagraph (e) (including professional fees and expenses of any professionals or advisors retained by or on behalf of the First Lien Agent and the Second Lien Agent) shall be made within ~~five~~**ten** (~~5~~**10**) business days after the receipt by the Debtors and the Committee (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications~~, including such amounts arising before and after the Petition Date~~; provided, however, that the Debtors and the Committee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtors pay in full the undisputed portion of such Invoiced Fees, with the Disputed Invoiced Fees being paid upon resolution of any dispute by the parties, or by the Court after notice and a hearing; and provided, further, however, that the fees and expenses payable to the First Lien Agent under this subparagraph (e) during the term of this ~~Third Interim~~**Final** Order shall not exceed $~~550,000~~**300,000 per calendar month,** and the fees and expenses payable to the Second Lien Agent under this subparagraph (e) during the term of this ~~Third Interim~~**Final** Order shall not exceed $~~550,000~~**300,000 per calendar month,** without prejudice to the First Lien Agent or the Second Lien Agent asserting a claim for payment of a higher amount of fees and expenses (whether such fees and expenses are incurred during the term

of this ~~Third Interim~~**Final** Order or otherwise).  Notwithstanding any other provision of this ~~Third Interim~~**Final** Order or of the Budget, any savings of the Debtors attributable to payments to the First Lien Agent or Second Lien Agent in amounts lower than those set forth in the preceding sentence shall not be applied to other items in the Budget or otherwise increase the permitted expenditures of the Debtors.  ~~Subject to Recital G and paragraphs 18 and 19 hereof, no payments made or required to be made under this paragraph (e) shall be subject to any counterclaim, setoff, recoupment, netting, or similar defense or deduction by the Debtors or their estates.~~

(f)    <u>Information</u>.  The Debtors shall provide to each Prepetition Agent and to the Committee weekly, to be delivered ~~on~~**by** each Friday, beginning on ~~October 29,~~**December 3,** 2010, (a) a report in the form of the Budget, comparing actual results to budgeted amounts for all categories appearing in the Budget (including both receipts and disbursements, and being sufficient to allow determination of whether the Debtors are in compliance with this ~~Third Interim~~**Final** Order) for the period ending seven (7) days prior to the date of each such report, and (b)  a report listing all bank accounts where cash is held which identifies the financial institution, account number and cash balance of each such account, as of the date which is seven (7) days prior to the date of each such report.  For the avoidance of doubt, the reports to be delivered on ~~October 29,~~**December 3,** 2010 (for the period ending ~~October 22,~~**November 26,** 2010), and each report delivered thereafter, and the Debtors' compliance requirements with regard thereto, shall be determined in regard to this ~~Third Interim~~**Final** Order.  The Debtors shall not open any new accounts (other than bank accounts authorized by other orders of this Court) without the prior written consent of the First Lien Agent and the Second Lien Agent.  ~~The Debtors shall provide a written calculation of EBITDA for the calendar month of October 2010, in accordance with the provisions of paragraph 2(d) of this Third Interim Order, to each Prepetition Agent and the Committee by no later than November 19, 2010.  The Debtors shall respond to reasonable requests for information from the Prepetition Agents pertaining to the use of Cash Collateral or the Budget, as soon as is reasonably practicable under the circumstances.~~

7.    ~~Subject to Recital G above and paragraphs 18 and 19 below, the~~**The** Adequate Protection Liens and Adequate Protection Claims granted pursuant to this ~~Third Interim~~**Final** Order shall constitute valid and duly perfected security interests and liens and allowed administrative expense claims, respectively, only to the extent that the respective

