Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia, 23510
(757) 640-3700

– and –

Lynn L. Tavenner (VSB No. 30083)
Paula S. Beran (VSB No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street
Second Floor
Richmond, Virginia 23219

Counsel for Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WORKFLOW MANAGEMENT INC., | ) | |
| <u>et al.</u>, | ) | Case No. 10-74617 (SCS) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THIRD AMENDED JOINT CHAPTER 11 PLAN OF <u>WORKFLOW MANAGEMENT, INC. AND ITS AFFILIATED DEBTORS</u>

Upon the Motion for Entry of an Order (a) approving the Disclosure Statement

Relating to Third Amended Joint Chapter 11 Plan of Workflow Management, Inc. and its

---

[1]     The Debtors and the last four digits of the Debtors' taxpayer identification numbers are as follows: Workflow Management, Inc. (7104); Workflow Holdings Corporation (9217); WF Capital Holdings, Inc. (5548); WF Holdings, Inc. (9106); Workflow Direct, Inc. (7497); Workflow Management Acquisition II Corp. (2039); WFIH, Inc. (0527); WFMI, Inc. (4282); Workflow of Florida, Inc. (4281); Workflow Solutions LLC (3769); SFI of Puerto Rico, Inc. (3413); Old FGS, Inc. (1438); Old UE, LLC (4060); The Relizon Company (4702); Relizon Wisconsin Inc. (8440); Relizon (Texas) Ltd., LLP (6437); Relizon SNE Inc. (4537); Relizon KNE Inc. (3935); Relizon de Mexico Inc. (6996); Formcraft Holdings General Partner, Inc. (5683); Formcraft Holdings Limited Partner, Inc. (5684). The mailing address for WF Capital Holdings, Inc., Old FGS, Inc., and Old UE, LLC is 150 West Main Street, Suite 2100, Norfolk, Virginia 23510. For all other Debtors, the mailing address is 220 E. Monument Avenue, Dayton, Ohio 45402.

Affiliated Debtors dated January 21, 2011 (the "Disclosure Statement"); (b) fixing a record date

pursuant to Bankruptcy Rule 3018(a) for determining, among other things, the creditors entitled to

receive ballots and materials necessary for voting on the Plan, and establishing an Administrative

Expense Claim Bar Date; (c) approving solicitation and voting procedures with respect to the Plan;

(d) approving the form of the Solicitation Package and the notices to be distributed with respect

thereto; (e) scheduling certain dates, including the following: (i) scheduling a hearing to confirm

the Plan, (ii) establishing deadlines for filing objections, if any, to the Plan, and (iii) establishing

the voting deadline to accept or reject the Plan; and (f) granting the Debtors authority to enter into

the Asset Purchase Agreement and pay certain fees and expenses in connection therewith; (the

"Disclosure Statement Motion") (Docket No. 354) filed by the Debtors; and upon the order entered

on January 21, 2011 granting the Disclosure Statement Motion (the "Disclosure Statement Order")

(Docket No. 719); and the Debtors having filed the Third Amended Joint Chapter 11 Plan of

Workflow Management, Inc. and its Affiliated Debtors dated January 21, 2011 (the "Plan")[2], and

certain exhibits to the Plan; and the Debtors having filed the Motion for an Order in Aid of

Confirmation Pertaining to the Administrative Expense Claim Reserve (the "Administrative

Expense Claim Reserve Motion")(Docket No. 789), as supplemented on February 21, 2011

(Docket No. 833); and the Debtors having filed the Motion in Aid of Confirmation Pertaining to

Certain Insurance Policies (the "Insurance Motion", and with the Administrative Expense Claim

Reserve Motion, as supplemented, the "Motions in Aid of Confirmation")(Docket No. 785); and

the Debtors having filed the Plan Supplement on February 14, 2011 (Docket No. 795),

amendments thereto on February 17, 2011 (Docket No. 811), and further amendments thereto on

February 23, 2011 (Docket No. 852) and on February 24, 2011 (Docket No. 873)(collectively, the

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement Motion or the Plan, as the case may be.

"Plan Supplement Amendments") and any other further documents subsequently filed relating thereto, and the Court having considered the Debtors' Memorandum of Law in Support of Confirmation of Third Amended Joint Chapter 11 Plan of Reorganization of Workflow Management, Inc. and Its Affiliated Debtors (the "Confirmation Brief") (Docket No. 849); and the Court having held a hearing on February 24, 2011 pursuant to section 1129 of the Bankruptcy Code to consider confirmation of the Plan (the "Confirmation Hearing"); and the Court having heard and considered the statements of counsel and all testimony proffered and/or adduced at the Confirmation Hearing; and the Court having admitted into the record evidence adduced at the Confirmation Hearing, including the declarations of David M. Davis (filed at Exhibit A of Docket No. 851), Kenneth M. Socha (filed at Exhibit B of Docket No. 851) and Ronald F. Greenspan (filed at Exhibit C of Docket No. 851); and the Court having overruled any and all objections and statements and reservations of rights in opposition to confirmation of the Plan not consensually resolved or withdrawn; and the Court having taken judicial notice of the contents of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and its duly-appointed agent, including all pleadings and other documents filed and orders entered thereon; and it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation of the Plan has been adequate and appropriate as to all entities affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of confirmation of the Plan and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[3]

<u>Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b) and 1334)</u>

A.      This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

<u>Filing of Plan and Plan Exhibits</u>

B.      On January 21, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Workflow Management Inc. and its Affiliated Debtors and the Disclosure Statement.  On February 14, 2011, the Debtors filed the Plan Supplement and on February 17, 2011, and February 23, 2011, the Debtors filed amendments thereto.

<u>Transmittal of Solicitation Packages</u>

C.      On or before January 25, 2011, the Debtors caused the Solicitation Packages and other relevant notices to be served and distributed as required by the Disclosure Statement Order, all as set forth in the Affidavit of Service of Solicitation Packages and Other Related Materials, filed on January 26, 2011 (Docket No. 727) (the "Solicitation Affidavit") on behalf by Kurtzman Carson Consultants, LLC ("KCC" or the "Balloting Agent").  In particular, on or before January 25, 2011, the Debtors caused to be mailed (i) the Solicitation Package, including the applicable Ballot, to holders of Claims in Classes 2, 3, 4, 5A, and 5C that were entitled to vote on the Plan, (ii) the Confirmation Hearing Notice and the Unimpaired Creditor Notice to Holders of Unimpaired Claims in Class 1, (iii) the Confirmation Hearing Notice and the Notice of Impaired

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

Status to Holders of Claims and Interests in Classes 5B, 6, and 7**,** and the parties on the 2002 List and the Core Group (each as defined in the Order Establishing Omnibus Hearing Dates and Authorizing Certain Electronic Notice, Case Management, and Administrative Procedures (Docket No. 94) (the "Case Management Order").  Copies of relevant portions of the Plan Supplement were distributed to counterparties to holders of executory contracts and unexpired leases of the Debtors.

Publication of Confirmation Hearing Notice

        D.      The Debtors caused the publication of the Notice of Confirmation Hearing and Objection Deadline with Respect to the Plan in the following newspapers on the following dates: (i) THE VIRGINIAN-PILOT on January 26, 2011, (ii) THE DAYTON DAILY NEWS on January 26, 2011, and (iii) USA TODAY on January 26, 2011.  See Affidavit of Publication of Jacqueline Whitfield in the Virginian-Pilot (Docket No. 870); Affidavit of Publication of Amy Kirby in the Dayton Daily News (Docket No. 871); Affidavit of Publication of Claudia Prudencio in USA Today (Docket No. 872).

Solicitation

        E.      Votes for acceptance or rejection of the Plan were solicited in compliance with the Disclosure Statement Order, sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other rules, laws, and regulations.

        F.      Due, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement and all amendments thereto and the Confirmation Hearing, along with deadlines for voting on the Plan, has been given to, among other parties, all known holders of Claims entitled to vote on the Plan.  Due, adequate, and sufficient notice of the Motions in Aid of

Confirmation have been given to those parties which may be affected by the Orders in Aid of Confirmation (defined below).  No other or further notice is or shall be required.