Prepetition Secured Parties had valid, unavoidable and duly perfected liens on the Prepetition Collateral, including the Cash Collateral, on the Petition Date, and subject to any defenses that may exist with respect to prepetition liens.  ~~Notwithstanding anything to the contrary in this Third Interim Order or any prior order of the Court, the~~**The** payment by the Debtors of any amounts in cash to the First Lien Secured Parties or the Second Lien Secured Parties under the terms of this ~~Third Interim Order shall be final and irrevocable, and shall not be subject to avoidance or any challenge, whether under section 506(b) of the Bankruptcy Code or otherwise.  The~~**Final Order, and the** accrual, including without limitation, by payment in kind, by the Debtors of any amounts as interest **or fees** to any of the **First Lien Secured Parties or the** Second Lien Secured Parties under the terms of this ~~Third Interim~~**Final** Order, shall be subject to allowance and recharacterization in accordance with section 506(b) of the Bankruptcy Code.

8.   Under the circumstances and given that the Adequate Protection is consistent with the Bankruptcy Code, ~~and based on the consent of the First Lien Agent and the Second Lien Agent to the entry of this Third Interim Order,~~ the Court finds that the Adequate Protection provided herein is reasonable and sufficient to protect the interests of the respective Prepetition Secured Parties in the ~~Prepetition Collateral, including the~~ Cash Collateral, for the period covered by this ~~Third Interim~~**Final** Order.  Notwithstanding any other provision hereof, the grant of the Adequate Protection pursuant hereto is without prejudice to the right of either Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.

9.    As between the First Lien Secured Parties and the Second Lien Secured Parties, the Adequate Protection provided to each Prepetition Agent for the benefit of the applicable Prepetition Secured Parties shall be governed by the terms of the Intercreditor Agreement.  For the avoidance of doubt, to the extent that the Intercreditor Agreement is deemed inapplicable, all rights of the First Lien Secured Parties hereunder shall be senior in all respects to all rights of the Second Lien Secured Parties hereunder.

10.    Notwithstanding any provision of this ~~Third Interim~~**Final** Order to the contrary, the Adequate Protection granted to the Prepetition Secured Parties pursuant to this ~~Third Interim~~**Final** Order shall be subject and subordinate to (a) the payment of allowed fees and expenses incurred by professionals retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code by the Debtors or the Committee in an aggregate amount not to exceed $400,000 following the termination of the use of Cash Collateral in accordance with the provisions hereof or the Final Order (the "Termination Date"), plus all **fees and expenses paid prior to the Termination Date, and plus all** unpaid fees and expenses previously allowed or incurred (to the extent subsequently allowed) by any such professionals prior to the Termination Date (not to exceed the aggregate amount of fees and expenses for such professionals reflected in any weekly period in the Budget, pro rated for the time period prior to the Termination Date), subject to Court approval; and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (collectively, the "Carveout").  So long as the Debtors remain entitled to use Cash Collateral, and so long as such payments are authorized under the Budget or otherwise under Paragraph 2 of this ~~Third Interim~~**Final**

Order, the Debtors shall be permitted to pay all compensation and reimbursement allowed and payable under sections 330 and 331 of the Bankruptcy Code, and orders of this Court.

11. The Debtors shall be permitted to use Cash Collateral under the terms of this ~~Third Interim~~**Final** Order until the earlier of (i) the expiration of the ~~Interim~~**Use** Period, and (ii) 5:00 p.m., prevailing Eastern Time, on the date that is three (3) business days after the date on which the Debtors and the Committee receive notice in writing, by electronic mail, from either of the First Lien Agent or the Second Lien Agent (subject to the restrictions on the Second Lien Agent set forth in the Intercreditor Agreement) of the occurrence of an "Event of Default" (provided that such three (3) business-day notice period shall be reduced to two (2) business days if any applicable "Event of Default" is a payment default~~, and provided further that such three (3) business-day notice period shall be increased to five (5) business days if notice of an "Event of Default" under paragraph 12(h) of this Third Interim Order is received from either the First Lien Agent or the Second Lien Agent~~), provided that clause (ii) shall not apply in respect of any Event of Default that is cured by the Debtors within such three (3) or two (2) business-day period, as applicable. ~~Payments due from the Debtors to the First Lien Agent or the Second Lien Agent under the terms of this Third Interim Order shall be made by 4:00 p.m., prevailing Eastern Time, on the date indicated herein.~~ Notwithstanding any order entered by the Court that permits the Debtors to make expenditures in accordance with the terms thereof, such order shall be subject to this ~~Third Interim~~**Final** Order (or to any further order permitting the Debtors to use cash collateral on the terms specified therein), and such expenditures may be made only to the extent permitted hereby (or by such further cash collateral order).