Good Faith Solicitation (11 U.S.C. § 1125(e))

> G.    All persons who solicited votes on the Plan, including any such persons released pursuant to Sections 13.2 and 13.3 of the Plan, solicited such votes in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in Sections 9.8 and 13.4 of the Plan.

Voting Results

> H.    On February 23, 2011, the Balloting Agent filed the Declaration Regarding Tabulation of Ballots with Respect to Vote on Third Amended Joint Chapter 11 Plan of Workflow Management, Inc. and Its Affiliated Debtors (Docket No. 853) (the "Voting Declaration"), certifying the method and results of the ballot tabulation for each of the Classes entitled to vote under the Plan (the "Voting Classes").  As evidenced by the Voting Report, all Voting Classes have accepted the Plan in accordance with section 1126 of the Bankruptcy Code, except (i) Class 4 of Relizon (Texas) Ltd., LLP, Class 5A of The Relizon Company, and Class 5A of SFI of Puerto Rico, Inc., which voted to reject the Plan; and (ii) to the extent that a Class of Claims did not receive any votes, and such lack of voting in a Class would be deemed to be a rejection of the Plan by such Class, (a) Class 4 in each of  WF Capital Holdings, Inc., Workflow Holdings Corporation, WF Holdings, Inc., Workflow Solutions LLC, SFI of Puerto Rico, Inc., Old UE, LLC, Relizon Wisconsin Inc., Relizon SNE Inc., and Relizon KNE Inc. for which no votes were received and (b) Class 5A in each of Old UE, LLC, Old FGS, Inc., Relizon SNE Inc., Relizon KNE Inc., Relizon de

Mexico Inc., Relizon Wisconsin Inc., Relizon (Texas) Ltd., LLP, WFIH, Inc., and Workflow Direct, Inc. for which no votes were received.

I.       All procedures used to tabulate the Ballots were fair and reasonable and conducted in accordance with the Disclosure Statement Order, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

Burden of Proof

J.       As more fully set forth herein, the Debtors have met their burden of proving each of the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for the confirmation of the Plan.

Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))

K.       The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable provisions of the Bankruptcy Code, including, but not limited to:  (a) the proper classification of Claims and Equity Interests (11 U.S.C. §§ 1122 , and 1123(a)(1)); (b) the specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)); (d) provision for the same treatment of each Claim or Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for adequate and proper means for implementation (11 U.S.C. § 1123(a)(5)); (f) the prohibition against the issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6)); (g) adequate disclosure of the procedures for determining the identity of the Plan Administrator (11 U.S.C. § 1123(a)(7)); and (h) additional Plan provisions permitted to effectuate the Sale Transaction and the liquidation of the Post-Effective Date Debtors (11 U.S.C. § 1123(b)).

Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))

L.     The Debtors have complied with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and other orders of this

Court, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))

M.     The Debtors have proposed the Plan in good faith and not by any means

forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining

that the Plan has been proposed in good faith, the Court has examined the totality of the

circumstances surrounding the filing of the Chapter 11 Cases and the formulation of the Plan.  The

Chapter 11 Cases were filed and the Plan was proposed with the legitimate and honest purpose of

maximizing the value of the Debtors and the recovery to claimholders as a whole.  Therefore, the

Debtors have proposed the Plan in good faith and not by any means forbidden by law, and section

1129(a)(3) of the Bankruptcy Code is satisfied with respect to the Plan.

Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))

N.     Any payment made or to be made by the Debtors, the Plan Administrator or

the Purchaser, as the case may be, for services or for costs and expenses in connection with the

Chapter 11 Cases or in connection with the Plan and incident to the Chapter 11 Cases, either has

been approved by or is subject to the approval of the Court as reasonable, consistent with section

1129(a)(4) of the Bankruptcy Code.  The Court hereby finds that the payments to be made for

services or for costs and expenses in connection with the Chapter 11 Cases or in connection with

the Plan and incident to the Chapter 11 Cases, including by the Purchaser to its legal and financial

advisors, including without limitation Fried, Frank, Harris, Shriver & Jacobson, LLP, Wachtell,

Lipton, Rosen & Katz, Hunton & Williams, Fortgang Consulting, L.L.C., and Perella Weinberg

Partners LP, including any transaction fee to Perella Weinberg Partners LP, are reasonable.

Board of Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))

        O.      The Plan Administrator shall be JLL Consultants, Inc.  The Debtors have adequately disclosed the compensation to be provided to the Plan Administrator in Section 9.3 of the Plan.

        P.      The appointment to such office of the Plan Administrator is consistent with the interests of holders of Claims against and Equity Interests in the Debtors, and with public policy.  Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Plan.

        Q.      To the extent applicable, Purchaser has provided adequate disclosure as required by section 1129(a)(5) of the Bankruptcy Code.

No Rate Changes (11 U.S.C. § 1129(a)(6))

        R.      Section 1129(a)(6)of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

Best Interests Test (11 U.S.C. § 1129(a)(7))

        S.      The Liquidation Analysis attached as Exhibit E to the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtors upon hypothetical conversion to cases under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan, and (4) establish that each holder of a Claim or Equity Interest in an impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive if the Debtors were liquidated

under Chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8))

T.     Class 1 is unimpaired by the Plan and therefore, under section 1126(f) of the Bankruptcy Code, such Class and each of its members are conclusively presumed to have accepted the Plan. As evidenced by the Voting Report, all Voting Classes have accepted the Plan in accordance with section 1126 of the Bankruptcy Code, except (i) Class 4 of Relizon (Texas) Ltd., LLP, Class 5A of The Relizon Company, and Class 5A of SFI of Puerto Rico, Inc., which voted to reject the Plan; and (ii) to the extent that a Class of Claims did not receive any votes, and such lack of voting in a Class would be deemed to be a rejection of the Plan by such Class, (a) Class 4 in each of  WF Capital Holdings, Inc., Workflow Holdings Corporation, WF Holdings, Inc., Workflow Solutions LLC, SFI of Puerto Rico, Inc., Old UE, LLC, Relizon Wisconsin Inc., Relizon SNE Inc., and Relizon KNE Inc. for which no votes were received and (b) Class 5A in each of Old UE, LLC, Old FGS, Inc., Relizon SNE Inc., Relizon KNE Inc., Relizon de Mexico Inc., Relizon Wisconsin Inc., Relizon (Texas) Ltd., LLP, WFIH, Inc., and Workflow Direct, Inc. for which no votes were received. Also, Classes 5B, 6, and 7 are deemed to reject the Plan. As such, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to each of the Debtors because certain classes of Claims or Equity Interests have rejected or been deemed to reject the Plan.

Treatment of Administrative and Priority Tax Claims and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9))

U.     The treatment of Administrative Claims and Priority Non-Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and

the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9) (C) of the Bankruptcy Code.

Acceptance By an Impaired Class of Claims (11 U.S.C. § 1129(a)(10))

V.     At least one impaired Class of Claims for each Debtor has voted to accept the Plan determined without including any acceptance of the Plan by any "insiders." Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Plan.

Feasibility (11 U.S.C. § 1129(a)(11))

W.     The Plan provides for the sale of substantially all of the assets of the Debtors. The Disclosure Statement, the exhibits thereto, the Plan Supplement, as amended, the Confirmation Brief, the Liquidation Analysis and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation of the Debtors except as provided by the Plan or the need for further financial reorganization of the Debtors. Therefore, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

Payment of Fees (11 U.S.C. § 1129(a)(12))

X.     The Debtors have paid or, pursuant to the Plan, the Debtors will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))

Y.     The Debtors are not obligated to provide retiree benefits of the type implicated by 11 U.S.C. § 1129(a)(13) to any person.  Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

Section 1129(b); Confirmation of The Plan Over Nonacceptance of Impaired Classes

Z.     Holders of Claims against and Equity Interests in the Debtors in Classes 5B, 6, and 7 of each Debtor are deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g). Holders of Claims in the Voting Classes of any Debtor which, as reflected in the Voting Report, either (i) did not receive sufficient votes to accept the Plan or (ii) to the extent a Voting Class of Claims received no votes on the Plan and such lack of voting is deemed to be a rejection of the Plan, have rejected or have been deemed to reject the Plan.  All of the requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8) with respect to the Voting Classes who have rejected the Plan and Classes 5B, 6, and 7 who have been deemed to reject the Plan, have been met.