12.     For purposes of this ~~Third Interim~~**Final** Order and the use of Cash

Collateral, an "Event of Default" shall occur if:

(a)     the Debtors in any material respect failed to perform or otherwise violated any of their obligations in accordance with the First Interim Order ~~or,~~ the Second Interim Order **or the Third Interim Order** except as modified herein;

(b)     the Debtors fail to perform any of their obligations in accordance with the terms of this ~~Third Interim~~**Final** Order, including, without limitation, (i) the Debtors' failure to use Cash Collateral in compliance with the Budget (subject to the Allowed Variances), or (ii) the Debtors' failure to comply with the Adequate Protection obligations;

~~(c)     this Third Interim Order is withdrawn, rescinded, amended, revoked, or modified without the prior written consent of the First Lien Agent and the Second Lien Agent, or this Third Interim Order is appealed by any party other than the First Lien Agent or the Second Lien Agent;~~

**(c)**     ~~(d)~~ a Chapter 11 trustee (or an examiner with powers of a Chapter 11 trustee) is appointed; **or**

**(d)**     ~~(e)~~ the Debtors' chapter 11 cases are converted to cases under Chapter 7 or dismissed;

~~(f)     an order is entered granting relief from the automatic stay provisions of the Bankruptcy Code permitting any person or entity to exercise remedies, other than a right of setoff, against property of the estate having a value in excess of $250,000;~~

~~(g)     without the consent of the Prepetition Agents (in accordance with the Intercreditor Agreement), any debtor-in-possession financing is approved, or (i) any liens are granted or incurred on assets having a value of more than $100,000 in the aggregate (unless otherwise expressly permitted under the First Lien Credit Agreement or Second Lien Credit Agreement), (ii) any liens are granted or incurred that are superior to, or *pari passu* with, the Adequate Protection Liens, the Adequate Protection Claims, or the prepetition liens securing the First Lien Loan Obligations and the~~

19

~~Second Lien Loan Obligations, respectively, or (iii) any administrative claims are granted or incurred that are superior to, or *pari passu* with, the Adequate Protection Liens, the Adequate Protection Claims, or the prepetition liens securing the First Lien Loan Obligations and the Second Lien Loan Obligations, respectively;[10]~~

~~(h)     the Debtors or the Committee file any adversary proceeding or commence any contested matter against any of the Prepetition Secured Parties seeking to avoid or otherwise invalidate, subordinate, or challenge any liens or claims of the Prepetition Secured Parties pertaining to the Prepetition Credit Facilities, or file an adversary proceeding asserting any other cause of action against any of the Prepetition Secured Parties pertaining to the Prepetition Credit Facilities.~~

~~The Debtors shall notify in writing the First Lien Agent, the Second Lien Agent and the Committee promptly upon the occurrence of any Event of Default.~~

13.     Upon the occurrence of an Event of Default, and upon the expiration of any period applicable to a cure right, if any, ~~(a)~~ the Debtors shall not be permitted to use Cash Collateral without further order of the Court, ~~and (b) the First Lien Agent and the Second Lien Agent (in accordance with the Intercreditor Agreement) can seek, on an expedited basis (as soon as one (1) business day following notice to the Debtors, subject to the Court's availability), relief from the automatic stay imposed by the Bankruptcy Code to exercise its rights in accordance with applicable law, subject to the Debtors' and the Committee's right to oppose any such relief~~**which may be requested on an expedited basis**.