AA.     Holders of Claims in each Class 4 which has rejected the Plan shall receive, on account of their Claims, treatment that will provide such Claim holder with either (i) the retention of their lien on the collateral subject to such lien and payment in full of their Claim through (a) deferred cash payments from the Purchaser totaling at least the amount of such holder's Allowed Claim, of a value, as of the Effective Date, of at least the value of such holder's interest the Debtor's interest in such property or (b) payment in full in the ordinary course of business, or (ii) the collateral which their lien encumbers.  Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding such Classes' rejection of the Plan.

BB.    With respect to each Class 5A which has rejected the Plan, no holders of Claims against or Equity Interests in the Debtors junior to the holders of each Class 5A will receive or retain any property under the Plan on account of such Claims or Equity Interests.  No Class of Claims or Equity Interests senior to each Class 5A is receiving property under the Plan having a value more than the Allowed amount of such Claim or Equity Interests.  Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding such Classes' rejection of the Plan.

CC.    With respect to Classes 5B, 6, and 7, no holders of Claims against or Equity Interests in the Debtors junior to the holders of such Classes will receive or retain any property under the Plan on account of such Claims or Equity Interests.  Finally, no Class of Claims or Equity Interests senior to Classes 5B, 6, or 7 is receiving property under the Plan having a value more than the Allowed amount of such Claim or Equity Interests.  Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding such Classes' deemed rejection of the Plan.

Principal Purpose of Plan (11 U.S.C. § 1129(d))

DD.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

Executory Contracts

EE.     The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject their executory contracts and unexpired leases pursuant to Article XII of the Plan as reflected in the Plan Supplement, as amended.  Each rejection of an executory contract or unexpired lease pursuant to Article XII of the Plan and enumerated on the Schedule of Rejected Contracts filed as part of the Plan Supplement, as amended, shall be legal, valid and binding upon the Debtors and their assignees or successors and all non-Debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such rejection had been effectuated pursuant to an order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

FF.     The amount set forth for each executory contract or unexpired lease listed on the Schedule of Cure Costs provided in the Plan Supplement, as amended, or the amount set forth in this Order or a subsequent Order of this Court, is the Cure Cost required to be satisfied in order to assume or assume and assign each such executory contract or unexpired lease listed on the list of Assigned Contracts and the list of Retained Contracts.  To the extent an executory contract or unexpired lease is listed on either the list of Assigned Contracts or list of Retained Contracts, but no Cure Cost is denoted on the Schedule of Cure Costs provided in the Plan Supplement, as amended, for such executory contract or unexpired lease, the Cure Cost required to be satisfied in order to assume or assume and assign such executory contract or unexpired lease is $0 or the amount set forth in this Order or a subsequent Order of this Court.  The Cure Costs for Assigned Contracts listed on the Schedule of Cure Costs (and no other Cure Costs) are assumed by, and shall be the sole liability of, the Purchaser, and none of the Debtors, the Post-Effective Date Debtors or the Plan Administrator shall have any liability for the payment of such Cure Costs to any party.

GG.     Each assumption or assumption and assignment of an executory contract or unexpired lease pursuant to Article XII of the Plan shall be legal, valid and binding upon the Debtors and their assignees or successors and all non-Debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such assumption or assumption and assignment had been effectuated pursuant to an order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

Releases and Exculpation

HH.     The Debtors have exercised reasonable business judgment in releasing Claims and Causes of Action set forth in Sections 13.2 and 13.3 of the Plan and providing for the exculpation set forth in Sections 9.8 and 13.4 of the Plan.  The releases of Claims and Causes of Action and exculpation described in Articles IX and XIII of the Plan constitute good faith compromises and settlements of the matters covered thereby, are otherwise approved by the Court as appropriate pursuant to applicable law and/or are consensual.  Such compromises and settlements are (i) made in exchange for adequate consideration, (ii) in the best interests of each of the Debtors' estates, holders of Claims, and other parties in interest, (iii) fair, equitable and reasonable, (iv) integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan, (v) supported by the Committee and (vi) are otherwise approved by the Court as appropriate pursuant to applicable law.

II.     Each of the release, injunction, indemnification and exculpation provisions set forth in the Plan: (a) have been negotiated in good faith at arms' length with, among others, representatives of the Debtors, the Committee, Perseus, the First Lien Agent, the Second Lien Agent and the Purchaser, and their respective advisors and constitute good faith compromises and settlements of the matters covered thereby; (b) is within the jurisdiction of the Court under 28

U.S.C. §§ 1334; (c) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (d) is an integral and essential element of the transactions incorporated into the Plan, including the Sale Transaction; (e) confers a material benefit on, and is in the best interests of, the Debtors, their estates and their creditors; (f) is fair, equitable, reasonable and essential to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (g) is consistent with sections 105, 1123, 1129, 1142 and other applicable provisions of the Bankruptcy Code.

Settlements and Compromises

JJ.     Each of the settlements reflected in the Plan is (a) an essential element of the Plan, (b) in the best interests of the Debtors and their Estates, their creditors, and the other parties in interest in these cases, (c) fair, equitable and reasonable, made in good faith and represents a compromise within the range of reasonableness for the matter being settled, and (d) is made, pursuant to Bankruptcy Rule 9019, in consideration for the classification, distribution, and other benefits provided under the Plan, unless otherwise provided in the Plan.

Plan Conditions to Confirmation

KK.     The conditions to confirmation set forth in Section 14.1 of the Plan have been satisfied or waived in accordance with the terms of the Plan.

Plan Conditions to Effectiveness

LL.     Each of the conditions to the Effective Date, as set forth in Section 14.2 of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

Newco and Purchaser Not Successors of the Debtors

MM.     Other than Assumed Liabilities, Administrative Expense Claims expressly assumed by Purchaser pursuant to Section 6.2(e) of the Plan, Cure Costs, and those Priority Tax Claims and Priority Non-Tax Claims that are listed on the Assumed Priority Claim Schedule, Purchaser is not a successor to any of the Debtors in the Chapter 11 Cases by any reason of any theory of law or equity, nor with respect to any liability of any kind, nature or character, including, without limitation, in relation to (a) any and all liabilities arising or resulting from or relating to the transactions contemplated by the Plan and the Asset Purchase Agreement, (b) any and all Claims, liens, liabilities, encumbrances, charges and other interests arising from or relating to any conduct, liabilities, or obligations of the Debtors, (c) any liability for taxes, including, without limitation, taxes arising as a result of the transactions contemplated by the Plan and the Asset Purchase Agreement, and (d) any and all Claims, liens, liabilities, encumbrances, charges and other interests and any and all right, title, and interests related thereto, of governmental entities relating to any tax or similar liabilities.

Establishment of Administrative Claim Reserve

NN.     The establishment of the Administrative Expense Claim Reserve is a reasonable mechanism for the implementation of the Plan, and the Debtors have made a showing of sufficient evidence that based upon the declaration of Paul Bogutsky in support of the Administrative Expense Claim Reserve Motion, as supplemented, there will be sufficient funds in the Administrative Expense Claim Reserve to pay the applicable Administrative and Priority Claims; the reserve amounts are reasonable; and the Administrative Expense Claim Reserve is an appropriate mechanism for providing payment of Administrative and Priority Claims.

Asset Purchase Agreement

OO.     Pursuant to the authority granted the Debtors under the Disclosure Statement Order, the Debtors executed the Asset Purchase Agreement on or about January 21, 2011.  The Asset Purchase Agreement provides for the Debtors to sell substantially all of their assets to the Purchaser pursuant to the Sale Transaction.