---

[10] ~~For the avoidance of doubt, the provisions of this subparagraph (g) regarding the incurrence of liens shall not apply to any lien alleged to arise automatically, and as a matter of law or equity, in favor of any beneficiary under a letter of credit, to the extent that such lien is only on, and applies only to, cash drawn and held by such beneficiary under such letter of credit during the Interim Period, provided that nothing herein shall be deemed to suggest that any such lien would arise in such a circumstance or would, if arising, be valid or enforceable as against the Debtors or any other person or entity.~~

14.     Any termination of the Debtors' right to use Cash Collateral pursuant to the terms of this ~~Third Interim~~**Final** Order shall be without prejudice to the right of the Debtors, or any successor thereto, to request authority from this Court to use Cash Collateral over the objection of any of the Prepetition Secured Parties and shall be without prejudice to any parties' rights (subject to the Intercreditor Agreement) to contest any such request.  The Debtors may request a hearing seeking such authority on one (1) business day's notice, subject to the Court's availability.

15.     For so long as the Debtors' authority to use Cash Collateral hereunder has not been revoked or terminated, the Prepetition Secured Parties are hereby barred from placing an administrative hold on any account holding any of the Cash Collateral~~; provided that, upon the occurrence of an Event of Default and for so long as a cure right has not been exercised, upon written notice thereof being given to the Debtors and the Committee by either Prepetition Agent, the Prepetition Secured Parties shall not be barred from placing an administrative hold on any account holding any of the Cash Collateral, to the extent any such hold would not prevent the Debtors from using Cash Collateral permitted hereunder, to the extent practicable.~~

~~16.     The Debtors shall not sell, transfer, sub-participate, or otherwise assign any participations or other rights that the Debtors may hold in loans made under the First Lien Credit Agreement, including, without limitation, any rights acquired through participation agreements entered into by The Relizon Company contemporaneously with the sixth amendment to the First Lien Credit Agreement. In accordance with such participation agreements, the Debtors may not seek to make, grant or exercise (or refrain from making,~~

21

granting or exercising) any vote, or otherwise exercise any other rights or remedies with respect to transferred rights and assumed obligations under such participation agreements. As set forth in such participation agreements, such rights and remedies remain with the sellers under such participation agreements, and no consent, instruction or other direction shall be needed from the Debtors for such sellers to take or refrain from taking any such actions.

17. Upon entry of this Third Interim Order, other than the Carve-Out, no costs or expenses of administration of these bankruptcy cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the Prepetition Agents and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Agents; no "equities of the case" claim, or other exception, under Section 552(b) of the Bankruptcy Code shall be asserted or applied against the Prepetition Agents or the Prepetition Collateral or the Cash Collateral (or any collateral granted hereunder) or otherwise in connection with the First Lien Loan Obligations or the Second Lien Loan Obligations; and, subject to Recital G and paragraphs 18 and 19 hereof, no claim that the First Lien Loan Obligations or the Second Lien Loan Obligations should be subordinated to any other claims against the Debtors or their estates shall be commenced under Section 510(c) of the Bankruptcy Code.

18.     Each stipulation, admission and agreement contained in Recitals E and G of this Third Interim Order shall be binding upon the Debtors and any successor thereto (excluding the Committee (which is covered by and addressed in the immediately following sentence of this paragraph), but including, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes. Each stipulation, admission, waiver, release, and agreement contained in Recitals E and G of this Third Interim Order shall also be binding upon all other parties in interest, including the Committee, under all circumstances and for all purposes, except to the extent that (i) the Committee has, subject to the limitations contained herein, timely and properly filed an adversary proceeding or contested matter with respect to any of the stipulations, admissions, waivers, releases, or agreements set forth in Recitals E and G of this Third Interim Order by no later than the date that is 60 days after the date of entry of this Order (or such later date as has been agreed to, in writing, by the applicable Prepetition Agent in its sole discretion); provided that if the Committee files a motion for approval to commence and prosecute an adversary proceeding or contested matter (with a draft complaint or other pleading if appropriate, attached thereto) within the 60-day period in connection with the subject matter of Recitals E and G, such 60-day period shall be extended to 75 days, and (ii) there is a final order in favor of a plaintiff sustaining such claim.