PP.     The Sale Transaction provided for in the Asset Purchase Agreement represents the best option for the Debtors, their estates, their creditors and the other parties in interest in these Chapter 11 Cases.  It was negotiated at arms' length, in good faith, and for a fair price.  Therefore, the consummation of the Sale Transaction pursuant to the Asset Purchase Agreement is (a) in the best interests of the Debtors' estates, holders of Claims, and other parties in interest in the Chapter 11 Cases, (b) fair, equitable and reasonable; (c) made in good faith; and (d) approved pursuant to applicable law, including section 1123(a)(5)(D) of the Bankruptcy Code and Bankruptcy Rule 9019.

QQ.     The sale to the Purchaser is a prerequisite to the Debtors' ability to confirm and consummate the Plan.  Likewise, the Sale Transaction is an integral part of the Plan.  The Sale Transaction constitutes a transfer within the meaning of and pursuant to section 1146(a) of the Bankruptcy Code.

RR.     The Purchaser has acted in good faith and is entitled to the full protections afforded under section 363(m) of the Bankruptcy Code in connection with the Sale Transaction.

<u>Implementation</u>

SS.     All documents and agreements necessary to implement the Plan, including, without limitation, the Sale Transaction, including those documents described or referenced in the Plan, have been negotiated in good faith at arm's length, are in the best interests of the Debtors and their estates, and shall upon execution be valid, binding and enforceable.

Motions in Aid of Confirmation

TT.    The Motions in Aid of Confirmation are in the best interest of the Debtors, their estates, their creditors, and the other parties in interest in the Chapter 11 Cases.  By separate Order of this Court, the Motions in Aid of Confirmation have been approved (the "Orders in Aid of Confirmation").

Retention of Jurisdiction.

UU.    The Court properly may retain jurisdiction over the matters set forth in Article XV of the Plan.  Notwithstanding anything to the contrary in the Plan, nothing in the Plan shall be construed as expanding the jurisdiction of the Bankruptcy Court beyond what is provided in 28 U.S.C. § 1334, nor shall it limit the right of other courts to hear matters otherwise properly within their jurisdictions.

The First Lien Administrative Agent

VV.    The First Lien Administrative Agent has not filed an objection to or otherwise opposed the Plan.

WW.    Based on the foregoing findings of fact and conclusions of law,[4] it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

**Confirmation of Plan**

Confirmation

1.    The Plan, as modified herein, including all Exhibits attached thereto and the Plan Supplement, as amended, is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

---

[4]    Statements made by the Court from the bench at the Confirmation Hearing shall constitute additional conclusions of law and findings of fact as appropriate.

<u>Notice</u>

2.     Notice of the Plan, the Exhibits, the Plan Supplement, as amended, the Disclosure Statement, the Motions in Aid of Confirmation and the Solicitation Packages was proper and adequate.

<u>Objections</u>

3.     The stipulations "so ordered" by the Court and the resolutions of objections to confirmation of the Plan explained on the record at the Confirmation Hearing are hereby incorporated by reference.

4.     The objection to the Plan filed by the Nevada Department of Taxation (Docket No. 747) has been resolved.  The (i) payment of interest on a tax claim or on an administrative expense tax, or (ii) the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, shall be payable to the Nevada Department of the Treasury at the rate determined under applicable nonbankruptcy law as of the calendar month in which the plan is confirmed.

5.     All objections filed in regard to the amount of Cure Costs to be paid on account of Retained Contracts and Assigned Contracts were resolved by the filing of the Plan Supplement Amendments.

6.     The objection of the Pension Benefit Guaranty Corporation (Docket No. 803) has been resolved by the modifications to the Plan provided in paragraph 34 of this Confirmation Order.

7.     The objection to the Plan filed by the Internal Revenue Service (the "IRS") (Docket No. 796) has been resolved by certain provisions hereof, including:

(a)     Notwithstanding anything to the contrary in the Plan, the injunction, release and discharge provisions contained in the Plan shall not apply to the United States of America and there shall be no requirement that the Internal Revenue Service file any Administrative Expense Claim, nor shall there be any deadline for the filing of such claim.  The IRS's administrative tax claims arising postpetition in the ordinary course of business shall be paid in the ordinary course of business; provided further however, that any tax claims of the IRS arising under section 503(b)(1)(B) or (C) that are ultimately allowed and not paid in the ordinary course of business shall be paid from the Administrative Expense Claim Reserve.  Notwithstanding anything to the contrary in the Plan, nothing in the Plan shall be construed as releasing any nondebtor from any liability imposed by 26 U.S.C. § 6672 or as enjoining or precluding the IRS from determining, assessing and collecting any liability imposed by 26 U.S.C. § 6672 with respect to a nondebtor.

(b)     The bar date for the IRS to file a governmental proof of claim with respect to Form 940 taxes for 2009 shall be a date which is 60 days after the receipt by the IRS of such return.

8.     To the extent that any other objections to confirmation of the Plan or any reservations of rights have not been resolved, withdrawn, waived or settled prior to entry of the Confirmation Order, or otherwise resolved as stated on the record at the Confirmation Hearing, such objections and reservations are hereby overruled on the merits.

Effectiveness of All Actions

9.     All actions contemplated by the Plan are hereby authorized and approved in all respects (subject to the provisions of the Plan).  The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor, the Post-Effective Date Debtors, the Plan Administrator or any officer or director

thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order, including the Sale Transaction. Pursuant to this Order and applicable law, the Debtors and the Post-Effective Date Debtors, without action of their respective stockholders or members or boards of directors or managers, are authorized and directed to take any and all such actions as any of their directors, officers, Debtors or the Plan Administrator may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order, including the Sale Transaction.

10. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, settlements or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, as amended, the Disclosure Statement, the Asset Purchase Agreement and any documents, instruments, settlements or agreements, and any amendments or modifications thereto.

11. Notwithstanding anything to the contrary in the Plan, the loans made under the Newco First Lien Credit Agreement and the Newco Second Lien Credit Agreement shall not be required to be evidenced by notes (including the New Notes), except to the extent any lender requests such notes in accordance with the terms of the Newco First Lien Credit Agreement and the Newco Second Lien Credit Agreement, as the case may be; provided that the Newco First Lien Administrative Agent and the Newco Second Lien Administrative Agent, as the case may be, shall each maintain a register on which it will record the loans held by each Newco First Lien Lender

and Newco Second Lien Lender, respectively, to the extent required by the Newco First Lien

Credit Agreement or the Newco Second Lien Credit Agreement, respectively.

Sale of Assets as of the Effective Date

12.     The Debtors are authorized to consummate the Sale Transaction pursuant to

and on the terms of the Asset Purchase Agreement.

13.     Except as otherwise provided in the Asset Purchase Agreement, pursuant to

the terms of the Asset Purchase Agreement, on the Effective Date, all Assets of the Debtors, other

than the Excluded Assets, shall be transferred to the Purchaser free and clear of all liens, Claims,

encumbrances, and other interests pursuant to sections 105, 363, 365, 1123 and 1141(c) of the

Bankruptcy Code.

14.     None of the Debtors, the Post-Effective Date Debtors nor the Plan

Administrator shall have any liability with respect to any of the Assumed Liabilities.

15.     Other than Assumed Liabilities, Administrative Expense Claims expressly

assumed by Purchaser pursuant to Section 6.2(e) of the Plan, Cure Costs, and those Priority Tax

Claims and Priority Non-Tax Claims that are listed on the Assumed Priority Claim Schedule,

Purchaser shall not be (i) a successor to any of the Debtors in the Chapter 11 Cases by reason of

any theory of law or equity, nor (ii) a successor or successor in interest of the Debtors nor incur

any successor or transferee Liability of any kind, nature or character, including, without limitation,

in relation to (a) any and all liabilities arising or resulting from or relating to the transactions

contemplated by the Plan and the Asset Purchase Agreement, (b) any and all Claims, liens,

liabilities, encumbrances, charges and other interests arising from or relating to any conduct,

liabilities, or obligations of the Debtors, (c) any liability for taxes, including, without limitation,

taxes arising as a result of the transactions contemplated by the Plan and the Asset Purchase

Agreement, and (d) any and all Claims, liens, liabilities, encumbrances, charges and other interests and any and all right, title, and interests related thereto, of governmental entities relating to any tax or similar liabilities.