19.     For the avoidance of doubt, the Committee shall have the right to investigate and, subject to the Bankruptcy Court granting the Committee standing and authority (if required), to file any adversary proceeding or contested matter, with respect to

any of the stipulations, admissions, waivers, releases, or agreements set forth in Recitals E and G of this Third Interim Order within the time frame set forth in paragraph 18 of this Third Interim Order.

20.     Nothing in this Order vests or confers on any person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, claims with respect to the Prepetition Credit Facilities or the First Lien Loan Obligations and the Second Lien Loan Obligations, provided, however, that the Debtors consent to, and the First Lien Agent and the Second Lien Agent, on behalf of the First Lien Secured Parties and the Second Lien Secured Parties, respectively, shall be deemed to have waived any right to object to, any request by the Committee that the Court recognize the standing or authority of, or confer standing or authority on, the Committee to file or pursue any adversary proceeding or contested matter to the extent that such adversary proceeding or contested matter is in respect of any of the stipulations, admissions, waivers, releases, or agreements of the Debtors set forth in Recitals E and G of this Third Interim Order, but further provided, however, that (i) such consent by the Debtors and such deemed waiver by the First Lien Agent and the Second Lien Agent shall not apply to any adversary proceeding or contested matter, or portion thereof, that is not in respect of any of the stipulations, admissions, waivers, releases, or agreements of the Debtors set forth in Recitals E and G of this Third Interim Order, and (ii) all other rights, defenses, objections, and challenges of the Debtors, the First Lien Agent, the Second Lien Agent, the First Lien Secured Parties, and the Second Lien Secured Parties in connection with any adversary proceeding or contested

~~matter, and in connection with any other request by the Committee related to standing or authority, are expressly reserved~~.

**16.** ~~21.~~ The provisions of this ~~Third Interim~~**Final** Order and any actions taken pursuant hereto shall survive (a) the termination or withdrawal of this ~~Third Interim~~**Final** Order, and (b) the entry of any further order which may be entered by the Court or any other court of competent jurisdiction, including without limitation any further order in respect of cash collateral and any order (i) confirming any plans of reorganization in the Debtors' chapter 11 cases, (ii) converting the Debtors' chapter 11 cases to Chapter 7 cases, or (iii) dismissing the Debtors' chapter 11 cases, and the terms and provisions of this ~~Third Interim~~**Final** Order as well as the Adequate Protection Claims and Adequate Protection Liens granted pursuant to this ~~Third Interim~~**Final** Order shall continue in full force and effect notwithstanding the entry of such order, and such Adequate Protection Claims and Adequate Protection Liens shall maintain their priority as provided by this ~~Third Interim~~**Final** Order. ~~For the avoidance of doubt, the stipulations, admissions, waivers, releases, and agreements of the Debtors contained in Recital E and in Recital G hereof and the provisions of paragraphs 16 and 17 hereof, shall survive, and shall be enforceable by the First Lien Agent and the Second Lien Agent, notwithstanding any termination or withdrawal of this Third Interim Order and the entry of any further order described in clause (b) of this paragraph.~~

**17.** ~~22.~~ Any stay, modification, reversal, lapse, or vacation of this ~~Third Interim~~**Final** Order shall not affect the validity of any obligation of the Debtors to any of the Prepetition Secured Parties incurred pursuant to this ~~Third Interim~~**Final** Order.