16. Consummation of the Asset Purchase Agreement and the transactions contemplated therein and thereby do not effect a *de facto* merger or consolidation of any or all of the Debtors and the Purchaser or result in the continuation of any or all of the Debtors' business under Purchaser's control. Purchaser is not the alter ego of, a successor in interest to, or a continuation of any or all of the Debtors, nor is Purchaser otherwise liable for the Debtors' debts and obligations except as otherwise expressly set forth in the Asset Purchase Agreement or herein.

17. Other than with respect to Permitted Liens (as defined in the Asset Purchase Agreement) and those Class 4 Claims for which the Purchaser elects, pursuant to Section 5.4 of the Plan, to (i) pay holders of Class 4 Claims in the ordinary course of business in accordance with the terms existing between the Debtors and such holder with respect to such Allowed Other Secured Claims prior to the Petition Date, or (ii) pay deferred cash payments totaling at least the amount of such Allowed Other Secured Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in each Debtor's interest in such property, pursuant to sections 105 and 363(f) of the Bankruptcy Code, the Debtors are authorized, empowered and directed to sell and otherwise transfer the Acquired Assets to Purchaser pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, and title to the Assets shall pass to Purchaser at the Closing Date free and clear of any and all liens (including mechanics', materialmen's and other consensual and non-consensual liens and statutory liens), security interests, encumbrances and claims (including, but not limited to, any "claim" as defined in section 101(5) of the Bankruptcy Code), reclamation claims, mortgages, deeds of trust, pledges, covenants, restrictions,

hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action and claims, to the fullest extent of the law, in each case whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown, whether arising before, on, or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise against the Debtors or against or in any of the Debtors' property (collectively, the "Liens and Claims"), with all such Liens and Claims to be unconditionally released, discharged and terminated as to the Acquired Assets, with any valid Liens and Claims to attach, to the extent provided in the Plan, only to the cash proceeds of the transaction with the same priority, validity, force and effect as they existed with respect to the Acquired Assets immediately before the Closing Date.  Additionally, by purchasing the Acquired Assets, Purchaser is not assuming and shall have no obligation for, directly or indirectly, any of the liabilities or obligations of the Debtor, including the Liens and Claims except as otherwise expressly assumed by Purchaser.

18.     Notwithstanding anything to the contrary in the Plan, each holder of a Second Lien Lender Secured Claim may designate to the Newco Second Lien Administrative Agent or its designee, any one or more Entity or Entities to receive all or a portion of the distributions that such holder is entitled to receive pursuant to the Plan, and any such distribution

shall be made directly to such designee Entity or Entities without the holder being treated as having received any distribution as an intermediate step.

<u>Vesting of Excluded Assets as of the Effective Date</u>

19. Except as otherwise provided in the Plan, on the Effective Date, all property comprising the Excluded Assets shall vest in the Post-Effective Date Debtors, free and clear of all liens, Claims, encumbrances, and other interests. As of the Effective Date, the Plan Administrator, on behalf of the Post-Effective Date Debtors, may manage, distribute, use, acquire, and dispose of property vested in the Post-Effective Date Debtors and settle and compromise Claims against the Debtors without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan or this Confirmation Order.

**Assumption and Rejection of Executory Contracts and Unexpired Leases**

<u>Executory Contracts and Unexpired Leases</u>

20. On the Effective Date, the executory contracts or unexpired leases set forth in the schedule of Retained Contracts filed with the Plan Supplement, as amended, shall be deemed assumed by the Post-Effective Date Debtors as of the Effective Date, subject to the provision of Cure Costs pursuant to Article XII of the Plan and in accordance with the Plan Supplement, as amended.

21. On the Effective Date, the executory contracts or unexpired leases set forth in the schedule of Assigned Contracts filed with the Plan Supplement, as amended, shall be deemed assumed and assigned to the Purchaser as of the Effective Date, subject to the provision of Cure Costs pursuant to Article XII of the Plan and in accordance with the Plan Supplement, as amended.

22.     On the Effective Date, the executory contracts or unexpired leases set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases filed with the Plan Supplement, as amended, shall be deemed automatically rejected as of the date denoted in the Schedule of Rejected Executory Contracts and Unexpired Leases.   With respect to those executory contracts or unexpired leases rejected on a date after the Effective Date, after the Effective Date, the Purchaser shall honor all obligations that arise from the Effective Date until such rejection date.

23.     In no event shall the Purchaser have any obligation for, directly or indirectly, any of the liabilities or obligations of any or all of the Debtors on account of the Rejected Contracts.

24.     The amount set forth for each executory contract or unexpired lease listed on the Schedule of Cure Costs provided in the Plan Supplement, as amended, or the amount set forth in this Confirmation Order or a subsequent Order of this Court, is hereby found to be the amount necessary to cure all defaults (within the meaning of section 365(b) of the Bankruptcy Code) under each such Assigned Contract or Retained Contract.  To the extent an executory contract or unexpired lease is listed on either the list of Assigned Contracts or list of Retained Contracts, but no Cure Cost is denoted on the Schedule of Cure Costs provided in the Plan Supplement, as amended, for such executory contract or unexpired lease, the amount necessary to cure all defaults (within the meaning of section 365(b) of the Bankruptcy Code) under each such Assigned Contract or Retained Contract is hereby found to be $0 or the amount set forth in this Order or a subsequent Order of this Court, as the case may be.  The Cure Costs for Assigned Contracts listed on the Schedule of Cure Costs (and no other Cure Costs) are assumed by, and shall be the sole liability of, the Purchaser, and none of the Debtors, the Post-Effective Date Debtors or the Plan Administrator shall have any liability for the payment of such Cure Costs to any party.

**Bar Dates and Other Deadlines**

25.     The bar dates and deadlines set forth in the Plan are hereby approved,

including but not limited to the following:

(a)     <u>Administrative Claims Bar Date and Administrative Claims Objection Deadline</u>.  The holder of an Administrative Expense Claim, other than (i) a Fee Claim; (ii) a liability incurred and payable after the Petition Date in the ordinary course of business to customers, suppliers, vendors, contractors or employees by a Debtor (which is assumed by the Purchaser pursuant to Section 6.2(e) of the Plan); (iii) a Section 503(b)(9) Claim; or (iv) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must have filed with the Bankruptcy Court and serves on the Debtors, the Committee, and the U.S. Trustee, notice of such Administrative Expense Claim by February 18, 2011, for such Administrative Expense Claims that accrued or are anticipated to accrue on or before March 7, 2011.  In accordance with the Bar Date Order, the deadline for filing a Section 503(b)(9) Claim was December 8, 2010 at 5:00 p.m., Prevailing Pacific Time.

(b)     <u>Claims Objection Deadline</u>.  As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Plan Administrator without notice or a hearing), objections to Claims shall be filed with this Court and served upon the holders of each of the Claims to which objections are made.

(c)     <u>Professional Claims and Final Fee Applications</u>.  Each Professional who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within twenty (20) days after the Effective Date or such other specific date as may be established by this Court.

(d)     <u>Rejection Damages Bar Date</u>.  Rejection Damage Claims must be submitted to the Claims Agent, with copies to counsel for the Debtors, on the later of December 8, 2010 and the first Business Day that is thirty (30) days following the effective date of the rejection of such executory contract or unexpired lease.

**Post-Effective Date Debtors**

26.     The appointment of JLL Consultants, Inc. as the Plan Administrator is

hereby approved, and the Plan Administrator is hereby authorized to carry out all duties as set forth

in the Plan and this Confirmation Order.