Notwithstanding any such stay, modification, reversal, lapse, or vacation, all use of Cash Collateral and all obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal, lapse, or vacation, shall be governed in all respects by the original provisions hereof and the Prepetition Secured Parties shall be entitled to all the rights, privileges, and benefits, including without limitation, the Adequate Protection Liens granted prior to the date of such stay, modification, reversal, lapse, or vacation.  This ~~Third Interim Order shall be without prejudice to any assertion by the Prepetition Secured Parties that they do not consent to the use of Cash Collateral, or that they are entitled to additional or different adequate protection, in connection with any further interim or final cash collateral order of the Court.  This Third Interim~~**Final** Order shall be without prejudice to the Debtors' right to seek to use Cash Collateral or to propose different adequate protection, over the objection of any party, in connection with any further interim or final cash collateral order of the Court for any period following any termination of the Debtors' right to use Cash Collateral pursuant to the terms of this ~~Third Interim~~**Final** Order or following ~~December 1, 2010,~~**January 31, 2011.**

**18.**        ~~23.~~ This ~~Third Interim~~**Final** Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, or any other Bankruptcy Rule or Local Rule, this ~~Third Interim~~**Final** Order shall be effective and enforceable immediately upon entry and there shall be no stay of execution or effectiveness of this ~~Third Interim~~**Final** Order.

**19.** ~~24.~~ The Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to the interpretation or implementation of this ~~Third Interim~~**Final** Order.

**20.** ~~25.~~ The Debtors shall, ~~on or before October 29, 2010,~~**within two (2) business days after the date of entry of this Final Order on the Court's docket,** mail copies of a notice of the entry of this ~~Third Interim~~**Final** Order, together with a copy of this ~~Third Interim~~**Final** Order, to the parties having been given notice of the Preliminary Hearings **and the Final Hearing**, to any party that has filed prior to such date a request for notice with this Court, and to counsel for the Committee.  The Debtors shall make copies of the First Lien Loan Documents and the Second Lien Loan Documents available to creditors and other parties in interest upon request to counsel.

~~26.     The Final Hearing to consider the Motion (subject to any further hearing ordered or set by the Court) will be held on November 30, 2010 at 9:30 a.m. Any party in interest objecting to the use of Cash Collateral on the terms described herein and in the Motion shall file written objections with the United States Bankruptcy Court Clerk for the Eastern District of Virginia, Norfolk Division, no later than 12:00 noon on November 24, 2010, which shall be served so that the same are received on or before such date and time by: (a) counsel for the Debtors and Debtors in possession, McGuireWoods LLP, Attn: Douglas M. Foley, 9000 World Trade Center, 101 West Main Street, Norfolk, VA 23510; (b) counsel for the First Lien Agent, Wilmer Cutler Pickering Hale & Dorr LLP, Attn: Philip D. Anker, 399 Park Avenue, New York, NY 10022 and Peter Zemanian, 233 East City Hall Avenue, Suite 201, Norfolk, VA 23510; (c) counsel for the Second Lien~~

Agent, Fried, Frank, Harris, Shriver & Jacobson LLP, Attn: Gary L. Kaplan, One New
York Plaza, New York, NY 10004 and Hunton & Williams LLP, Attn: Benjamin C.
Ackerly, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, VA 23219-4074;
(d) proposed counsel for the Committee, Venable LLP; Attn: Richard L. Wasserman, 750
E. Pratt Street, Suite 900, Baltimore, MD 21202; and Venable LLP, Attn: Lawrence A.
Katz, 8010 Towers Crescent Drive, Suite 300, Vienna, VA 22182; and (e)  Office of the
United States Trustee, 200 Granby Street, Room 625, Norfolk, VA 23510.

**21.**   ~~27.~~ The requirement under Local Rule 9013-1(G) to file a memorandum of
law in connection with the Motion is hereby waived.

Dated:  Norfolk, Virginia
~~October~~**November** ____, 2010


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

/s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia, 23510
(757) 640-3700

Attorneys for the Debtors and
Debtors in Possession

## **CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Rule 9022-1(C), I hereby certify that the foregoing proposed

order has been endorsed by all necessary parties.

/s/ Douglas M. Foley
Douglas M. Foley

\21514186.17
\27124616.5