**Discharge, Releases and Injunctions**

<u>No Discharge of Debtors</u>

27.     Pursuant to Bankruptcy Code section 1141(d)(3), confirmation will not discharge Claims against the Debtors.  Bankruptcy Code section 1141 nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Equity Interests of creditors, equity security holders, and of general partners of the Debtors. Accordingly, no entity holding a Claim, lien, charge, encumbrance, or other interest, including any Liens or Claims, may receive any payment from, or seek recourse against, any property other than property of the Post-Effective Date Debtors as provided in the Plan, and all persons and entities are permanently enjoined and prohibited from taking any actions to the contrary.  As of the date of the entry of this Confirmation Order (the "Confirmation Date"), all parties are precluded from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity, including any Liens or Claims, that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order.

Releases and Exculpation

28.     The release set forth in Article XIII of the Plan and the exculpation and limitation of liability provisions set forth in Article IX and XIII are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved and shall be, and hereby are, effective and binding, subject to the respective terms thereof, on all persons and entities to the extent set forth therein, and no person or entity shall possess such standing to assert released Claims or Causes of Action after the Effective Date.

29.     Entry of this Confirmation Order shall constitute the Court's finding that the releases and exculpation provisions set forth in Article IX and XIII of the Plan are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the

Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all

holders of Claims and Equity Interests; (c) fair, equitable and reasonable; and (d) approved after

due notice and opportunity for hearing

Injunctions

30.     All Persons and Entities are permanently enjoined from commencing or

continuing in any manner any suit, action or other proceeding, on account of or respecting any

Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to

be released pursuant to the Plan or the Confirmation Order.   From and after the Effective Date, all

Persons and Entities are permanently enjoined from commencing or continuing in any manner

against the Debtors, the Purchaser, Perseus, the Committee, the Second Lien Administrative

Agent, the First Lien Lenders that vote in favor of the Plan, the Second Lien Lenders that vote in

favor of the Plan, the First Lien Administrative Agent, and their successors and assigns, and each

of their respective current and former members, officers, directors, managed funds, investment

advisors, agents, financial advisors, attorneys, employees, partners, affiliates and representatives

(each of the foregoing in its individual capacity as such), and their Assets, as the case may be, any

suit, action or other proceeding, on account of or respecting any Claim, demand, liability,

obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to

the Plan or the Confirmation Order.

31.     The First Lien Administrative Agent and its Related Parties are Third Party

Releasees and are entitled to the corresponding benefits of the Plan and this Order, and the

injunctions contained in Section 13.7 of the Plan and in paragraph 30 of this Order shall apply to

the First Lien Administrative Agent and its successors and assigns, and each of their respective

current and former members, officers, directors, managed funds, investment advisors, agents, financial advisors, attorneys, employees, partners, affiliates, and representatives, and their assets.

32. All holders of Allowed Tax Claims are hereby enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtors are in compliance with Section 6.3 of the Plan. So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under the Plan or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

Settlements and Compromises

33. The provisions of the Plan and this Confirmation Order shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan. The entry of this Confirmation Order shall constitute the Court's approval of each of the compromises and settlements provided for in the Plan, and the Court's findings constitute its determination that such compromises and settlements are (a) in the best interests of the Debtors, their estates, creditors, and other parties in interest, (b) fair, equitable, and within the range of reasonableness, (c) made in good faith, and (d) approved pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Plan Modifications

34. Modifications to Plan. The Plan is hereby modified as follows:

(a) The following shall be added to the end of Section 13.7 of the Plan: "Nothing in this Section 13.7 or in the Plan or this Confirmation Order shall in any way be construed to enjoin or otherwise bar PBGC from bringing suit against any non-Debtor (other than the Purchaser as defined in the Plan; provided, however, for the avoidance of doubt, that Purchaser

does not include Perseus as defined in the Plan) on account of any Claim, including any Claim or liability upon which the PBGC Claims are based."

(b)     The following shall be added to the end of the definition of "Allowed" as contained in Section 1.6 of the Plan: "or (iv) any Claim expressly allowed by the provisions of the Plan (including, without limitation, by Sections 5.2(a) and 5.3(a) of the Plan)."

(c)     The last sentence of Section 5.2(b) of the Plan shall be deleted and replaced with the following sentence: "The Debtors shall pay the First Lien Administrative Agent and the Newco First Lien Administrative Agent their respective fees and expenses for making distributions under the Plan incurred through the Effective Date to holders of the First Lien Lender Claims."

(d)     The following sentence shall be added to the end of Section 6.2(f) of the Plan: "For the avoidance of doubt, the caps, maximums and deadlines referenced in the Cash Collateral Orders shall not be applicable to the professional fees and expenses payable to the First Lien Administrative Agent and the Second Lien Administrative Agent under Section 6.2(e) of the Plan or this Section 6.2(f)."

35.     The modifications to the Plan as set forth above in paragraph 34 constitute non-material modifications and do not materially adversely modify or otherwise affect the treatment of any Claims or Equity Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

## Notice and Other Provisions

Notice of Confirmation Order and Occurrence of Effective Date

36.     On or before the fourteenth (14th) day following the occurrence of the Effective Date, the Post-Effective Date Debtors shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the Securities and Exchange Commission; (d) counsel to the Committee; (e) all holders of Claims against and Equity Interests in the Debtors; and (f) other parties in interest, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as Exhibit A (the "Notice of Effective Date"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid or through E-mail in accordance with the Case Management Order.

37.     Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtors mailed a Confirmation Hearing Notice or other notice, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of that Person's new address.  The notice described herein is adequate and appropriate under the particular circumstances of the Chapter 11 Cases, and no other or further notice is necessary.

Exemption from Securities Laws

38.     Pursuant to section 1125(e) of the Bankruptcy Code, the Debtors' transmittal of the Solicitation Packages as set forth herein and their solicitation of acceptances of the Plan are not and will not be governed by or subject to any otherwise applicable law, rule, or regulation governing the solicitation or acceptance of a plan of reorganization or the offer, issuance, sale, or purchase of securities.

39.     Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities contemplated by the Plan, including the New Notes and the Newco Preferred Equity Interests, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act of 1933 (the "Securities Act") and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities.  In addition, under section 1145 of the Bankruptcy Code any securities contemplated by the Plan, including New Notes and the Newco Preferred Equity Interests, will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; and (ii) the restrictions, if any, on the transferability of such securities and instruments.  Nothing in the Plan or this Confirmation Order is intended to preclude the Securities and Exchange Commission from performing its statutory duties regarding any person or entity in any forum with proper jurisdiction.

Exemptions from Taxation

40.     Pursuant to section 1146 of the Bankruptcy Code, any transfer from a Debtor to the Purchaser or its assignee, the Post-Effective Date Debtors or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Purchaser; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, including without limitation the granting or recording of any Lien or mortgage on any property under the Newco First Lien Credit Agreement or the Newco Second Lien Credit Agreement; (3) the making,

assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any

deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan,

including any deeds, bills of sale, assignments, or other instrument of transfer executed in

connection with any transaction arising out of, contemplated by, or in any way related to the Plan,

shall not be subject to any bulk sales, documentary, transfer, recording, stamp, sales, use or similar

tax, fee, law or governmental assessment, or any conveyance fee, intangibles or similar tax, law,

fee or governmental assessment, mortgage tax, real estate transfer tax, mortgage recording tax,

Uniform Commercial Code filing or recording fee, or other similar tax, law, fee or governmental

assessment, and the appropriate state or local governmental officials or agents shall forego the

collection of any such tax, fee or governmental assessment and to accept for filing and recordation

any of the foregoing instruments or other documents without the payment of any such tax, fee or

governmental assessment.  Each and every federal, state and local government agency or

department is hereby directed to accept any and all documents and instruments necessary and

appropriate to consummate the transfer of any of the Acquired Assets, all without imposition or

payment of any stamp or similar tax.  The Purchaser or any agent or representative of the

Purchaser is authorized to serve upon all filing and recording officers a notice, in connection with

the filing and recording of any instruments of transfer in accordance with the Plan, to evidence and

implement this paragraph.  All filing and recording officers are hereby directed to accept for filing

or recording all instruments to be filed and recorded in accordance with the Plan and the exhibits

thereto, without payment of any such taxes.  This Court retains jurisdiction to enforce the

foregoing direction, by contempt proceedings or otherwise.

Change of Corporate Names and Case Caption

41.     On, or as soon as reasonably practicable after, the Effective Date, the Plan

Administrator shall file a revised corporate charter for each of the Post-Effective Date Debtors,

which charter shall provide, at a minimum, for the change of each of the corporate names of the

Post-Effective Date Debtors required by the Asset Purchase Agreement and shall bar the issuance

of non-voting equity securities of the Post-Effective Date Debtors.  Upon the change in corporate

name of all of the applicable Post-Effective Date Debtors, the Plan Administrator shall file a notice

with this Court identifying the new corporate names of each of the Post-Effective Date Debtors

(the "Name Change Notice").

42.     Upon the filing of the Name Change Notice, the Clerk of Court shall change

the caption of these Chapter 11 Cases to "Workflow Management, Inc., et al. n/k/a Old WF, Inc."

Orders in Aid of Confirmation

43.     The Orders in Aid of Confirmation are an integral part of the confirmation of

the Plan and are, therefore, incorporated herein.

Establishment of the Plan Funds and Certain Plan Reserves[5]

44.     The Plan Funds shall vest with the Post-Effective Date Debtors and shall be

administered by the Plan Administrator in accordance with the Plan.

45.     The Administrative Expense Claims Reserve is hereby established in

accordance with the terms of the Plan and the Order in Aid of Confirmation Pertaining to the

Administrative Expense Claim Reserve.  The Other Administrative Expense Claim Reserve

Amount, the Priority Tax Claim Reserve Amount and the Priority Non-Tax Claim Reserve

Amount shall each be in the respective amounts established in the Order in Aid of Confirmation

Pertaining to the Administrative Expense Claim Reserve.  The Plan Administrator is hereby

---

[5]     Defined terms used in this subheading that are not otherwise defined herein, in the Disclosure Statement
Motion or the Plan shall have the meanings ascribed to such terms in the Administrative Expense Claim
Reserve Motion.

authorized to rely on the maximum amounts established in the Order in Aid of Confirmation Pertaining to the Administrative Expense Claim Reserve.

46. The Other Administrative Claim Reserve Amount set forth on Exhibit 1 to the Order in Aid of Confirmation Pertaining to the Administrative Expense Claim Reserve was established and approved as the maximum amount of Other Administrative Expense Claims for the purpose of determining the Administrative Expense Claim Reserve in the Order in Aid of Confirmation Pertaining to the Administrative Expense Claim Reserve, provided however, that administrative tax claims arising postpetition in the ordinary course of business shall be paid in the ordinary course of business; provided further however, that any tax claims of the IRS arising under section 503(b)(1)(B) or (C) that are ultimately allowed and not paid in the ordinary course of business shall be paid from the Administrative Expense Claim Reserve.

47. The Other Administrative Expense Claim Reserve Amount shall be used by the Plan Administrator solely for distribution to holders of Other Administrative Expense Claims. The Priority Tax Claim Reserve Amount shall be used by the Plan Administrator solely for distribution to holders of Priority Tax Claims that are not assumed by the Purchaser as provided in Section 8.10 of the Plan. The Priority Non-Tax Claim Reserve Amount shall be used by the Plan Administrator solely for distribution to holders of Priority Non-Tax Claims that are not assumed by the Purchaser as provided in Section 8.10 of the Plan.

48. The Priority Tax Claim Reserve Amount is the maximum amount for which the Purchaser will be liable if the Purchaser elects to assume such claims under the provisions of the Plan. The Priority Non-Tax Claim Reserve Amount is the maximum amount for which the Purchaser will be liable if the Purchaser elects to assume such claims under the provisions of the Plan. The amount of the applicable component of the Administrative Expense Claim Reserve shall

be reduced on a dollar for dollar basis by the amount of Priority Tax Claims and/or Priority Non-Tax Claims that the Purchaser elects to assume. Purchaser is not assuming and shall have no obligation for, directly or indirectly, any of the liabilities or obligations with respect to the Priority Tax Claims or any Priority Non-Tax Claims, in either case other than funding the Priority Tax Claim Reserve Amount and the Priority Non-Tax Claim Reserve Amount or with respect to those Priority Tax Claims or Priority Non-Tax Claims expressly assumed by Purchaser and listed on the Administrative Priority Claim Schedule.

49.     The Fee Claims portion of the Administrative Expense Claim Reserve (the "Fee Claims Reserve Amount") shall be established based on the estimates of Fee Claims to be provided to the Debtors by estate professionals in accordance with the provisions of the Disclosure Statement Order (and shall include amounts estimated to be payable to the United States Trustee and KCC post confirmation). The Fee Claims Reserve Amount shall be used by the Plan Administrator solely for payment of Fee Claims (including amounts payable to the United States Trustee and KCC post confirmation). Purchaser is not assuming and shall have no obligation for, directly or indirectly, any of the liabilities or obligations with respect to the Fee Claims Reserve Amount, other than funding that portion of the Administrative Expense Claim Reserve. In addition, Purchaser is not assuming and shall have no liability for, directly or indirectly, any of the liabilities or obligations with respect to the Administrative Expense Claim Reserve, other than funding the Administrative Expense Claim Reserve, Cure Costs, the Administrative Expense Claims expressly assumed by Purchaser pursuant to Section 6.2(e) of the Plan and those Priority Tax Claims and Priority Non-Tax Claims that are listed on the Assumed Priority Claim Schedule.

50.     All (a) unpaid professional fees and expenses and other expenses incurred by the First Lien Agent up to and including the Effective Date plus any fees and expenses of the First

Lien Agent described in Section 5.2(b) of the Plan and incurred or estimated to be incurred prior to or following the Effective Date, (b) accrued and unpaid interest on account of the First Lien Lender Claims (at the rate set forth in the Cash Collateral Orders), and (c) unpaid professional fees and expenses and other expenses incurred by the Second Lien Agent up to and including the Effective Date, shall be paid by the Debtors immediately prior to the occurrence of the Effective Date, and the amounts necessary therefore shall not be part of the Administrative Expense Claim Reserve.

51.     The Purchaser shall be authorized to make payments for services or for costs and expenses in connection with the Chapter 11 Cases or in connection with the Plan and incident to the Chapter 11 Cases, to its legal and financial advisors, including without limitation Fried, Frank, Harris, Shriver & Jacobson, LLP, Wachtell, Lipton, Rosen & Katz, Hunton & Williams, Fortgang Consulting, L.L.C., and Perella Weinberg Partners LP, including making payment of any transaction fee to Perella Weinberg Partners LP.

52.     Any and all funds remaining in any component of the Administrative Expense Claims Reserve after the Plan Administrator has paid all obligations to be paid from the applicable component of the Administrative Expense Claims Reserve shall be remitted promptly by the Plan Administrator to the Purchaser.

53.     The Unsecured Claims Fund is hereby established in the amount of $2 million ($2,000,000) plus the value of the Actionable Avoidance Actions.  The Plan Administrator shall use the Unsecured Claims Fund solely for distribution to holders of Allowed Claims in Classes 5A and 5C on account of each such holder's Class 5A and Class 5C Claims.  Purchaser is not assuming and shall have no obligation for, directly or indirectly, any of the liabilities or obligations with respect to the Unsecured Claims Fund, other than the funding of the Unsecured Claims Fund.  Other than the Assumed Liabilities, Permitted Liens (as defined in the Asset

Purchase Agreement) and the funding of the Plan Funds, the Purchaser shall have no liability on account of any Claims or otherwise pursuant to the Plan under applicable federal or state law, including, but not limited to, successor or transferee liability of any kind, nature or character.

54.     The Plan Administrator Reserve is hereby established in the amount of $400,000. The Plan Administrator shall use the Plan Administrator Reserve solely to fund the post-Effective Date operating and wind-down expenses of the Debtors, unless otherwise provided herein, including to pay its professional fees. Any and all funds remaining in the Plan Administrator Reserve after the Plan Administrator has paid all obligations to be paid from the Plan Administrator Reserve shall be remitted promptly by the Plan Administrator to the Purchaser. The authority of the Plan Administrator set forth in Section 9.5 of the Plan, including, without limitation, the authority to pursue, recover on and settle Actionable Avoidance Actions, is hereby approved.

Failure to Consummate Plan and Substantial Consummation

55.     If the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the assumption, assumption and assignment or rejection of executory contracts or unexpired leases effected by the Plan, any document or agreement executed pursuant to the Plan, or pursuant to or contemplated or embodied in this Confirmation Order shall be null and void. In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall, or shall be deemed to, (a) constitute a waiver or release of any Claims by or against or Equity Interests in the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings

involving the Debtors, (c) constitute an admission of any sort by the Debtors or any other Person, or (d) be construed as a finding of fact or conclusion of law with respect thereto.

References to Plan Provisions

56.    The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of, or otherwise affect, the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Confirmation Order.

Exhibits

57.    Each reference to a document, agreement or summary description in this Confirmation Order, in the Findings of Fact and Conclusions of Law, or in the Plan or contained in the Plan Supplement, as amended, shall be deemed to be a reference to such document, agreement or summary description in substantially the form of the latest version of such document, agreement or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

Plan and Confirmation Order Mutually Dependent

58.    The terms and provisions of this Confirmation Order and the provisions of the Plan are mutually dependent and will be relied upon by the parties in closing of the Sale Transaction and, therefore, are hereby deemed nonseverable.

Confirmation Order Supersedes

59.    It is hereby ordered that this Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

Conflicts Between Confirmation Order and Plan

60.     The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

Retention of Jurisdiction

61.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XV of the Plan. Notwithstanding anything to the contrary in the Plan, nothing in the Plan shall be construed as expanding the jurisdiction of the Bankruptcy Court beyond what is provided in 28 U.S.C. § 1334, nor shall it limit the right of other courts to hear matters otherwise properly within their jurisdictions.

Authorization to Consummate

62.     The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the occurrence of the Effective Date set forth in Article XIV of the Plan.

<u>Final Order</u>

63.     This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

64.     If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

<u>Waiver of Stay of Confirmation Order</u>.

65.     Pursuant to the authority of the Court granted under Federal Rule of Civil Procedure 62(a) and Bankruptcy Rules 6004(h), 7062 and 3020(e), and for good cause shown, this Confirmation Order shall not be stayed until the expiration of fourteen (14) days after entry of this Confirmation Order, but rather the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry. This Confirmation Order is a final order and the period in which appeal must be filed shall commence upon the entry hereof.

Dated:  Norfolk, Virginia
            _____, 2011


                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE



WE ASK FOR THIS:

/s/ Douglas M. Foley_____
Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia, 23510
(757) 640-3700

            – and –

TAVENNER & BERAN, PLC

Lynn L. Tavenner (VSB No. 30083)
Paula S. Beran (VSB No. 34679)
20 North Eighth Street, Second Floor
Richmond, Virginia 23219

Counsel for the Debtor
and Debtors in Possession


### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

                                    /s/ Douglas M. Foley_____

**Exhibit A**
**(Notice of Effective Date)**

Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia, 23510
(757) 640-3700

– and –

Lynn L. Tavenner (VSB No. 30083)
Paula S. Beran (VSB No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street
Second Floor
Richmond, Virginia 23219

Counsel for Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WORKFLOW MANAGEMENT INC., | ) | |
| et al., | ) | Case No. 10-74617 (SCS) |
| | ) | |
| Debtors.[6] | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF OCCURRENCE OF THE EFFECTIVE DATE

      **PLEASE TAKE NOTICE** that on February \_\_, 2011, the United States
Bankruptcy Court for the Easter District of Virginia, Norfolk Division (the "Bankruptcy Court"),
entered the Findings of Fact, Conclusions of Law and Order Confirming the Modified Third
Amended Joint Plan of Workflow Management, Inc. and its Affiliated Debtors (Docket No. \_\_\_,
the "Confirmation Order") in the chapter 11 cases of the above-captioned debtors and debtors in
possession (the "Debtors").  Pursuant to the Confirmation Order, this Court confirmed the Third

---

[6]     The Debtors and the last four digits of the Debtors' taxpayer identification numbers are as follows: Workflow
Management, Inc. (7104); Workflow Holdings Corporation (9217); WF Capital Holdings, Inc. (5548); WF
Holdings, Inc. (9106); Workflow Direct, Inc. (7497); Workflow Management Acquisition II Corp. (2039);
WFIH, Inc. (0527); WFMI, Inc. (4282); Workflow of Florida, Inc. (4281); Workflow Solutions LLC (3769);
SFI of Puerto Rico, Inc. (3413); Old FGS, Inc. (1438); Old UE, LLC (4060); The Relizon Company (4702);
Relizon Wisconsin Inc. (8440); Relizon (Texas) Ltd., LLP (6437); Relizon SNE Inc. (4537); Relizon KNE Inc.
(3935); Relizon de Mexico Inc. (6996); Formcraft Holdings General Partner, Inc. (5683); Formcraft Holdings
Limited Partner, Inc. (5684).  The mailing address for WF Capital Holdings, Inc., Old FGS, Inc., and Old UE,
LLC is 150 West Main Street, Suite 2100, Norfolk, Virginia 23510.  For all other Debtors, the mailing address
is 220 E. Monument Avenue, Dayton, Ohio 45402.

Amended Joint Plan of Workflow Management, Inc. and its Affiliated Debtors, as modified (the "Plan").[7]

        **PLEASE TAKE FURTHER NOTICE** that on \_\_\_\_, 2011, the Effective Date under the Plan occurred.

        **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, Final Fee Applications for Fee Claims must be filed with the Bankruptcy Court by **no later than [\_\_\_], 2011 (20 Days after the Effective Date)**.

        **PLEASE TAKE FURTHER NOTICE** that the Confirmation Order constitutes an order under Bankruptcy Code section 365 rejecting those contracts listed on the Schedule of Rejected Executory Contracts and Unexpired Leases (collectively, the "Rejected Contracts and Leases"), filed as part of the Notice of Filing of Plan Supplement Relating to Third Amended Joint Chapter 11 Plan of Workflow Management, Inc. and its Affiliated Debtors (Docket No. 794), as amended on February \_\_, 2011 (Docket No. \_\_), as of the date denoted on the Schedule of Rejected Executory Contracts and Unexpired Leases.

        **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, all Claims arising from the rejection of the Rejected Contracts and Leases pursuant to the Plan and the Confirmation Order must be filed with the Court-appointed claims agent at the following address by **no later than [\_\_\_], 2011 (30 days after the Effective Date):**

        Workflow Claims Processing
        c/o Kurtzman Carson Consultants LLC
        2335 Alaska Avenue
        El Segundo, CA 90245
        (877) 565-8217.

**PLEASE NOTE:  Claims MAY NOT be faxed or emailed.  Claims MAY NOT be filed with the Bankruptcy Court.**

        **PLEASE TAKE FURTHER NOTICE** that copies of the Plan, the Plan Supplement, as amended, the Confirmation Order, any exhibits thereto, the entire docket of the Debtors' cases, and other relevant case information are publicly available by accessing the Debtors' case information website at www.kccllc.net/workflow and may also be obtained, upon reasonable written request from the Claims Agent at Kurtzman Carson Consultants LLC, Attn: Workflow Management, Inc., 2335 Alaska Avenue, El Segundo, CA 90245.

---

[7]      Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Plan.

Dated: Norfolk, Virginia
      _____ \_\_ , 2011

WORKFLOW MANAGEMENT, INC., <u>et</u> <u>al</u>.


_____
Douglas M. Foley (VSB No. 34364)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
9000 World Trade Center
101 West Main Street
Norfolk, Virginia, 23510
(757) 640-3700

- and -

Lynn L. Tavenner (VSB No. 30083)
Paula S. Beran (VSB No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street
Second Floor
Richmond, Virginia 23219


Attorneys for the Debtors
and Debtors in Possession

/29455006.11